# Exhibit A(3)

or other party liable therefor, is released, impaired or lost, shall render this policy null and void. Insurer's right to retain or recover the premium shall not be affected. The Company is not liable for any loss or damage which, without its written consent, has been settled or compromised by the Insured. It shall, however, be permissible for the Insured without prejudice to this insurance, to accept the ordinary Bills of Lading or Shipping Receipts issued by carriers limiting their liability to less than the actual value.

12. **NO BENEFIT TO BAILEE:**
This insurance shall in no wise inure directly or indirectly to the benefit of any carrier or other bailee.

13. **NOTICE OF LOSS:**
The Insured shall as soon as practicable report in writing the Company or its agent every loss, damage or occurrence which may give rise to a claim under this policy and shall also file with the Company or its agent within ninety (90) days from date of discovery of such loss, damage or occurrence, a detailed sworn proof of loss.

14. **SETTLEMENT OF LOSS:**
All adjusted claims shall be paid or made good to the Insured within sixty (60) days after presentation and acceptance of satisfactory proof of interest and loss at the office of the Company. No loss shall be paid or made good if the Insured has collected the same from others.

15. **COMPANY'S OPTIONS:**
It shall be optional with the Company to take all, or any part, of the property at the agreed or appraised value, or to repair, rebuild or replace the property destroyed or damaged with other of like kind and quality within a reasonable time, or giving notice of its intention so to do within sixty (60) days after the receipt of the proof of loss herein required.

16. **SUE & LABOR:**
In the event of loss of or damage to the property covered hereunder, it shall be lawful and necessary for the Insured or his or their factors, servants or assigns to sue, labor and travel for, in and about the defense, safeguard and recovery of the said property or any part thereof without prejudice to this insurance or waiver of the Insured's rights hereunder.

17. **SEPARATION OF DAMAGED GOODS:**
It shall be the duty of the Insured or of the agents, factors or consignees of the Insured to separate, in case of loss the sound from the damaged merchandise and/or goods. The liability of this Company hereunder being limited to the loss, by the risks and perils hereby insured against, on the damaged portion only.

18. **CLAIMS AGAINST THIRD PARTIES:**
In the event of any loss or damage to the property covered hereunder the Insured shall immediately make claim in writing against the carrier(s), bailee(s) or others involved.

19. **APPRAISAL:**
If the Insured and the Company fail to agree as to the amount of loss, each shall, on the written demand of either, made within sixty (60) days after receipt of proof of loss by the Company, select a competent and disinterested appraiser, and the appraisal shall be made at a reasonable time and place. The appraisers shall first select a competent and disinterested umpire, and failing for fifteen (15) days to agree upon such umpire, then, on the request of the Insured or the Company, such umpire shall be selected by a judge of a court of record in the State in which such appraisal is pending. The appraisers shall then appraise the loss stating separately the actual cash value at the time of loss and the amount of loss, failing to agree shall submit their differences to the umpire. An award in writing of any two shall determine the amount of loss. The Insured and the Company shall each pay his or its chosen appraiser and shall bear equally the other expenses of the appraisal and umpire. The Company shall not be held to have waived any of its rights by any act relating to appraisal.

20. **EXAMINATION UNDER OATH:**
The Insured, as often as may be reasonable required, shall exhibit to any person designated by the Company all that remains of any property herein described, and shall submit, and in so far as is within

his or their power cause his or their employees, members or the household and or examinations under oath by any person named by the Company and subscribe the same; and, as often as may be reasonable required, shall produce for examination all writings, books of account, bills, invoices and other vouchers, or certified copies thereof if originals be lost, at such reasonable time and place as may be designated by the Company or its representative, and shall permit extracts and copies thereof to be made. No such examination under oath or examination of books or documents, nor any other act of the Company or any of its employees or representatives in connection with the investigation of any loss or claim hereunder, shall be deemed a waiver of any defense which the Company might otherwise have with respect to any loss or claim, but all such examinations and acts shall be deemed to have been made or done without prejudice to the Company's liability.

### 21. SUIT:

No suit, action or proceeding for the recovery of any claim under this policy shall be sustainable in any court of law or equity unless the same be commenced within twelve (12) months next after discovery by the Insured of the occurrence which gives rise to the claim, provided however, that if by the laws of the State within which this policy is issued such limitation is invalid, then any such claims shall be void unless such actions, suite or proceeding be commenced within the shortest limit of time permitted by the laws of such State.

### 22. MACHINERY:

In the event of loss of or damage to machinery consisting, when complete for sale or use, of several parts, the Company shall only be liable for the value of the part(s) lost or damaged, including the cost of installation.

### 23. LABELS:

In the event of loss of or damage to labels, capsules or wrappers, the loss shall be adjusted on the basis of an amount sufficient to pay the cost of new labels, capsules or wrappers.

### 24. SUBROGATION OR LOAN:

If in the event of loss or damage the Insured shall acquire any right of action against any individual, firm or corporation for loss of, or damage to, property covered hereunder, the Insured will, if requested by the Company, assign and transfer such claim or right of action the Company, or at the Company's option, execute and deliver to the Company the customary form of loan receipt upon receiving an advance funds in respect of the loss or damage; and will subrogate the Company to, or will hold in trust for the Company, all such rights of action to the extent of the amount paid or advanced, and will permit suit to be brought in the Insured's name under the direction of and at the expense of the Company.

### 25. MISREPRESENTATION AND FRAUD:

This entire policy shall be void if, whether before or after a loss, the Insured has concealed or misrepresented any material fact or circumstance concerning this insurance or the subject thereof, or the interest of the Insured therein, or in case of any fraud or false swearing by the Insured relating thereto.

### 26. EXAMINATION OF RECORDS:

The Insured shall, as often as may be reasonably required during the term of this policy and for one (1) year thereafter, produce for examination by the Company or its duly authorized representative all the books and records, inventories and accounts relating to the property covered hereunder.

### 27. ABANDONMENT:

There can be no abandonment to the Company of any property.

### 28. CANCELLATION:

This policy may be canceled by the Insured by surrender thereof to the Company or any of its authorized agents or by mailing to the Company written notice stating when thereafter such cancellation shall be effective. This policy may be canceled by the Company by mailing to the Insured at the address shown in this policy or last known address written notice stating when, not less than fifteen (15) days thereafter, such cancellation shall be effective. The mailing of notice as aforesaid shall be sufficient proof of notice. The time of surrender or the effective date of the cancellation stated in the notice shall

become the end of the policy period. Delivery of such written notice either by the insured or by the Company shall be equivalent to mailing.

In the event of cancellation by either the Insured or the Company, the Insured agrees to furnish this Insurance Company with an accurate statement showing the total value of all shipments, covered by this policy between the date of its attachment up to and including the date of cancellation, and further agrees to pay premium on this amount at the rate stated in the above adjustment clause; if the premium this determined exceeds the initial premium paid, the amount of such excess shall immediately become payable to this Insurance Company, and per contra, any unearned premium (being the amount by which the initial premium exceeds the premium due), shall be returned to the Insured.

If the Insured cancels, earned premium shall be computed in accordance with the customary short rate table and procedure. If the Company cancels, earned premium shall be computed pro-rate. Premium adjustment may be made at the time cancellation is effected, and, if not then made, shall be made as soon a practicable after cancellation becomes effective. The Company's check or the check of its representative mailed or delivered as aforesaid shall be sufficient tender of any refund or premium due to the Insured.

## 29. ASSIGNMENT OF POLICY:

This policy shall be void if assigned or transferred without the written consent of this Company.

## 30. CONFORMITY OF STATUTE:

Terms of this policy which are in conflict with the statutes of the State wherein this policy is issued are hereby amended to confirm to such statutes.

## 31. CHANGES:

Notice to any agent or knowledge processed by any agent or by any other persons shall not effect a waiver or a change in any part of this policy, or stop the Company from asserting any right under the terms to this policy, nor shall the terms of this policy be waived or changed, except by endorsement issued to form a part of this policy.

DATA PROCESSING ...

1. **PROPERTY INSURED:** ACTIVE DATA PROCESSING MEDIA, BEING PROPERTY OF THE INSURED OR PROPERTY OF OTHERS FOR WHICH THE INSURED MAY BE LIABLE.

2. **PROPERTY EXCLUDED:** THIS INSURING AGREEMENT DOES NOT INSURE ACCOUNTS, BILLS, EVIDENCES OF DEBT, VALUABLE PAPERS, RECORDS, ABSTRACTS, DEEDS, MANUSCRIPTS OR OTHER DOCUMENTS EXCEPT AS THEY MAY BE COVERTED TO DATA PROCESSING MEDIA FORM, AND THEN ONLY IN THAT FORM, OR ANY DATA PROCESSING MEDIA WHICH CANNOT BE REPLACED WITH OTHER OF LIKE KIND AND QUALITY.

3. **LIMITS OF LIABILITY:** SEE "DECLARATIONS".

4. **PERILS INSURED:** THIS INSURING AGREEMENT INSURES AGAINST ALL RISKS OF DIRECT PHYSICAL LOSS OR DAMAGE TO THE PROPERTY COVERED, EXCEPT AS HEREINAFTER PROVIDED.

5. **PERILS EXCLUDED:** THIS INSURING AGREEMENT DOES NOT INSURE AGAINST LOSS, DAMAGE, OR EXPENSE RESULTING FROM OR CAUSED DIRECTLY OR INDIRECTLY BY:

   A. DATA PROCESSING MEDIA FAILURE OR BREAKDOWN OR MALFUNCTION OF THE DATA PROCESSING SYSTEM INCLUDING EQUIPMENT AND COMPONENT PARTS WHILE SAID MEDIA IS BEING RUN THROUGH THE SYSTEM, UNLESS FIRE OR EXPLOSION ENSUES AND THEN ONLY FOR THE LOSS, DAMAGE OR EXPENSE CAUSED BY SUCH ENSUING FIRE OR EXPLOSION;

   B. ELECTRICAL OR MAGNETIC INJURY, DISTURBANCE OR ERASURE OF ELECTRONIC RECORDINGS, EXCEPT BY LIGHTENING;

   C. DRYNESS OR DAMPNESS OF ATMOSPHERE, EXTREMES OF TEMPERATURE, CORROSION, OR RUST UNLESS DIRECTLY RESULTING FROM PHYSICAL DAMAGE TO THE DATA PROCESSING SYSTEM'S AIR CONDITIONING FACILITIES CAUSED BY A PERIL NOT EXCLUDING BY THE PROVISIONS OF THIS INSURING AGREEMENT;

   D. DELAY OF LOSS OF MARKET;

   E. INHERENT VICE, WEAR, TEAR, GRADUAL DETERIORATION OR DEPRECIATION;

   F. ANY DISHONEST, FAUDULENT OR CRIMINAL ACT BY ANY INSURED, A PARTNER THEREIN OR AN OFFICER, DIRECTOR OR TRUSTEE THEREOF, WHETHER ACTING ALONE OR IN COLLUSION WITH OTHERS;

   G. WAR RISKS OR NUCLEAR RISKS AS EXCLUDED IN THE POLICY TO WHICH THIS INSURING AGREEMENT IS ATTACHED.

6. **VALUATION:** THE LIMIT OF THIS COMPANYS' LIABILITY FOR LOSS OR DAMAGE SHALL NOT EXCEED:

   A. AS RESPECTS PROPERTY SPECIFICALLY DESCRIBED IN THE "DECLARATIONS", THE AMOUNT PER ARTICLE SPECIFIED THEREIN, SAID AMOUNT BEING THE AGREED VALUE THEREOF FOR THE PURPOSE OF THIS INSURANCE;

   B. AS RESPECTS ALL OTHER PROPERTY, THE ACTUAL REPRODUCTION COST OF THE PROPERTY; IF NOT REPLACED OR REPRODUCED, BLANK VALUE OF MEDIA; ALL SUBJECT TO THE APPLICABLE LIMIT OF LIABILITY STATED IN THE "DECLARATIONS".

7. **DEDUCTIBLE:** EACH AND EVERY LOSS OCCURRING HEREUNDER SHALL BE ADJUSTED SEPARATELY AND FROM THE AMOUNT OF EACH LOSS WHEN SO ADJUSTED THE AMOUNT INDICATED IN THE "DECLARATIONS" SHALL BE DEDUCTED.

8. **DEFINITIONS:** THE TERM "ACTIVE DATA PROCESSING MEDIA", WHEREVER USED IN THIS CONTRACT, SHALL MEAN ALL FORMS OF CONVERTED DATA AND/OR INSTRUCTION VEHICLES EMPLOYED IN THE INSURED'S DATA PROCESSING OPERATION, EXCEPT ALL SUCH UNUSED PROPERTY, AND THE FOLLOWING

---

(INSERT NAMES OF MEDIA NOT TO BE INSURED)

WHICH THE INSURED ELECTS NOT TO INSURE HEREUNDER.

ALL OTHER TERMS AND CONDITIONS OF THE POLICY NOT IN CONFLICT HEREWITH REMAIN UNCHANGED.
FORM 20031

ENDORSEMENT # 001

This endorsement, effective 12:01 AM   06/22/2004

Forms part of policy no.: 1374229

Issued to:  WYNN RESORTS L.L.C.

By:        LEXINGTON INSURANCE COMPANY

## CONTRIBUTING INSURANCE ENDORSEMENT

This endorsement modifies all of the insurance provided under this policy:

ITEM 3. Policy Limit of Insurance:

$7,500,000 part of  $10,000,000 part of $65,140,787 per occurrence limit Otherwise shown as 75%   Our Percentage

and

$55,140,787 excess of $10,000,000 part of $65,140,787 per occurrence limit Otherwise shown as 100% Our Percentage

1.  This endorsement applies to all coverages and all limits of insurance shown in this policy.

2.  The Policy Limit of Insurance shown above represents our percentage (shown as Our Percentage) of the total limits of insurance for all contributing insurance covering the same property.

3.  Subject to the Policy Limit of Liability shown in Item 3., the most we will pay is limited to our percentage of any covered loss, regardless of whether one or more causes of loss contribute to the loss.

All other terms and conditions of this Policy remain unchanged.

Authorized Representative OR
Countersignature (In states where applicable)

LX9598 (Ed. 05/03)

ENDORSEMENT # 002

**This endorsement, effective 12:01 AM 06/22/2004**

**Forms a part of policy no.:** 1374229

**Issued to:** WYNN RESORTS L.L.C.

**By:** LEXINGTON INSURANCE COMPANY

FLOOD DEDUCTIBLE ENDORSEMENT

FLOOD:

$100,000 PER ANY SINGLE ONE OCCURRENCE, EXCEPT;

FLOOD NAMED STORM:

5% OF THE TIV AT EACH LOCATION INVOLVED IN LOSS OR DAMAGE, SUBJECT TO
A MINIMUM OF $100,000, ANY ONE OCCURRENCE FOR THE PERIL OF FLOOD
NAMED STORMS (A STORM THAT HAS BEEN DECLARED BY THE NATIONAL WEATHER
SERVICE TO BE A HURRICANE, TYPHOON, TROPICAL CYCLONE OR TROPICAL
STORM).

_____
**Authorized Representative OR
Countersignature (In states where applicable)**

ENDORSEMENT # 003

This endorsement, effective 12:01 AM  06/22/2004

Forms a part of policy no.:  1374229

Issued to:  WYNN RESORTS L.L.C.

By:  LEXINGTON INSURANCE COMPANY

## EARTHQUAKE ENDORSEMENT

1.  In consideration of an additional premium of INCLUDED, it is understood and agreed that Paragraph B. EXCLUSIONS, Item b. Earth Movement, of CAUSES OF LOSS - SPECIAL FORM CP 1030 is amended as follows.

    b.    Earth Movement

        1)    Any earth movement (other than sinkhole collapse and earthquake), such as landslide, or earth sinking, rising or shifting. But if loss or damage by fire or explosion results, we will pay for that resulting loss or damage.

    and special Limits of Liability and a special deductible are added as follows:

    A.    LIMITS OF LIABILITY: The liability of the Lexington Insurance Company for loss or damage caused by earthquake and volcanic eruption shall not exceed the sum of $25,000,000 for loss or damage at any one insured location. Notwithstanding the limit of liability stated herein, if any, liability shall not exceed the sum of $25,000,000 due to any one earthquake or volcanic eruption loss nor shall it exceed the sum of $25,000,000 in any one year period or policy period, whichever is less, commencing 06/22/2004. This policy excludes locations located in California, Hawaii, Alaska & Puerto Rico.

    B.    DEDUCTIBLE: The sum of $100,000 shall be deducted from any adjusted claim due to earthquake or volcanic eruption.

2.  Each loss by earthquake or volcanic eruption shall constitute a single claim hereunder; provided that if more than one earthquake shock or volcanic eruption shall occur within any period of 72 hours during the term of this endorsement, such shocks shall be considered to constitute a single earthquake or volcanic eruption.

3.  If the coverage of the policy to which this endorsement is attached includes both Property Damage and Business Interruption, the foregoing limits shall be the maximum amounts collectible under this policy for loss or damage resulting from the peril described in Paragraph 1. A. above, regardless of whether the loss involves Property Damage alone or both Property Damage and Business Interruption.

_____
**Authorized Representative OR
Countersignature (In states where applicable)**

PR9025(09/92)
LX1153

ENDORSEMENT # 004

This endorsement, effective 12:01 AM 06/22/2004

Forms a part of policy no.: 1374229

Issued to: WYNN RESORTS L.L.C.

By: LEXINGTON INSURANCE COMPANY

## EQUIPMENT BREAKDOWN ENDORSEMENT
### (Boiler and Machinery)

(1) This policy covers loss caused by or resulting from an "accident" to "covered equipment." "Accident" means direct physical loss as follows:

  (a) mechanical breakdown, including rupture or bursting caused by centrifugal force;
  (b) artificially generated electric current, including electric arcing, that disturbs electrical devices, appliances or wires;
  (c) explosion of steam boilers, steam pipes, steam engines or steam turbines owned or operated by or under the control of the Insured;
  (d) loss or damage to steam boilers, steam pipes, steam engines or steam turbines caused by or resulting from any condition or event inside such equipment; or
  (e) loss or damage to hot water boilers or other water heating equipment caused by or resulting from any condition or event inside such boilers or equipment.

  "Accident" does not include destruction, disruption, distortion or corruption of any computer data, coding, program or software.

(2) The following coverages also apply to loss caused by or resulting from an "accident" to "covered equipment". These coverages do not provide additional amounts of insurance.

  (a) Expediting Expense
  The Company shall be liable for the reasonable extra cost to make temporary repairs and to expedite permanent repairs or permanent replacement of damaged covered property. The Company's total liability for Expediting Expense resulting from an "accident" to "covered equipment", is the amount shown in the Equipment Breakdown Schedule.

  (b) Hazardous Substances
  The Company shall be liable for the additional cost to repair or replace covered property because of contamination by a hazardous substance. This includes the additional expenses to clean up or dispose of such property. Hazardous substance means any substance other than ammonia that has been declared to be hazardous to health by a governmental agency. Additional costs mean those beyond that which would have been required had no hazardous substance been involved.
  The Company's total liability for loss or damage under this coverage, including actual loss of Business Interruption sustained, necessary Extra Expense incurred, loss of Rental Value and loss under Spoilage coverage, is $100,000, unless otherwise shown in the Equipment Breakdown Schedule. Any coverage under the policy for decontamination or pollution cleanup does not apply to this endorsement. Exclusion R.(1) of the form to which this endorsement is attached does not apply to this Hazardous Substances coverage.

  (c) Spoilage
  The Company shall be liable for:
  (i) the Insured's loss of "perishable goods" due to spoilage;
  (ii) the Insured's loss of "perishable goods" due to contamination from the release of refrigerant, including but not limited to ammonia;

(iii) necessary expenses incurred to reduce the amount of loss under this coverage. The Company shall be liable for such expenses to the extent that they do not exceed the amount of loss that otherwise would have been payable under this coverage.

(iv) the Insured's loss of "perishable goods" due to spoilage caused by an "accident" to equipment that is owned by a utility, landlord, or other supplier with whom the Insured has a contract for provision of any of the following services: electrical power, communications, waste disposal, air conditioning, refrigeration, heating, gas, air, water or steam. This coverage applies only to loss that occurs in buildings owned by the Insured.

If the Insured is unable to replace the "perishable goods" before its anticipated sale, payment will be determined on the basis of the sales price of the "perishable goods" at the time of the "accident", less discounts and expenses that otherwise would have been incurred. Otherwise payment will be determined in accordance with the Valuation provision of the policy. The Company's total liability for loss or damage under this coverage is the amount shown in the Equipment Breakdown Schedule.

(d) Computer Equipment

The Company shall be liable for loss or damage caused by or resulting from an "accident" to "computer equipment." The Company's total liability for loss or damage under this coverage, including actual loss of Business Interruption sustained, necessary Extra Expense incurred, and loss of Rental Value is the amount shown in the Equipment Breakdown Schedule. Computers used primarily to control or operate "covered equipment" are not subject to this limit.

The coverage provided by this provision shall be primary to any coverage provided in the form to which this endorsement is attached for "accident" to "computer equipment." In no event shall liability for loss to "computer equipment" under this endorsement and the form to which it is attached exceed the sublimit(s) stated in the Sublimits of Liability section of the form to which this endorsement is attached.

(e) Data Restoration

The Company shall be liable for the cost to research, replace and restore data, including programs and operating systems, that is lost or corrupted due to an "accident." The Company's total liability for loss or damage under this coverage is $100,000 unless otherwise shown in the Equipment Breakdown Schedule.

(f) CFC Refrigerants

The Company shall be liable for the additional cost to repair or replace covered property because of the use or presence of a refrigerant containing CFC (chlorofluorocarbon) substances. This means the additional expense to do the least expensive of the following:

(i)   Repair the damaged property and replace any lost CFC refrigerant;

(ii)  Repair the damaged property, retrofit the system to accept a non-CFC refrigerant and charge the system with a non-CFC refrigerant; or

(iii) Replace the system with one using a non-CFC refrigerant.

Additional costs mean those beyond what would have been required had no CFC refrigerant been involved. The Company's total liability for loss or damage under this coverage, including actual loss of Business Interruption sustained, necessary Extra Expense incurred, loss of Rental Value and loss under Spoilage coverage, is the amount shown in the Equipment Breakdown Schedule.

(3)  BUSINESS INTERRUPTION / EXTRA EXPENSE / RENTAL VALUE

Coverage for Business Interruption, Extra Expense and / or Rental Value provided herein shall apply as respects the Business Interruption, Extra Expense and Rental Value clauses, and any Additional Provisions applicable to Business Interruption, Extra Expense and Rental Value, of the policy to which this endorsement is attached, solely as a result of loss caused by or resulting from an "accident" to "covered equipment" as defined herein.

The Business Interruption, Extra Expense, Rental Value provisions, and any Additional Provisions applicable to Business Interruption, Extra Expense and Rental Value, of the policy to which this endorsement is attached are amended as follows:

(a) If so indicated in the Equipment Breakdown Schedule, Contingent Business Interruption does not apply to Equipment Breakdown coverage or applies only up to the limit specified on the Equipment Breakdown Schedule.

(b) As respects Equipment Breakdown coverage only, the Period of Restoration provision is amended to read as follows:

Period of restoration means the period of time that:
(i) Begins with the date of direct physical loss or damage by any of the perils covered herein, at the described premises; and
(ii) Ends on the date when the property at the described premises should be repaired, rebuilt or replaced with reasonable speed and similar quality, plus the number of days, if any, indicated in the Equipment Breakdown Schedule for Extended Period of Restoration.

Period of restoration does not include any increased period required due to the enforcement of any ordinance or law that:
(i) Regulates the construction, use or repair, or requires the tearing down, of any property; or
(ii) Requires the Insured or others to test for, monitor, clean up, remove, contain, treat, detoxify, or neutralize, or in any way respond to, or assess the effects of "contaminants" or "pollutants" as defined in Section 9. Perils Excluded, Paragraph Q.

The expiration date of this policy will not cut short the period of restoration.

(4) ADDITIONAL PERILS EXCLUDED

The following exclusions are in addition to those in the policy attached hereto.

(a) With respect to coverage provided by this endorsement, the Company shall not be liable for loss or damage caused by or resulting from: fire; lightning; windstorm or hail; explosion of gas or unconsumed fuel within the furnace of any boiler or fired vessel or within the passages from that furnace to the atmosphere; any other explosion (except for explosion of steam boilers, steam piping, steam engines or steam turbines); smoke; aircraft or vehicles; riot or civil commotion; vandalism; sprinkler leakage; breakage of glass; falling objects; weight of snow, ice or sleet; freezing (caused by cold weather); collapse; or molten material.

(b) With respect to Business Interruption, Extra Expense and Rental Value coverages, the Company shall not be liable for any delay in resuming operations due to the need to reconstruct or reinput data or programs on "media."

(c) The Company shall not be liable for loss or damage caused by or resulting from:
(i) a hydrostatic, pneumatic, or gas pressure test of any boiler or pressure vessel; or an insulation breakdown test of any type of electrical equipment;
(ii) failure to use all reasonable means to protect "perishable goods" from damage following an "accident";
(iii) any defect, virus, loss of data or other situation within "media." But if loss or damage from an "accident" results, the Company shall be liable for that resulting damage.

(5) DEDUCTIBLES

Only as regards Equipment Breakdown Coverage, the DEDUCTIBLES provision is deleted and replaced with the following: Unless the Schedule indicates that the deductible is combined for all coverages, multiple deductibles may apply to any "one accident." If deductibles vary by type of "covered equipment" and more than one type of "covered equipment" is involved in any "one accident," the highest deductibles for each coverage will apply.

(a) Direct and Indirect Coverages
Unless otherwise shown in the Equipment Breakdown Schedule, the Direct Coverages Deductibles apply to all loss or damage covered by this endorsement, with the exception of those coverages subject to the Indirect Coverages Deductibles. Unless more specifically indicated in the Equipment Breakdown Schedule, the Indirect Coverages Deductibles apply to Business Interruption, Extra Expense and Rental Value.

(b) Application of Deductibles

    (i) Dollar Deductibles

        The Company shall not be liable for loss or damage resulting from any "one accident" until the amount of loss or damage exceeds the applicable Deductible shown in the Equipment Breakdown Schedule. The Company shall then pay the amount of loss or damage in excess of the applicable deductible, up to the applicable LIMIT OF LIABILITY

    (ii) Time Deductible

        If a time deductible is shown in the Equipment Breakdown Schedule, the Company shall not be liable for any loss occurring during the specified number of hours or days immediately following the "accident." If a time deductible is expressed in days, each day shall mean twenty-four consecutive hours.

    (iii) Multiple of Average Daily Value (ADV)

        If a deductible is expressed as a number times ADV, that amount will be calculated as follows:

        The ADV (Average Daily Value) will be the net profit (or loss) and expenses as described in the policy attached hereto that would have been earned or incurred had no "accident" occurred during the period of interruption of business divided by the number of working days in that period. No reduction shall be made for the net profit (or loss) and expenses not being earned, or in the number of working days, because of the "accident" or any other scheduled or unscheduled shutdowns during the period of interruption. The ADV applies to all locations included in the valuation of the loss.

        The number indicated in the Equipment Breakdown Schedule shall be multiplied by the ADV as determined above. The result shall be used as the applicable deductible.

    (iv) Percentage of Loss Deductibles

        If a deductible is expressed as a percentage of loss, the Company shall not be liable for the indicated percentage of the gross amount of loss or damage (prior to any applicable deductible) insured under the applicable coverage. If the dollar amount of such percentage is less than the indicated minimum deductible, the minimum deductible will be the applicable deductible.

(6) DEFINITIONS

    (a) "Boilers and Vessels" means:

        (i) Any boiler, including attached steam, condensate and feedwater piping; and

        (ii) Any fired or unfired pressure vessel subject to vacuum or internal pressure other than the static pressure of its contents.

        This term does not appear elsewhere in this endorsement, but may appear in the Equipment Breakdown Schedule.

    (b) "Computer equipment" means covered property that is electronic computer or other data processing equipment, including "media" and peripherals used in conjunction with such equipment.

    (c) "Covered equipment" means covered property built to operate under vacuum or pressure, other than weight of contents, or used for the generation, transmission or utilization of energy. None of the following is "covered equipment":

        (i) structure, foundation, cabinet, compartment or air supported structure or building;

        (ii) insulating or refractory material;

        (iii) sewer piping, underground vessels or piping, or piping forming a part of a sprinkler system;

        (iv) water piping other than boiler feedwater piping, boiler condensate return piping or water piping forming a part of a refrigerating or air conditioning system;

        (v) vehicle, aircraft, floating vessel or any equipment mounted on such vehicle, aircraft or floating vessel;

        (vi) dragline, excavation or construction equipment; or

        (vii) equipment manufactured by the Insured for sale.

    (d) "Media" means all forms of electronic, magnetic and optical tapes and discs for use in any electronic computer or electronic data processing equipment.

(e) "One accident" means: If an initial "accident" causes other "accidents," all will be considered "one accident." All "accidents" that are the result of the same event will be considered "one accident."

(f) "Perishable Goods" means personal property maintained under controlled conditions for its preservation, and susceptible to loss or damage if the controlled conditions change.

(g) "Production Machinery" means any machine or apparatus that processes or produces a product intended for eventual sale. However, "production machinery" does not mean any fired or unfired pressure vessel other than a cylinder containing a movable plunger or piston.
This term does not appear elsewhere in this endorsement, but may appear in the Equipment Breakdown Schedule.

(h) "Service Interruption" means the Extension of Coverage provided in the form to which this endorsement is attached for interruption of business conducted by the Insured resulting from loss or damage to public utility plants, transformers or switching stations, substations furnishing heat, light, power, water, telephone or gas to the Insured's premises, but within one statute mile of the premises.

(7) SUSPENSION

When any "covered equipment" is found to be in, or exposed to a dangerous condition, any representative of the Company may immediately suspend the insurance against loss from an "accident" to said "covered equipment" by mailing or delivering a written notice of suspension to the Insured at the address as shown in the Declarations, or at the address where the "covered equipment" is located. Once suspended in this way, the insurance can be reinstated only by endorsement for that property. If so suspended, the Insured will get a pro rata refund of premium. But the suspension will be effective even if a refund has not been offered or made.

(8) COINSURANCE

If indicated in the Equipment Breakdown Schedule, specified coverages may be subject to coinsurance. The Company shall not pay for the full amount of the loss if the applicable limit is less than the product of the specified coinsurance percentage times the value of the property subject to the coverage at the time of the loss. Instead, the Company shall determine what percentage this calculated product is compared to the applicable limit and apply that percentage to the gross amount of loss. Then the applicable Deductible will be subtracted. The resulting amount, or the applicable limit, is the most the Company shall pay. The remainder of the loss will not be paid.

_____

Authorized Representative OR
Countersignature (In states where applicable)

ENDORSEMENT # 005

**This endorsement, effective 12:01 AM** 06/22/2004

**Forms a part of policy no.:** 1374229

**Issued to:** WYNN RESORTS L.L.C.

**By:** LEXINGTON INSURANCE COMPANY

## EQUIPMENT BREAKDOWN SCHEDULE

*The Company shall not be liable for more than the Equipment Breakdown Limit for loss or damage arising from any "one accident".*
*These coverages apply to all locations covered on the policy, unless otherwise specified. Wherever the term "Company" is used in the Equipment Breakdown Endorsement and the form to which it is attached, it shall also mean "Insurer."*

| Coverages | Limits |
|---|---|
| Equipment Breakdown Limit | $ 65,140,787 |

Sublimits of Liability (sublimits are within, and do not increase, the Equipment Breakdown Limit stated above):

| | |
|---|---|
| Expediting Expense | $ 100,000 |
| Hazardous Substances | $ 100,000 |
| Spoilage | $ 100,000 |
| Computer Equipment | $ 100,000 |
| Data Restoration | $ 100,000 |
| CFC Refrigerants | $ 100,000 |
| Business Interruption | $ 5,000,000 — |
| Extra Expense | $ Included |
| Rental Value | $ Included in Business Interruption |
| Contingent Business Interruption: Suppliers and/or Receivers of the Insured's Goods or Services | $ |
| "Service Interruption" | $ |

### Deductibles

| | | |
|---|---|---|
| Combined, All Coverages | $ | |

*If a Combined, All Coverages deductible is not entered above, the following deductibles are applicable:*

| | | |
|---|---|---|
| Direct Coverages | $ 25,000 | 10,000 |
| Indirect Coverages | $ | : or |
| | 24 | hours; or times ADV. |
| Spoilage (if no entry, see Direct Coverages) | $ | : or |
| | % of loss, $ | minimum. |

**Other Conditions**

Extended Period of Restoration: 0    days

Unless the interruption exceeds 24    hours, we will not pay for any loss under "Service
Interruption" coverage.

Authorized Representative OR
Countersignature (In states where applicable)

ENDORSEMENT # 006

This endorsement, effective 12:01 AM    06/22/2004

Forms a part of policy no.:  1374229

Issued to:  WYNN RESORTS L.L.C.

By:  LEXINGTON INSURANCE COMPANY

### FLOOD ENDORSEMENT

1.    In consideration of an additional premium of INCLUDED it is understood and agreed that the following is amended as follows.

    g.    Water

        1)   Water that backs up from a sewer or drain; or

        2)   Water under the ground surface pressing on, or flowing or seeping through:

            a)   Foundations, walls, floors or paved surfaces;

            b)   Basements, whether paved or not; or

            c)   Doors, windows or other openings.

        But if loss or damage by fire, explosion or sprinkler leakage results, we will pay for that resulting loss or damage.

    and special Limits of Liability and a special deductible are added as follows:

    A.   LIMITS OF LIABILITY: The liability of the Lexington Insurance Company for loss or damage caused by or resulting from flood; meaning rising water, surface water, tidal water or tidal wave, rising (including the overflowing or breaking of boundaries) of lakes, ponds, reservoirs, rivers, harbors, streams and similar bodies of water whether driven by wind or not and spray from any of the foregoing shall not exceed the sum of $25,000,000 at any one insured location. Notwithstanding the limit of liability stated herein, if any, liability shall not exceed the sum of $25,000,000 in any single one year period or policy period, whichever is less, commencing 06/22/2004. This policy excludes locations partially or wholly located within Special Flood Hazard Areas (SFHA) areas of 100 year flooding, as defined by the Federal Emergency Management Agency.

    B.   DEDUCTIBLE: The sum of $SEE ENDT#002 shall be deducted from any adjusted claim due to Flood as defined herein.

2.    If the coverage of the policy to which this endorsement is attached includes both Property Damage and Business Interruption, the foregoing limits shall be the maximum amounts collectible under this policy for loss or damage resulting from the perils described in Paragraph A above, regardless of whether the loss involves Property Damage alone or both Property Damage and Business Inter ruption.

_____
Authorized Representative OR
Countersignature (in states where applicable)

PR9026(09/92)
LX1154

ENDORSEMENT # 007

**This endorsement, effective 12:01 AM 06/22/2004**

**Forms a part of policy no.:** 1374229

**Issued to:** WYNN RESORTS L.L.C.

**By:** LEXINGTON INSURANCE COMPANY

### THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY.

### MOLD / FUNGUS EXCLUSION

In consideration of the premium charged, it is hereby understood and agreed that this policy is amended as follows.

The Company shall not be liable for any loss or damage caused by, arising out of, contributed to, or resulting from fungus, mold(s), mildew or yeast; or any spores or toxins created or produced by or emanating from such fungus, mold(s), mildew or yeast;

(a) fungus includes, but is not limited to, any of the plants or organisms belonging to the major group fungi, lacking chlorophyll, and including mold(s), rusts, mildews, smuts and mushrooms;

(b) mold(s) includes, but is not limited to, any superficial growth produced on damp or decaying organic matter or on living organisms, and fungi that produce mold(s);

(c) spores means any dormant or reproductive body produced by or arising or emanating out of any fungus, mold(s), mildew, plants, organisms or microorganisms,

regardless of any other cause or event that contributes concurrently or in any sequence to such loss.

All other terms, conditions, definitions, exclusions, limitations and provisions of the Policy remain the same.

Authorized Representative OR
Countersignature (In states where applicable)

LX9512 (08/02)

ENDORSEMENT # 008

This endorsement, effective 12:01 AM 06/22/2004

Forms a part of policy no.: 1374229

Issued to: WYNN RESORTS L.L.C.

By: LEXINGTON INSURANCE COMPANY

## NAMED INSURED ENDORSEMENT
### Named Insured

In consideration of the policy premium, it is agreed that the Named Insured appearing under the policy declarations is amended to read:

_Limited._

WYNN RESORTS ~~L.L.C.~~ AND ITS INTERESTS, ENTITIES, DIVISIONS OR OTHER INTERESTS, INCLUDING, BUT NOT LIMITED TO, JOINT VENTURES, PARTNER-SHIPS, INVESTMENTS AND OTHER INTERESTS OF THE INSURED BUT SOLELY AS RESPECTS THE INTERESTS OF THE NAMED INSURED AND INCLUDING AUTOMATICALLY THE INTERESTS OF THE PARENT, TRUST, AFFILIATED, SUBSIDIARY, AND ASSOCIATED COMPANIES OR CORPORATIONS, OWNER(S), ENTITY OR INDIVIDUAL IN THE NAMED INSURED WHICH EITHER HAS EXISTED, EXISTS NOW, OR MAY EXIST IN THE FUTURE, AS THEIR RESPECTIVE RIGHTS AND INTEREST MAY APPEAR.

All other terms, conditions, definitions, exclusions, limitations and provisions remain the same.

Authorized Representative OR
Countersignature (In states where applicable)

ENDORSEMENT # 009

This endorsement, effective 12:01 AM 06/22/2004

Forms a part of policy no.: 1374229

Issued to: WYNN RESORTS L.L.C.

By: LEXINGTON INSURANCE COMPANY

## OFF-PREMISES POWER FAILURE (DIRECT DAMAGE)

This endorsement modifies insurance provided under the following:

BUILDING AND PERSONAL PROPERTY COVERAGE FORM
BUILDERS' RISK COVERAGE FORM
STANDARD PROPERTY POLICY
TOBACCO SALES WAREHOUSES COVERAGE FORM

### SCHEDULE

| Premises No. | Building No. | Water Supply | Communication Supply | Power Supply | Causes of Loss Form Applicable |
|---|---|---|---|---|---|
| ALL | ALL | X | X | X | CP1030 |

EXCLUDING OVERHEAD TRANSMISSION & DISTRIBUTION LINES
24 HOUR WAITING PERIOD QUALIFIER DEFINING THE COVERED EVENT

We will pay for loss of or damage to Covered Property caused by the interruption of service to the described premises. The interruption must result from direct physical loss or damage by a Covered Cause of Loss to the following property, not on the described premises, if indicated by an "X" in the Schedule:

A.  Water Supply Services, meaning the following types of property supplying water to the described premises:

   1.  Pumping stations; and

   2.  Water mains.

B.  Communication Supply Services, meaning property supplying communication services, including telephone, radio, microwave or television services to the described premises, such as:

   1.  Communication transmission lines;

   2.  Coaxial cables; and

   3.  Microwave radio relays except for satellites.

   It does not include overhead communication lines.

CP0417(Ed.07/88)
LX1133    Copyright, ISO Commercial Risk Services, Inc.

C.   Power Supply Services, meaning the following types of property supplying electricity, steam or gas to the described premises:

    1.   Utility generating plants;

    2.   Switching stations;

    3.   Substations;

    4.   Transformers; and

    5.   Transmission lines.

It does not include overhead transmission lines.

**Authorized Representative OR**
**Countersignature (In states where applicable)**

CP0417(Ed.07/88)
LX1133

Copyright, ISO Commercial Risk Services, Inc.

ENDORSEMENT # 010

This endorsement, effective 12:01 AM 06/22/2004

Forms a part of policy no.: 1374229

Issued to: WYNN RESORTS L.L.C.

By: LEXINGTON INSURANCE COMPANY

## OFF PREMISES SERVICES (TIME ELEMENT)

This endorsement modifies insurance provided under the following:

BUSINESS INCOME (AND EXTRA EXPENSE) COVERAGE FORM
BUSINESS INCOME (WITHOUT EXTRA EXPENSE) COVERAGE FORM
EXTRA EXPENSE COVERAGE FORM

## SCHEDULE

| Prem. No. | Bldg. No. | Water Supply | Communication Supply | Power Supply | Causes of Loss Form Applicable |
|-----------|-----------|--------------|----------------------|--------------|--------------------------------|
| ALL | ALL | X | X | X | CP1030 |

EXCLUDING OVERHEAD TRANSMISSION & DISTRIBUTION LINES
24 HOUR WAITING PERIOD QUALIFIER DEFINING THE COVERED EVENT

A.   We will pay for loss of Business Income or Extra Expense at the described premises caused by the interruption of service to the described premises. The interruption must result from direct physical loss or damage by a Covered Cause of Loss to the following property, not on the described premises, if indicated by an "X" in the Schedule:

   1.   Water Supply Services, meaning the following types of property supplying water to the described premises:

      a.   Pumping stations; and

      b.   Water mains.

   2.    Communication Supply Services, meaning property supplying communication services, including telephone, radio, microwave or television services, to the described premises, such as:

      a.   Communication transmission lines;

      b.   Coaxial cables; and

      c.   Microwave radio relays except satellites.

      It does not include overhead communication lines.

Copyright, ISO Commercial Risk Services, Inc.
CP1545(Ed.07/88)
LX1134

3. Power Supply Services, meaning the following types of property supplying electricity, steam or gas to the described premises:

    a. Utility generating plants;

    b. Switching stations;

    c. Substations;

    d. Transformers; and

    e. Transmission lines.

It does not include overhead transmission lines.

B. We will pay only for loss you sustain after the first 12 hours following the direct physical loss or damage to the off-premises property to which this endorsement applies.

Authorized Representative OR
Countersignature (In states where applicable)

Copyright, ISO Commercial Risk Services, Inc.

ENDORSEMENT # 011

This endorsement, effective 12:01 AM 06/22/2004

Forms a part of policy no.: 1374229

Issued to: WYNN RESORTS L.L.C.

By: LEXINGTON INSURANCE COMPANY

### ORDINANCE OR LAW COVERAGE

This endorsement modifies insurance provided under the following:

BUILDING AND PERSONAL PROPERTY COVERAGE FORM

A.  If a Covered Cause of Loss occurs to covered Building property, we will pay:

    1.  For loss or damage caused by enforcement of any ordinance or law that:

        a.  Requires the demolition of parts of the same property not damaged by a Covered Cause of Loss;

        b.  Regulates the construction or repair of buildings, or establishes zoning or land use requirements at the described premises; and

        c.  Is in force at the time of loss.

    2.  The increased cost to repair, rebuild or construct the property caused by enforcement of building, zoning or land use ordinance or law. If the property is repaired or rebuilt, it must be intended for similar occupancy as the current property, unless otherwise required by zoning or land use ordinance law.

    3.  The cost to demolish and clear the site of undamaged parts of the property caused by enforcement of the building, zoning or land use ordinance or law.

B.  However, we will not pay under this endorsement for the costs associated with the enforcement of any ordinance or law which requires any insured or others to test for, monitor, clean up, remove, contain, treat, detoxify or neutralize, or in any way respond to, or assess the effects of "pollutants".

C.  We will not pay for increased construction costs under this endorsement:

    1.  Until the property is actually repaired or replaced at the same premises or elsewhere; and

    2.  Unless the repairs or replacement are made as soon as reasonably possible after the loss or damage, not to exceed 2 years. We may extend this period in writing during the 2 years.

D.  We will not pay more:

    1.  If the property is repaired or replaced on the same premises, than the amount you actually spend to:

        a.  Demolish and clear the site; and

        b.  Repair, rebuild or construct the property but not for more than property of the same height, floor area and style on the same premises.

CP0405(Ed.07/88)    Copyright, ISO Commercial Risk Services, Inc.
LX1086

2. If the property is not repaired or replaced on the same premises, than:

    a. The amount you actually spend to demolish and clear the site of the described premises; and

    b. The cost to replace, on the same premises, the damaged or destroyed property with other property:

        1) Of comparable material and quality;

        2) Of the same height, floor area and style; and

        3) Used for the same purposes.

3. For all loss or damage in any occurrence than the Limit of Insurance applicable to the covered Building property.

E. The terms of this endorsement apply separately to each building to which the endorsement applies.

Copyright, ISO Commercial Risk Services, Inc.

CP0405(Ed.07/88)
LX1088

ENDORSEMENT # 012

**This endorsement, effective 12:01 AM** 06/22/2004

**Forms a part of policy no.:** 1374229

**Issued to:** WYNN RESORTS L.L.C.

**By:** LEXINGTON INSURANCE COMPANY

### PROPERTY ENDORSEMENT

It is noted and agreed that this policy is hereby amended as follows:

The Insurer will not pay for Damage or Consequential loss directly or indirectly caused by, consisting of, or arising from:

1. Any functioning or malfunctioning of the internet or similar facility, or of any intranet or private network or similar facility,

2. Any corruption, destruction, distortion, erasure or other loss or damage to data, software, or any kind of programming or instruction set,

3. Loss of use or functionality whether partial or entire of data, coding, program, software, any computer or computer system or other device dependent upon any microchip or embedded logic, and any ensuing liability or failure of the Insured to conduct business.

This Endorsement shall not exclude subsequent damage or Consequential loss, not otherwise excluded, which itself results from a Defined Peril. Defined Peril shall mean: Fire, Lightning, Earthquake, Explosion, Falling Aircraft, Flood, Smoke, Vehicle Impact, Windstorm or Tempest.

Such Damage or Consequential loss described in 1, 2, or 3 above is excluded regardless of any other cause that contributed concurrently or in any other sequence.

All other terms, conditions and exclusions of this policy remain unchanged.

_____
**Authorized Representative OR**
**Countersignature (In states where applicable)**

ENDORSEMENT # 013

This endorsement, effective 12:01 AM 06/22/2004

Forms a part of policy no.: 1374229

Issued to: WYNN RESORTS L.L.C.

By: LEXINGTON INSURANCE COMPANY

       **REPLACEMENT COST COVERAGE ENDORSEMENT**

This endorsement applies only with respect to the premises described in the following Schedule and affords insurance on a replacement cost basis only on the property described below.

SCHEDULE

| Location of Premises<br>AS PER SCHEDULE ON FILE WITH COMPANY. | Property Covered on a<br>Replacement Cost Basis<br>REAL & PERSONAL<br>PROPERTY |
| --- | --- |

(ACTUAL LOSS SUSTAINED – TIME ELEMENT)

1. Replacement Cost Clause: The provisions of Valuation Clause(s) 1.A, B, E and G of this policy applicable to the property described as covered on a replacement cost basis are amended to substitute the term "replacement cost (without deduction for depreciation)" for the term "actual cash value" wherever it appears in this policy, and the Coinsurance Clause of this endorsement (if applicable) supersedes and replaces all other Co-insurance Clauses otherwise applicable. Subject in all other respects to the provisions of this endorsement and of Valuation Clause of this policy.

2. This policy does not cover the following property on a replacement cost basis:

   a.  Precious metals, jewelry, precious stones, furs or fur trimmed garments.

   b.  Property of others

   c.  Cost of reproducing information for books of account, abstracts, manuscripts, drawings, card index systems and other records (including film, tape, disc, drum, cell and other magnetic recording or storage media).

   d.  Paintings, etchings, pictures, tapestries, statuary, marbles, bronzes, antique furniture, rare books, antique silver, porcelains, rare glassware and bric-a-brac, or other articles of art, rarity or antiquity.

   e.  Carpeting, domestic appliances  or household furniture and outdoor equipment, all whether permanently attached to the building structure or not.

3. The Company shall not be liable under this endorsement for any loss unless and until the damaged or destroyed property is actually repaired or replaced by the Insured with due diligence and dispatch.

1 of 2

PR9017(Ed.01/91)
LX1137

4.  Coinsurance Clause (if shown in policy declarations). This Company shall not be liable for a greater proportion of any loss or damage to the property covered under this policy than the limit of liability under this policy for such property bears to the amount produced by multiplying the coinsurance percentage applicable (specified in this policy) by the total of (a) the replacement cost (without deduction for depreciation) of that part of said property which is specifically described as covered on a replacement cost basis and (b) the actual cash value of that part of said property which is covered on an actual cash value basis at time of loss.

In the event that the aggregate claim for any loss is both less than $10,000 and less than 5% of the limit of liability for all contributing insurance applicable to the property involved at the time such loss occurs, no special inventory or appraisement of the undamaged property shall be required, provided that nothing herein shall be construed to waive application of the first paragraph of this clause.

If insurance under this policy is divided into separate limits of liability, the foregoing shall apply separately to the property covered under each such limit of liability.

The cost of the removal of debris, shall not be considered in the determination of actual cash value or replacement cost when applying the Coinsurance Clause.

5.  This Company's liability for loss on a replacement cost basis, shall not exceed the smallest of the following amounts:

    a.  the amount of this policy applicable to the damaged or destroyed property.

    b.  the replacement cost of identical property or any part thereof intended for the same occupancy and use; or

    c.  the amount actually and necessarily expended in repairing or replacing said property or any part thereof.

6.  The Insured may elect to make claim under this policy in accordance with its provisions, disregarding this endorsement, except that the foregoing Coinsurance Clause shall apply, if applicable, and the Insured may make further claim for any additional liability brought about by this endorsement in accordance with its provisions, provided the Company is notified in writing within 180 days after loss of the Insured's intent to make such further claim.

_____

**Authorized Representative OR**
**Countersignature (In states where applicable)**

ENDORSEMENT # 014

**This endorsement, effective 12:01 AM** 06/22/2004

**Forms a part of policy no.:** 1374229

**Issued to:** WYNN RESORTS L.L.C.

**By:** LEXINGTON INSURANCE COMPANY

## WAR RISK AND TERRORIST EXCLUSION

It is hereby understood and agreed, that notwithstanding any other war risk or terrorist exclusion that may be in the policy or any clause limiting or attempting to limit the application of any endorsements to the policy, this policy is amended as follows:

The policy does not cover loss or damage to property caused by, resulting from, contributed to or aggravated by any of the following perils, whether such loss or damage is accidental or intentional, intended or unintended, direct or indirect, proximate or remote or in whole or in part caused by, contributed to or aggravated by any perils insured by the policy:

(1) war, hostile or warlike action in time of peace or war, whether or not declared, including action in hindering, combating or defending against an actual, impending or expected attack:

    (a) by government or sovereign power (de jure or de facto) or by any authority maintaining or using military, naval or air forces; or

    (b) by military, naval or air forces; or

    (c) by an agent of any such government, power, authority or force.

(2) any weapon of war employing atomic fission or radioactive force whether in time of peace or war, whether or not its discharge was accidental;

(3) insurrection, rebellion, revolution, civil war, usurped power, or action taken by government authority in hindering, combating, or defending against such an occurrence, seizure or destruction;

(4) any act of one or more persons, whether known or unknown and whether or not agents of a sovereign power, for Terrorist purposes;

(5) hijacking or any unlawful seizure or wrongful exercise or control of any mode of transportation, including but not limited to aircraft, watercraft, truck(s), train(s) or automobile(s), including any attempted seizure of control, made by any person or persons, for Terrorist purposes.

Such loss or damage is excluded regardless of any other cause, event or intervention that contributes concurrently or in any sequence to the loss or damage.

Terrorist purpose means the use or threatened use of any unlawful means, including the use of force or violence against any person(s) or property (ies), for the actual or apparent purpose of intimidating, coercing, punishing or affecting society or some portion of society or government.

All other terms, conditions and exclusions of the policy remain unchanged.

_____

**Authorized Representative OR
Countersignature (In states where applicable)**

PR9513 (09/01)

ENDORSEMENT # 015

This endorsement, effective 12:01 AM 06/22/2004

Forms a part of policy no.: 1374229

Issued to: WYNN RESORTS L.L.C.

By: LEXINGTON INSURANCE COMPANY

### COMBINED PROPERTY/BOILER & MACHINERY MILLENNIUM ENDORSEMENT

This policy is hereby amended as follows:

A. The Insurer will not pay for Damage or Consequential Loss directly or indirectly caused by, consisting of, or arising from, the failure of any computer, data processing equipment, media microchip, operating systems, microprocessors (computer chip), integrated circuit or similar device, or any computer software, whether the property of the Insured or not, and whether occurring before, during or after the year 2000 that results from the inability to:

   1. correctly recognize any date as its true calendar date;

   2. capture, save, or retain, and/or correctly manipulate, interpret or process any data or information or command or instruction as a result of treating any date other than its true calendar date; and/or

   3. capture, save, retain or correctly process any data as a result of the operation of any command which has been programmed into any computer software, being a command which causes the loss of data or the inability to capture, save, retain or correctly process such data on or after any date.

B. It is further understood that the Insurer will not pay for the repair or modification of any part of an electronic data processing system or its related equipment, to correct deficiencies or features of logic or operation.

C. It is further understood that the Insurer will not pay for Damage or Consequential Loss arising from the failure, inadequacy, or malfunction of any advice, consultation, design, evaluation, inspection, installation, maintenance, repair or supervision done by the Insured or for the Insured or by or for others to determine, rectify or test, any potential or actual failure, malfunction or inadequacy described in A. above.

   Such Damage or Consequential Loss described in A, B, or C above, is excluded regardless of any other cause that contributed concurrently or in any other sequence.

   This endorsement shall not exclude subsequent Damage or Consequential Loss, not otherwise excluded, which itself results from a Defined Peril. Defined Peril shall mean fire, lightning, explosion, aircraft or vehicle impact, falling objects, windstorm, hail, tornado, hurricane, cyclone, riot, strike, civil commotion, vandalism, malicious mischief, earthquake, volcano, tsunami, freeze or weight of snow, sudden and accidental breakdown of an object, including mechanical and electrical breakdown.

All other terms, conditions and exclusions of this policy remain unchanged.

AUTHORIZED REPRESENTATIVE
OR Countersignature (In states where applicable)

69813 (2/98)