# Exhibit B(3)

    2)    Being taken to and returned from that place.

This Coverage Extension is included within the Limits of Insurance applicable to the "premises" from which the Covered Property is removed.

  b.   Away From Your Premises

We will pay up to $5,000 for "loss" to Covered Property while it is away from your "premises."

But if a higher Limit of Insurance is specified in the Declarations, the higher limit will apply.

The limit for this Coverage Extension is additional insurance.

## B.  EXCLUSIONS

1.   We will not pay for a "loss" caused directly or indirectly by any of the following. Such "loss" is excluded regardless of any other cause or event that contributes concurrently or in any sequence to the "loss."

  a.   GOVERNMENTAL ACTION

Seizure or destruction of property by order of governmental authority.

But we will pay for acts of destruction ordered by governmental authority and taken at the time of a fire to prevent its spread if the fire would be covered under this Coverage Form.

  b.   NUCLEAR HAZARD

    1)    Any weapon employing atomic fission or fusion; or

    2)    Nuclear reaction or radiation, or radioactive contamination from any other cause. But we will pay for direct "loss" caused by resulting fire if the fire would be covered under this Coverage Form.

  c.   WAR AND MILITARY ACTION

    1)    War, including undeclared or civil war;

    2)    Warlike action by a military force, including action in hindering or defending against an actual or expected attack, by any government, sovereign or other authority using military personnel or other agents; or

    3)    Insurrection, rebellion, revolution, usurped power or action taken by governmental authority in hindering or defending against any of these.

2.   We will not pay for a "loss" caused by or resulting from any of the following:

  a.   Delay, loss of use, loss of market or any other consequential loss.

  b.   Dishonest acts by you, anyone else with an interest in the property, or your or their employees or authorized representatives, or anyone entrusted with the property, whether or not acting alone or in collusion with other persons or occurring during the hours of employment.

But this exclusion does not apply to a carrier for hire.

  c.   Errors or omissions in processing or copying.

But we will pay for direct "loss" caused by resulting fire or explosion if these causes of "loss" would be covered by this Coverage Form.

  d.   Electrical or magnetic injury, disturbance or erasure of electronic recordings.

But we will pay for direct "loss" caused by lightning.

  e.   Voluntary parting with any property by you or anyone entrusted with the property if induced to do so by any fraudulent scheme, trick, device or false pretense.

Copyright, ISO Commercial Risk Services, Inc.

CM0067(Ed.07/88)
LX1109

     f.   Unauthorized instructions to transfer property to any person or to any place.

3.  We will not pay for a "loss" caused by or resulting from any of the following. But if "loss" by a Covered Cause of Loss results, we will pay for that resulting "loss."

    a.  Weather conditions. But this exclusion only applies if weather conditions contribute in any way with a cause or event excluded in paragraph 1. above to produce the "loss."

    b.  Acts or decisions, including the failure to act or decide, of any person, group, organization or governmental body.

    c.  Faulty, inadequate or defective:

      1)  Planning, zoning, development, surveying, siting;

      2)  Design, specifications, workmanship, repair, construction, renovation, remodeling, grading, compaction;

      3)  Materials used in repair, construction, renovation or remodeling; or

      4)  Maintenance;

      of part or all of any property wherever located.

    d.  Collapse except as provided in the Additional Coverage - Collapse section of this Coverage Form.

    e.  Wear and tear, any quality in the property that causes it to damage or destroy itself, gradual deterioration; insects, vermin or rodents.

## C. LIMITS OF INSURANCE

The most we will pay for "loss" in any one occurrence is the applicable Limit of Insurance shown in the Declarations.

## D. DEDUCTIBLE

We will not pay for "loss" in any one occurrence until the amount of the adjusted "loss" before applying the applicable Limits of Insurance exceeds the Deductible shown in the Declarations. We will then pay the amount of the adjusted "loss" in excess of the Deductible, up to the applicable Limit of Insurance.

## E. ADDITIONAL CONDITIONS

The following conditions apply in addition to the Commercial Inland Marine Conditions and the Common Policy Conditions:

1.  COVERAGE TERRITORY

    We cover property:

    a.  Within your "premises;" and

    b.  Away from your "premises" while in transit or within premises of others if those premises are located or the transit is within:

      1)  The United States of America;

      2)  Puerto Rico; and

      3)  Canada.

2.  VALUATION - SPECIFICALLY DECLARED ITEMS

    The following is added to Commercial Inland Marine General Condition E. Valuation:

Copyright, ISO Commercial Risk Services, Inc.
CM0067(Ed.07/88)
LX1109

The value of each item of property that is specifically declared and described in the Declarations is the applicable Limit of Insurance shown in the Declarations for that item.

3.  PROTECTION OF RECORDS

Whenever you are not open for business, and except while you are actually using the property, you must keep all "valuable papers and records" in receptacles that are described in the Declarations.

4.  RECOVERIES

The following is added to Commercial Inland Marine Loss Condition 1. Recoveries:

If either you or we recover any property after loss settlement, that party must give the other prompt notice. At your option, the property will be returned to you. If so, your "loss" will be readjusted based on the amount you received for the property recovered, with allowance for recovery expenses incurred.

F.  DEFINITIONS

1.  "Loss" means accidental loss or damage.

2.  "Valuable papers and records" means inscribed, printed or written documents, manuscripts or records, including abstracts, books, deeds, drawings, films, maps or mortgages.

But "valuable papers and records" does not mean "money" or "securities," converted data, programs or instructions used in your data processing operations, including the materials on which the data is recorded.

3.  "Premises" means that interior portion of the building at the address shown in the Declarations that you occupy for your business.

4.  "Money" means:

a.  Currency, coins and bank notes whether or not in current use; and

b.  Travelers checks, register checks and money orders held for sale to the public.

5.  "Securities" means negotiable and non-negotiable instruments or contracts representing either "money" or other property and includes:

a.  Tokens, tickets, revenue and other stamps whether or not in current use; and

b.  Evidences of debt issued in connection with credit or charge cards, which cards are not of your own issue;

but does not include "money."

Copyright, ISO Commercial Risk Services, Inc.

CM0067(Ed.07/88)
LX1109

TRANSPORTATION FORM

Inland Marine

Attached to and forming part of Policy No. __AW1374229__ Exp. Date __06/22/2005_____

Issued to __WYNN RESORTS, L.L.C._____

1.  This Policy covers on lawful goods and merchandise of the Insured or held by them in trust or on commission or on consignment or property of others for which the Insured may be liable or on which they have made advances.

2.  This Policy covers the property insured while in due course of transit only at risk of the Insured within and between the States of the United States, the District of Columbia and Canada, excluding Alaska and Hawaii, from the time the property leaves the store, warehouse or factory at initial point of shipment and continuously thereafter, including while on docks, wharves, piers, bulkheads, depots, stations or platforms, until delivered at the store, warehouse or factory at destination.

3.  This Company's liability under this policy shall not exceed:
    (a) $250,000 while in the custody of any Truckman or Trucking   Company;
    (b) $250,000 while in the custody of any Railroad or the Railway, Express   Agency (including while on ferries and/or in railroad cars on transfers or lighters);
    (c) $250,000 while in the custody of a Scheduled Air Transportation Carrier;
    (d) $250,000 while in trucks, trailers or semi-trailers owned, leased or operated by or for the Insured;
    (e) $NOT COVERED while in the custody of messengers or while contained in or on hand carts, hand trucks or taxicabs.

    In no event shall this Company be liable for more than $250,000 in any one casualty, either in case of partial or total loss, or salvage charges, or any other charges, or expenses, or all combined.

4.  THIS POLICY INSURES:
    Against all risks of direct physical loss of or damage to the insured property from any external cause (including General Average and/or salvage charges and expenses), except as herein excluded.

5.  THIS POLICY DOES NOT INSURE:
    (a) Accounts, bills, bullion, coins, currency, deeds, evidences of debt, money, notes, securities, stamps, precious stones, fine arts or jewelry;
    (b) Against loss or damage resulting from inadequate packing or improper preparation for shipment or from insecure stowage when not stowed by the carrier;
    (c) Against loss or damage by insects, vermin, moths, rodents, worms and other buglike creatures including larvae or pupae thereof leakage, evaporation, shrinkage, wetness or dampness, contamination, change in color, odor, texture or finish, extremes or changes of temperature including freezing, breakage, marring, chipping, denting, scratching, or by being scented, molded, rusted, rotted, soured or changed in flavor unless caused by fire, lightning, windstorm, vandalism and malicious mischief, flood, explosion or collision, or derailment or overturning of vehicle while on land, or collision, derailment or overturning of vehicle while on land, or collision or crashing of aircraft while in flight, or by the vessel, craft or lighter being stranded, sunk, burned or in collision while waterborne;
    (d) Against loss, damage or expense caused by or resulting from delay, loss of market, loss of use, inherent vice or gradual deterioration;
    (e) Against loss, damage or expense caused by or resulting from strikes, lockouts, labor disturbances, riots, civil commotion's, or the acts of any persons taking part in any such occurrence or disorder;
    (f) Import shipments except only after Marine Insurance has ceased to cover, nor export shipments after laden on board export conveyance or under the protection of marine Insurance, whichever first occurs;
    (g) Shipments by mail or parcel post;
    (h) Animals, unless specifically named herein, and then only against death or destruction resulting from or made necessary as consequence of a peril insured against;

FORM 3715 √                           1 or 5

(i)  Against loss caused by neglect of the Insured to use all reasonable means to save and preserve the property at and after any disaster insured against;

(j)  Against loss, damage or expense caused by or resulting from infidelity and dishonesty either or both of any person or persons in employment or service of the Insured, whether during regular hours of Employment or not (carriers for hire except);

(k)  Against loss or damage caused by or resulting from (1) hostile or warlike action in time of peace or war, including action in hindering combating or defending against an actual, impending, or expected attack, (a) by any government or sovereign power (de jure or de facto), or by any authority maintaining or using military, naval or air forces; or (b) by military, naval or air forces; or (c) by an agent of any such government, power, authority or forces; (2) any weapon of war employing atomic fission or radioactive force whether in time of peace or war; (3) insurrection, rebellion, revolution, civil war, usurped power; or action taken by governmental authority in hindering, combating or defending against such an occurrence, seizure or destruction under quarantine or Customs regulations, confiscation by order of any government or public authority, or risks of contraband or illegal transportation or trade;

(l)  Against loss by nuclear reaction or nuclear radiation or radioactive contamination, all whether controlled or uncontrolled, and whether such loss be direct or indirect, proximate or remote, or be in whole or in part caused by, contributed to, or aggravated by the peril(s) insured against in this policy; however, subject to the foregoing and all provisions of this policy, direct loss by fire resulting from nuclear reaction or nuclear radiation or radioactive contamination is insured against by this policy;

6.  **VALUATION:**
The property shall be valued at actual invoice cost, including prepaid or advanced freight, if any, together with such costs an charges (including the commission of the insured as selling agent, but excluding duty) as may have accrued and become legally due thereon. In the event of there being no invoice, the valuation of the merchandise insured hereunder shall be the actual cash market value of the property insured at point of destination on the date of disaster.

7.  **PREMIUM READJUSTMENT AND REPORT OF SHIPMENTS:**
The premium charged under this policy is abased on an estimate of $ _Included_ value of shipment during the period insured, and the Insured warrants to report to this Company at the end of _N/A_ (policy year, unless otherwise specified) the actual value of all shipments (in accordance with the valuation clause contained in this policy) covered hereunder during the period for which such report is required, and upon the total of all reported shipments exceeding in the aggregate the said estimated value the Insured agrees to pay this Company additional premium at the rate of _N/A_ per $100.00, such additional premium to become due and payable to this Company immediately upon the furnishing of the aforesaid report or reports; but in the event of the actual shipments falling short of the said estimated value then this Company will return premium at the same rate on the deficiency, but no return premium shall become due or payable until the expiration of this policy.

8.  **CLAIM AGAINST CARRIER:**
In the event of any loss or damage to the goods and/or merchandise insured hereunder the Insured shall immediately make claim in writing against the carrier or carriers involved.

9.  **DEDUCTIBLE:**
Each claim for loss or damage (separately occurring), shall be adjusted separately and from the amount of each adjusted claim or the applicable limit of liability, whichever is less, the sum of _$10,000_ shall be deducted. In the event of any recovery or salvage on a loss which has been or is being or is about to be paid hereunder, such recovery or salvage shall accrue entirely to the benefit of the Company under this policy until the sum paid by them has been made up.

CONDITIONS

10. OTHER INSURANCE:
If at the time of loss or damage there is available to a named or unnamed insured or any other interested party any other insurance which would apply in the absence of this policy, the insurance under this policy shall apply only as excess insurance over such other insurance.

11. IMPAIRMENT OF RECOVERY RIGHTS:

Any act or agreement by the Insured before or after loss or damage whereby any right of the Insured to recover in whole or in part for loss or damage to property covered hereunder against any carrier, bailee or other party liable therefor, is released, impaired or lost, shall render this policy null and void, but the Insurer's right to retain or recover the premium shall not be affected. The Company is not liable for any loss or damage which, without its written consent, has been settled or compromised by the Insured. It shall, however, be permissible for the Insured without prejudice to this insurance, to accept the ordinary Bills of Lading or Shipping Receipts issued by carriers limiting their liability to less than the actual value.

12. NO BENEFIT TO BAILEE:

This insurance shall in no wise inure directly or indirectly to the benefit of any carrier or other bailee.

13. NOTICE OF LOSS:

The Insured shall as soon as practicable report in writing the Company or its agent every loss, damage or occurrence which may give rise to a claim under this policy and shall also file with the Company or its agent within ninety (90) days from date of discovery of such loss, damage or occurrence, a detailed sworn proof of loss.

14. SETTLEMENT OF LOSS:

All adjusted claims shall be paid or made good to the Insured within sixty (60) days after presentation and acceptance of satisfactory proof of interest and loss at the office of the Company. No loss shall be paid or made good if the Insured has collected the same from others.

15. COMPANY'S OPTIONS:

It shall be optional with the Company to take all, or any part, of the property at the agreed or appraised value, or to repair, rebuild or replace the property destroyed or damaged with other of like kind and quality within a reasonable time, or giving notice of its intention so to do within sixty (60) days after the receipt of the proof of loss herein required.

16. SUE & LABOR:

In the event of loss of or damage to the property covered hereunder, it shall be lawful and necessary for the Insured or his or their factors, servants or assigns to sue, labor and travel for, in and about the defense, safeguard and recovery of the said property or any part thereof without prejudice to this insurance or waiver of the Insured's rights hereunder.

17. SEPARATION OF DAMAGED GOODS:

It shall be the duty of the Insured or of the agents, factors or consignees of the Insured to separate, in case of loss the sound from the damaged merchandise and/or goods. The liability of this Company hereunder being limited to the loss, by the risks and perils hereby insured against, on the damaged portion only.

18. CLAIMS AGAINST THIRD PARTIES:

In the event of any loss or damage to the property covered hereunder the Insured shall immediately make claim in writing against the carrier(s), bailee(s) or others involved.

19. APPRAISAL:

If the Insured and the Company fail to agree as to the amount of loss, each shall, on the written demand of either, made within sixty (60) days after receipt of proof of loss by the Company, select a competent and disinterested appraiser, and the appraisal shall be made at a reasonable time and place. The appraisers shall first select a competent and disinterested umpire, and failing for fifteen (15) days to agree upon such umpire, then, on the request of the Insured or the Company, such umpire shall be selected by a judge of a court of record in the State in which such appraisal is pending. The appraisers shall then appraise the loss stating separately the actual cash value at the time of loss and the amount
of loss, failing to agree shall submit their differences to the umpire. An award in writing of any two shall determine the amount of loss. The Insured and the Company shall each pay his or its chosen

appraiser and shall bear equally the other expenses of the appraisal and umpire. The Company shall not be held to have waived any of its rights by any act relating to appraisal.

20. EXAMINATION UNDER OATH:
The Insured, as often as may be reasonable required, shall exhibit to any person designated by the Company all that remains of any property herein described, and shall submit, and in so far as is within his or their power cause his or their employees, members of the household and others to submit to examinations under oath by any person named by the Company and subscribe the same; and, as often as may be reasonable required, shall produce for examination all writings, books of account, bills, invoices and other vouchers, or certified copies thereof if originals be lost, at such reasonable time and place as may be designated by the Company or its representative, and shall permit extracts and copies thereof to be made. No such examination under oath or examination of books or documents, nor any other act of the Company or any of its employees or representatives in connection with the investigation of any loss or claim hereunder, shall be deemed a waiver of any defense which the Company might otherwise have with respect to any loss or claim, but all such examinations and acts shall be deemed to have been made or done without prejudice to the Company's liability.

21. SUIT:
No suit, action or proceeding for the recovery of any claim under this policy shall be sustainable in any court of law or equity unless the same be commenced within twelve (12) months next after discovery by the Insured of the occurrence which gives rise to the claim, provided however, that if by the laws of the State within which this policy is issued such limitation is invalid, then any such claims shall be void unless such actions, suite or proceeding be commenced within the shortest limit of time permitted by the laws of such State.

22. MACHINERY:
In the event of loss of or damage to machinery consisting, when complete for sale or use, of several parts, the Company shall only be liable for the value of the part(s) lost or damaged, including the cost of installation.

23. LABELS:
In the event of loss of or damage to labels, capsules or wrappers, the loss shall be adjusted on the basis of an amount sufficient to pay the cost of new labels, capsules or wrappers.

24. SUBROGATION OR LOAN:
If in the event of loss or damage the Insured shall acquire any right of action against any individual, firm or corporation for loss of, or damage to, property covered hereunder, the Insured will, if requested by the Company, assign and transfer such claim or right of action the Company, or at the Company's option, execute and deliver to the Company the customary form of loan receipt upon receiving an advance funds in respect of the loss or damage; and will subrogate the Company to, or will hold in trust for the Company, all such rights of action to the extent of the amount paid or advanced, and will permit suit to be brought in the Insured's name under the direction of and at the expense of the Company.

25. MISREPRESENTATION AND FRAUD:
This entire policy shall be void if, whether before or after a loss, the Insured has concealed or misrepresented any material fact or circumstance concerning this insurance or the subject thereof, or the interest of the Insured therein, or in case of any fraud or false swearing by the Insured relating thereto.

26. EXAMINATION OF RECORDS:
The Insured shall, as often as may be reasonably required during the term of this policy and for one (1) year thereafter, produce for examination by the Company or its duly authorized representative all the books and records, inventories and accounts relating to the property covered hereunder.

27. ABANDONMENT:
There can be no abandonment to the Company of any property.

28. CANCELLATION:

This policy may be canceled by the Insured by surrender thereof to the Company or any of its authorized agents or by mailing to the Company written notice stating when thereafter such cancellation shall be effective. This policy may be canceled by the Company by mailing to the Insured at the address shown in this policy or last known address written notice stating when, not less than fifteen (15) days thereafter, such cancellation shall be effective. The mailing of notice as aforesaid shall be sufficient proof of notice. The time of surrender or the effective date of the cancellation stated in the notice shall become the end of the policy period. Delivery of such written notice either by the Insured or by the Company shall be equivalent to mailing.

In the event of cancellation by either the Insured or the Company, the Insured agrees to furnish this Insurance Company with an accurate statement showing the total value of all shipments, covered by this policy between the date of its attachment up to and including the date of cancellation, and further agrees to pay premium on this amount at the rate stated in the above adjustment clause; if the premium this determined exceeds the initial premium paid, the amount of such excess shall immediately become payable to this Insurance Company, and per contra, any unearned premium (being the amount by which the initial premium exceeds the premium due), shall be returned to the Insured.

If the Insured cancels, earned premium shall be computed in accordance with the customary short rate table and procedure. If the Company cancels, earned premium shall be computed pro-rate. Premium adjustment may be made at the time cancellation is effected, and, if not then made, shall be made as soon a practicable after cancellation becomes effective. The Company's check or the check of its representative mailed or delivered as aforesaid shall be sufficient tender of any refund or premium due to the Insured.

29. ASSIGNMENT OF POLICY:

This policy shall be void if assigned or transferred without the written consent of this Company.

30. CONFORMITY OF STATUTE:

Terms of this policy which are in conflict with the statutes of the State wherein this policy is issued are hereby amended to confirm to such statutes.

31. CHANGES:

Notice to any agent or knowledge processed by any agent or by any other persons shall not effect a waiver or a change in any part of this policy, or stop the Company from asserting any right under the terms to this policy, nor shall the terms of this policy be waived or changed, except by endorsement issued to form a part of this policy.

INSURING AGREEMENT
DATA PROCESSING MEDIA

1. **PROPERTY INSURED:** ACTIVE DATA PROCESSING MEDIA, BEING PROPERTY OF THE INSURED OR PROPERTY OF OTHERS FOR WHICH THE INSURED MAY BE LIABLE.

2. **PROPERTY EXCLUDED:** THIS INSURING AGREEMENT DOES NOT INSURE ACCOUNTS, BILLS, EVIDENCES OF DEBT, VALUABLE PAPERS, RECORDS, ABSTRACTS, DEEDS, MANUSCRIPTS OR OTHER DOCUMENTS EXCEPT AS THEY MAY BE COVERTED TO DATA PROCESSING MEDIA FORM, AND THEN ONLY IN THAT FORM, OR ANY DATA PROCESSING MEDIA WHICH CANNOT BE REPLACED WITH OTHER OF LIKE KIND AND QUALITY.

3. **LIMITS OF LIABILITY:** SEE "DECLARATIONS".

4. **PERILS INSURED:** THIS INSURING AGREEMENT INSURES AGAINST ALL RISKS OF DIRECT PHYSICAL LOSS OR DAMAGE TO THE PROPERTY COVERED, EXCEPT AS HEREINAFTER PROVIDED.

5. **PERILS EXCLUDED:** THIS INSURING AGREEMENT DOES NOT INSURE AGAINST LOSS, DAMAGE, OR EXPENSE RESULTING FROM OR CAUSED DIRECTLY OR INDIRECTLY BY:

   A. DATA PROCESSING MEDIA FAILURE OR BREAKDOWN OR MALFUNCTION OF THE DATA PROCESSING SYSTEM INCLUDING EQUIPMENT AND COMPONENT PARTS WHILE SAID MEDIA IS BEING RUN THROUGH THE SYSTEM, UNLESS FIRE OR EXPLOSION ENSUES AND THEN ONLY FOR THE LOSS, DAMAGE OR EXPENSE CAUSED BY SUCH ENSUING FIRE OR EXPLOSION;

   B. ELECTRICAL OR MAGNETIC INJURY, DISTURBANCE OR ERASURE OF ELECTRONIC RECORDINGS, EXCEPT BY LIGHTENING;

   C. DRYNESS OR DAMPNESS OF ATMOSPHERE, EXTREMES OF TEMPERATURE, CORROSION, OR RUST UNLESS DIRECTLY RESULTING FROM PHYSICAL DAMAGE TO THE DATA PROCESSING SYSTEM'S AIR CONDITIONING FACILITIES CAUSED BY A PERIL NOT EXCLUDING BY THE PROVISIONS OF THIS INSURING AGREEMENT;

   D. DELAY OF LOSS OF MARKET;

   E. INHERENT VICE, WEAR, TEAR, GRADUAL DETERIORATION OR DEPRECIATION;

   F. ANY DISHONEST, FAUDULENT OR CRIMINAL ACT BY ANY INSURED, A PARTNER THEREIN OR AN OFFICER, DIRECTOR OR TRUSTEE THEREOF, WHETHER ACTING ALONE OR IN COLLUSION WITH OTHERS;

   G. WAR RISKS OR NUCLEAR RISKS AS EXCLUDED IN THE POLICY TO WHICH THIS INSURING AGREEMENT IS ATTACHED.

6. **VALUATION:** THE LIMIT OF THIS COMPANYS' LIABILITY FOR LOSS OR DAMAGE SHALL NOT EXCEED:

   A. AS RESPECTS PROPERTY SPECIFICALLY DESCRIBED IN THE "DECLARATIONS", THE AMOUNT PER ARTICLE SPECIFIED THEREIN, SAID AMOUNT BEING THE AGREED VALUE THEREOF FOR THE PURPOSE OF THIS INSURANCE;

   B. AS RESPECTS ALL OTHER PROPERTY, THE ACTUAL REPRODUCTION COST OF THE PROPERTY; IF NOT REPLACED OR REPRODUCED, BLANK VALUE OF MEDIA; ALL SUBJECT TO THE APPLICABLE LIMIT OF LIABILITY STATED IN THE "DECLARATIONS".

7. **DEDUCTIBLE:** EACH AND EVERY LOSS OCCURRING HEREUNDER SHALL BE ADJUSTED SEPARATELY AND FROM THE AMOUNT OF EACH LOSS WHEN SO ADJUSTED THE AMOUNT INDICATED IN THE "DECLARATIONS" SHALL BE DEDUCTED.

8. **DEFINITIONS:** THE TERM "ACTIVE DATA PROCESSING MEDIA", WHEREVER USED IN THIS CONTRACT, SHALL MEAN ALL FORMS OF CONVERTED DATA AND/OR INSTRUCTION VEHICLES EMPLOYED IN THE INSURED'S DATA PROCESSING OPERATION, EXCEPT ALL SUCH UNUSED PROPERTY, AND THE FOLLOWING

_____

(INSERT NAMES OF MEDIA NOT TO BE INSURED)

WHICH THE INSURED ELECTS NOT TO INSURE HEREUNDER.

ALL OTHER TERMS AND CONDITIONS OF THE POLICY NOT IN CONFLICT HEREWITH REMAIN UNCHANGED.
FORM 20031

ENDORSEMENT # 001

**This** endorsement, effective 12:01 AM  06/22/2004

**Forms** part of policy no.: AW1374229

**Issued to:**  WYNN RESORTS L.L.C.

**By:**  ALLIED WORLD ASSURANCE COMPANY (US), INC.

## CONTRIBUTING INSURANCE ENDORSEMENT

This endorsement modifies all of the insurance provided under this policy:

ITEM 3. Policy Limit of Insurance:

$2,500,000 part of  $10,000,000 part of $65,140,787 per occurrence limit Otherwise shown as 25%   Our Percentage

and

$0 excess of $10,000,000 part of $65,140,787 per occurrence limit Otherwise shown as 0% Our Percentage

1. This endorsement applies to all coverages and all limits of insurance shown in this policy.

2. The Policy Limit of Insurance shown above represents our percentage (shown as Our Percentage) of the total limits of insurance for all contributing insurance covering the same property.

3. Subject to the Policy Limit of Liability shown in Item 3., the most we will pay is limited to our percentage of any covered loss, regardless of whether one or more causes of loss contribute to the loss.

All other terms and conditions of this Policy remain unchanged.

Authorized Representative OR
Countersignature (In states where applicable)

LX9598 (Ed. 05/03)

ENDORSEMENT # 002

This endorsement, effective 12:01 AM 06/22/2004

Forms a part of policy no.:  AW1374229

Issued to: WYNN RESORTS L.L.C.

By: ALLIED WORLD ASSURANCE COMPANY (US) INC.

FLOOD DEDUCTIBLE ENDORSEMENT

FLOOD:

$100,000 PER ANY SINGLE ONE OCCURRENCE, EXCEPT;

FLOOD NAMED STORM:

5% OF THE TIV AT EACH LOCATION INVOLVED IN LOSS OR DAMAGE, SUBJECT TO
A MINIMUM OF $100,000, ANY ONE OCCURRENCE FOR THE PERIL OF FLOOD
NAMED STORMS (A STORM THAT HAS BEEN DECLARED BY THE NATIONAL WEATHER
SERVICE TO BE A HURRICANE, TYPHOON, TROPICAL CYCLONE OR TROPICAL
STORM).

_____
**Authorized Representative OR**
**Countersignature (In states where applicable)**

LEXDOC021
LX0404

ENDORSEMENT # 003

This endorsement, effective 12:01 AM 06/22/2004

Forms a part of policy no.:  AW1374229

Issued to: WYNN RESORTS L.L.C.

By: ALLIED WORLD ASSURANCE COMPANY (US) INC.

## EARTHQUAKE ENDORSEMENT

1.    In consideration of an additional premium of INCLUDED, it is understood and agreed that Paragraph B. EXCLUSIONS, Item b. Earth Movement, of CAUSES OF LOSS - SPECIAL FORM CP 1030 is amended as follows.

    b.    Earth Movement

        1)    Any earth movement (other than sinkhole collapse and earthquake), such as landslide, or earth sinking, rising or shifting. But if loss or damage by fire or explosion results, we will pay for that resulting loss or damage.

and special Limits of Liability and a special deductible are added as follows:

    A.    LIMITS OF LIABILITY: The liability of the Company for loss or damage caused by earthquake and volcanic eruption shall not exceed the sum of $25,000,000 for loss or damage at any one insured location. Notwithstanding the limit of liability stated herein, if any, liability shall not exceed the sum of $25,000,000 due to any one earthquake or volcanic eruption loss nor shall it exceed the sum of $25,000,000 in any one year period or policy period, whichever is less, commencing 06/22/2004. This policy excludes locations located in California, Hawaii, Alaska & Puerto Rico.

    B.    DEDUCTIBLE: The sum of $100,000 shall be deducted from any adjusted claim due to earthquake or volcanic eruption.

2.    Each loss by earthquake or volcanic eruption shall constitute a single claim hereunder; provided that if more than one earthquake shock or volcanic eruption shall occur within any period of 72 hours during the term of this endorsement, such shocks shall be considered to constitute a single earthquake or volcanic eruption.

3.    If the coverage of the policy to which this endorsement is attached includes both Property Damage and Business Interruption, the foregoing limits shall be the maximum amounts collectible under this policy for loss or damage resulting from the peril described in Paragraph 1. A. above, regardless of whether the loss involves Property Damage alone or both Property Damage and Business Interruption.

_Robert E. Dolan_

_____

Authorized Representative OR
Countersignature (In states where applicable)

PR9025(09/92)
LX1153

ENDORSEMENT # 004

This endorsement, effective 12:01 AM 06/22/2004

Forms a part of policy no.: AW1374229

Issued to: WYNN RESORTS L.L.C.

By: ALLIED WORLD ASSURANCE COMPANY (US) INC.

## EQUIPMENT BREAKDOWN ENDORSEMENT
(Boiler and Machinery)

(1) This policy covers loss caused by or resulting from an "accident" to "covered equipment." "Accident" means direct physical loss as follows:

(a) mechanical breakdown, including rupture or bursting caused by centrifugal force;
(b) artificially generated electric current, including electric arcing, that disturbs electrical devices, appliances or wires;
(c) explosion of steam boilers, steam pipes, steam engines or steam turbines owned or operated by or under the control of the Insured;
(d) loss or damage to steam boilers, steam pipes, steam engines or steam turbines caused by or resulting from any condition or event inside such equipment; or
(e) loss or damage to hot water boilers or other water heating equipment caused by or resulting from any condition or event inside such boilers or equipment.

"Accident" does not include destruction, disruption, distortion or corruption of any computer data, coding, program or software.

(2) The following coverages also apply to loss caused by or resulting from an "accident" to "covered equipment". These coverages do not provide additional amounts of insurance.

(a) Expediting Expense
The Company shall be liable for the reasonable extra cost to make temporary repairs and to expedite permanent repairs or permanent replacement of damaged covered property. The Company's total liability for Expediting Expense resulting from an "accident" to "covered equipment", is the amount shown in the Equipment Breakdown Schedule.

(b) Hazardous Substances
The Company shall be liable for the additional cost to repair or replace covered property because of contamination by a hazardous substance. This includes the additional expenses to clean up or dispose of such property. Hazardous substance means any substance other than ammonia that has been declared to be hazardous to health by a governmental agency. Additional costs mean those beyond that which would have been required had no hazardous substance been involved.
The Company's total liability for loss or damage under this coverage, including actual loss of Business Interruption sustained, necessary Extra Expense incurred, loss of Rental Value and loss under Spoilage coverage, is $100,000, unless otherwise shown in the Equipment Breakdown Schedule. Any coverage under the policy for decontamination or pollution cleanup does not apply to this endorsement. Exclusion R.(1) of the form to which this endorsement is attached does not apply to this Hazardous Substances coverage.

(c) Spoilage
The Company shall be liable for:
(i) the Insured's loss of "perishable goods" due to spoilage;
(ii) the Insured's loss of "perishable goods" due to contamination from the release of refrigerant, including but not limited to ammonia;

PR9566 (11/02)  √                                    1

(iii) necessary expenses incurred to reduce the amount of loss under this coverage. The Company shall be liable for such expenses to the extent that they do not exceed the amount of loss that otherwise would have been payable under this coverage.

(iv) the Insured's loss of "perishable goods" due to spoilage caused by an "accident" to equipment that is owned by a utility, landlord, or other supplier with whom the Insured has a contract for provision of any of the following services: electrical power, communications, waste disposal, air conditioning, refrigeration, heating, gas, air, water or steam. This coverage applies only to loss that occurs in buildings owned by the Insured.

If the Insured is unable to replace the "perishable goods" before its anticipated sale, payment will be determined on the basis of the sales price of the "perishable goods" at the time of the "accident", less discounts and expenses that otherwise would have been incurred. Otherwise payment will be determined in accordance with the Valuation provision of the policy. The Company's total liability for loss or damage under this coverage is the amount shown in the Equipment Breakdown Schedule.

(d) Computer Equipment

The Company shall be liable for loss or damage caused by or resulting from an "accident" to "computer equipment." The Company's total liability for loss or damage under this coverage, including actual loss of Business Interruption sustained, necessary Extra Expense incurred, and loss of Rental Value is the amount shown in the Equipment Breakdown Schedule. Computers used primarily to control or operate "covered equipment" are not subject to this limit.

The coverage provided by this provision shall be primary to any coverage provided in the form to which this endorsement is attached for "accident" to "computer equipment." In no event shall liability for loss to "computer equipment" under this endorsement and the form to which it is attached exceed the sublimit(s) stated in the Sublimits of Liability section of the form to which this endorsement is attached.

(e) Data Restoration

The Company shall be liable for the cost to research, replace and restore data, including programs and operating systems, that is lost or corrupted due to an "accident." The Company's total liability for loss or damage under this coverage is $100,000 unless otherwise shown in the Equipment Breakdown Schedule.

(f) CFC Refrigerants

The Company shall be liable for the additional cost to repair or replace covered property because of the use or presence of a refrigerant containing CFC (chlorofluorocarbon) substances. This means the additional expense to do the least expensive of the following:

(i) Repair the damaged property and replace any lost CFC refrigerant;

(ii) Repair the damaged property, retrofit the system to accept a non-CFC refrigerant and charge the system with a non-CFC refrigerant; or

(iii) Replace the system with one using a non-CFC refrigerant.

Additional costs mean those beyond what would have been required had no CFC refrigerant been involved. The Company's total liability for loss or damage under this coverage, including actual loss of Business Interruption sustained, necessary Extra Expense incurred, loss of Rental Value and loss under Spoilage coverage, is the amount shown in the Equipment Breakdown Schedule.

(3) BUSINESS INTERRUPTION / EXTRA EXPENSE / RENTAL VALUE

Coverage for Business Interruption, Extra Expense and / or Rental Value provided herein shall apply as respects the Business Interruption, Extra Expense and Rental Value clauses, and any Additional Provisions applicable to Business Interruption, Extra Expense and Rental Value, of the policy to which this endorsement is attached, solely as a result of loss caused by or resulting from an "accident" to "covered equipment" as defined herein.

The Business Interruption, Extra Expense, Rental Value provisions, and any Additional Provisions applicable to Business Interruption, Extra Expense and Rental Value, of the policy to which this endorsement is attached are amended as follows:

(a) If so indicated in the Equipment Breakdown Schedule, Contingent Business Interruption does not apply to Equipment Breakdown coverage or applies only up to the limit specified on the Equipment Breakdown Schedule.

(b) As respects Equipment Breakdown coverage only, the Period of Restoration  provision is amended to read as follows:

Period of restoration means the period of time that:
(i) Begins with the date of direct physical loss or damage by any of the perils covered herein, at the described premises; and
(ii) Ends on the date when the property at the described premises should be repaired, rebuilt or replaced with reasonable speed and similar quality, plus the number of days, if any, indicated in the Equipment Breakdown Schedule for Extended Period of Restoration.

Period of restoration does not include any increased period required due to the enforcement of any ordinance or law that:
(i) Regulates the construction, use or repair, or requires the tearing down, of any property; or
(ii) Requires the Insured or others to test for, monitor, clean up, remove, contain, treat, detoxify, or neutralize, or in any way respond to, or assess the effects of "contaminants" or "pollutants" as defined in Section 9, Perils Excluded, Paragraph Q.

The expiration date of this policy will not cut short the period of restoration.

(4) ADDITIONAL PERILS EXCLUDED

The following exclusions are in addition to those in the policy attached hereto.

(a) With respect to coverage provided by this endorsement, the Company shall not be liable for loss or damage caused by or resulting from: fire; lightning; windstorm or hail; explosion of gas or unconsumed fuel within the furnace of any boiler or fired vessel or within the passages from that furnace to the atmosphere; any other explosion (except for explosion of steam boilers, steam piping, steam engines or steam turbines); smoke; aircraft or vehicles; riot or civil commotion; vandalism; sprinkler leakage; breakage of glass; falling objects; weight of snow, ice or sleet; freezing (caused by cold weather); collapse; or molten material.

(b) With respect to Business Interruption, Extra Expense and Rental Value coverages, the Company shall not be liable for any delay in resuming operations due to the need to reconstruct or reinput data or programs on "media."

(c) The Company shall not be liable for loss or damage caused by or resulting from:
(i) a hydrostatic, pneumatic, or gas pressure test of any boiler or pressure vessel; or an insulation breakdown test of any type of electrical equipment;
(ii) failure to use all reasonable means to protect "perishable goods" from damage following an "accident";
(iii) any defect, virus, loss of data or other situation within "media." But if loss or damage from an "accident" results, the Company shall be liable for that resulting damage.

(5) DEDUCTIBLES

Only as regards Equipment Breakdown Coverage, the DEDUCTIBLES provision is deleted and replaced with the following. Unless the Schedule indicates that the deductible is combined for all coverages, multiple deductibles may apply to any "one accident." If deductibles vary by type of "covered equipment" and more than one type of "covered equipment" is involved in any "one accident," the highest deductibles for each coverage will apply.

(a) Direct and Indirect Coverages
Unless otherwise shown in the Equipment Breakdown Schedule, the Direct Coverages Deductibles apply to all loss or damage covered by this endorsement, with the exception of those coverages subject to the Indirect Coverages Deductibles. Unless more specifically indicated in the Equipment Breakdown Schedule, the Indirect Coverages Deductibles apply to Business Interruption, Extra Expense and Rental Value.

(b) Application of Deductibles

    (i)  Dollar Deductibles

        The Company shall not be liable for loss or damage resulting from any "one accident" until the amount of loss or damage exceeds the applicable Deductible shown in the Equipment Breakdown Schedule. The Company shall then pay the amount of loss or damage in excess of the applicable deductible, up to the applicable LIMIT OF LIABILITY

    (ii)  Time Deductible

        If a time deductible is shown in the Equipment Breakdown Schedule, the Company shall not be liable for any loss occurring during the specified number of hours or days immediately following the "accident." If a time deductible is expressed in days, each day shall mean twenty-four consecutive hours.

    (iii)  Multiple of Average Daily Value (ADV)

        If a deductible is expressed as a number times ADV, that amount will be calculated as follows:

        The ADV (Average Daily Value) will be the net profit (or loss) and expenses as described in the policy attached hereto that would have been earned or incurred had no "accident" occurred during the period of interruption of business divided by the number of working days in that period. No reduction shall be made for the net profit (or loss) and expenses not being earned, or in the number of working days, because of the "accident" or any other scheduled or unscheduled shutdowns during the period of interruption. The ADV applies to all locations included in the valuation of the loss.

        The number indicated in the Equipment Breakdown Schedule shall be multiplied by the ADV as determined above. The result shall be used as the applicable deductible.

    (iv)  Percentage of Loss Deductibles

        If a deductible is expressed as a percentage of loss, the Company shall not be liable for the indicated percentage of the gross amount of loss or damage (prior to any applicable deductible) insured under the applicable coverage. If the dollar amount of such percentage is less than the indicated minimum deductible, the minimum deductible will be the applicable deductible.

(6) DEFINITIONS

    (a)  "Boilers and Vessels" means:

        (i)  Any boiler, including attached steam, condensate and feedwater piping; and

        (ii)  Any fired or unfired pressure vessel subject to vacuum or internal pressure other than the static pressure of its contents.

        This term does not appear elsewhere in this endorsement, but may appear in the Equipment Breakdown Schedule.

    (b)  "Computer equipment" means covered property that is electronic computer or other data processing equipment, including "media" and peripherals used in conjunction with such equipment.

    (c)  "Covered equipment" means covered property built to operate under vacuum or pressure, other than weight of contents, or used for the generation, transmission or utilization of energy. None of the following is "covered equipment":

        (i)  structure, foundation, cabinet, compartment or air supported structure or building;

        (ii)  insulating or refractory material;

        (iii)  sewer piping, underground vessels or piping, or piping forming a part of a sprinkler system;

        (iv)  water piping other than boiler feedwater piping, boiler condensate return piping or water piping forming a part of a refrigerating or air conditioning system;

        (v)  vehicle, aircraft, floating vessel or any equipment mounted on such vehicle, aircraft or floating vessel;

        (vi)  dragline, excavation or construction equipment; or

        (vii)  equipment manufactured by the Insured for sale.

    (d)  "Media" means all forms of electronic, magnetic and optical tapes and discs for use in any electronic computer or electronic data processing equipment.

(e) "One accident" means: if an initial "accident" causes other "accidents," all will be considered "one accident." All "accidents" that are the result of the same event will be considered "one accident."

(f) "Perishable Goods" means personal property maintained under controlled conditions for its preservation, and susceptible to loss or damage if the controlled conditions change.

(g) "Production Machinery" means any machine or apparatus that processes or produces a product intended for eventual sale. However, "production machinery" does not mean any fired or unfired pressure vessel other than a cylinder containing a movable plunger or piston.
This term does not appear elsewhere in this endorsement, but may appear in the Equipment Breakdown Schedule.

(h) "Service Interruption" means the Extension of Coverage provided in the form to which this endorsement is attached for interruption of business conducted by the Insured resulting from loss or damage to public utility plants, transformers or switching stations, substations furnishing heat, light, power, water, telephone or gas to the Insured's premises, but within one statute mile of the premises.

(7) SUSPENSION

When any "covered equipment" is found to be in, or exposed to a dangerous condition, any representative of the Company may immediately suspend the insurance against loss from an "accident" to said "covered equipment" by mailing or delivering a written notice of suspension to the Insured at the address as shown in the Declarations, or at the address where the "covered equipment" is located. Once suspended in this way, the insurance can be reinstated only by endorsement for that property. If so suspended, the Insured will get a pro rata refund of premium. But the suspension will be effective even if a refund has not been offered or made.

(8) COINSURANCE

If indicated in the Equipment Breakdown Schedule, specified coverages may be subject to coinsurance. The Company shall not pay for the full amount of the loss if the applicable limit is less than the product of the specified coinsurance percentage times the value of the property subject to the coverage at the time of the loss. Instead, the Company shall determine what percentage this calculated product is compared to the applicable limit and apply that percentage to the gross amount of loss. Then the applicable Deductible will be subtracted. The resulting amount, or the applicable limit, is the most the Company shall pay. The remainder of the loss will not be paid.

_Robert E. Jordan_

Authorized Representative OR
Countersignature (In states where applicable)

ENDORSEMENT # 005

This endorsement, effective 12:01 AM 06/22/2004

Forms a part of policy no.: AW1374229

Issued to: WYNN RESORTS L.L.C.

By: ALLIED WORLD ASSURANCE COMPANY (US) INC.

EQUIPMENT BREAKDOWN SCHEDULE

*The Company shall not be liable for more than the Equipment Breakdown Limit for loss or damage arising from any "one accident".*
*These coverages apply to all locations covered on the policy, unless otherwise specified. Wherever the term "Company" is used in the Equipment Breakdown Endorsement and the form to which it is attached, it shall also mean "Insured."*

| Coverages | Limits |
|---|---|
| Equipment Breakdown Limit | $ 65,140,787 |

Sublimits of Liability (sublimits are within, and do not increase, the Equipment Breakdown Limit stated above):

| | |
|---|---|
| Expediting Expense | $ 100,000 |
| Hazardous Substances | $ 100,000 |
| Spoilage | $ 100,000 |
| Computer Equipment | $ 100,000 |
| Data Restoration | $ 100,000 |
| CFC Refrigerants | $ 100,000 |
| Business Interruption | $ 5,000,000 |
| Extra Expense | $ Included |
| Rental Value | $ Included in Business Interruption |
| Contingent Business Interruption:<br>    Suppliers and/or Receivers of the Insured's<br>    Goods or Services | $ |
| "Service Interruption" | $ |

| Deductibles | |
|---|---|
| Combined, All Coverages | $ |

*If a Combined, All Coverages deductible is not entered above, the following deductibles are applicable:*

| | |
|---|---|
| Direct Coverages | $ ~~25,000~~  $10,000  *See Correct above. JP* |
| Indirect Coverages | $  24  : or hours; or times ADV. |
| Spoilage<br>(if no entry, see Direct Coverages) | $  : or<br>% of loss, $  minimum. |

PR9567 (11/02)                    1 of 2

## Other Conditions

Extended Period of Restoration: 0    days

Unless the interruption exceeds 24 hours, we will not pay for any loss under "Service Interruption" coverage.

Authorized Representative OR
Countersignature (In states where applicable)

PR9567 (11/02)

2 of 2

ENDORSEMENT # 006

**This endorsement,** effective 12:01 AM    06/22/2004

**Forms a part of policy no.:**  AW1374229

**Issued to:**  WYNN RESORTS L.L.C.

**By:**  ALLIED WORLD ASSURANCE COMPANY (US) INC.

FLOOD ENDORSEMENT

1.    In consideration of an additional premium of INCLUDED it is understood and agreed that the following is amended as follows:

    g.    Water

        1)  Water that backs up from a sewer or drain; or

        2)  Water under the ground surface pressing on, or flowing or seeping through:

            a)  Foundations, walls, floors or paved surfaces;

            b)  Basements, whether paved or not; or

            c)  Doors, windows or other openings.

            But if loss or damage by fire, explosion or sprinkler leakage results, we will pay for that resulting loss or damage.

     and special Limits of Liability and a special deductible are added as follows:

    A. LIMITS OF LIABILITY: The liability of the Company for loss or damage caused by or resulting from flood; meaning rising water, surface water, tidal water or tidal wave, rising (including the overflowing or breaking of boundaries) of lakes, ponds, reservoirs, rivers, harbors, streams and similar bodies of water whether driven by wind or not and spray from any of the foregoing shall not exceed the sum of $25,000,000 at any one insured location. Notwithstanding the limit of liability stated herein, if any, liability shall not exceed the sum of $25,000,000 in any single one year period or policy period, whichever is less, commencing 06/22/2004. This policy excludes locations partially or wholly located within Special Flood Hazard Areas (SFHA) areas of 100 year flooding, as defined by the Federal Emergency Management Agency.

    B. DEDUCTIBLE: The sum of $SEE ENDT#002 shall be deducted from any adjusted claim due to Flood as defined herein.

2.    If the coverage of the policy to which this endorsement is attached includes both Property Damage and Business Interruption, the foregoing limits shall be the maximum amounts collectible under this policy for loss or damage resulting from the perils described in Paragraph A above, regardless of whether the loss involves Property Damage alone or both Property Damage and Business Interruption.

                                            _____
                                   Authorized Representative or
                           Countersignature (in states where applicable)

PR9026(09/92)
LX1154

ENDORSEMENT # 007

**This endorsement**, effective 12:01 AM 06/22/2004

**Forms a part of policy no.:**  AW1374229

**Issued to:** WYNN RESORTS L.L.C.

**By:** ALLIED WORLD ASSURANCE COMPANY (US) INC.


THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY.

MOLD / FUNGUS EXCLUSION


In consideration of the premium charged, it is hereby understood and agreed that this policy is amended as follows:

The Company shall not be liable for any loss or damage caused by, arising out of, contributed to, or resulting from fungus, mold(s), mildew or yeast; or any spores or toxins created or produced by or emanating from such fungus, mold(s), mildew or yeast;

(a) fungus includes, but is not limited to, any of the plants or organisms belonging to the major group fungi, lacking chlorophyll, and including mold(s), rusts, mildews, smuts and mushrooms;

(b) mold(s) includes, but is not limited to, any superficial growth produced on damp or decaying organic matter or on living organisms, and fungi that produce mold(s);

(c) spores means any dormant or reproductive body produced by or arising or emanating out of any fungus, mold(s), mildew, plants, organisms or microorganisms,

regardless of any other cause or event that contributes concurrently or in any sequence to such loss.


All other terms, conditions, definitions, exclusions, limitations and provisions of the Policy remain the same.


*Robert E. Jobson*
_____

**Authorized Representative OR
Countersignature (In states where applicable)**

LX9512 (08/02)