# EXHIBIT A



# YORK

Specialized Loss Adjusting Division
James E. Podesva, RPA
Executive General Adjuster

## Memorandum

**Date:** January 2, 2005

**To:** File

**From:** J.E. Podesva

**Re:** Wynn Resorts
Water Damage Loss
7th Floor Apartment
817 5th Avenue, New York, NY

When I learned of this assignment on December 30th, I called both of the contacts provided and arranged to inspect the loss on December 31, 2004. I also telephoned the building superintendent t and discussed the circumstance leading up to the discovery of the loss as well as the planned repairs of the damaged water equipment.

I inspected the loss with Mr. Brian Stevens of Engineering Management Group, and Ms, Theresa TC of Hillman Environmental who have been retained for the insurer's interests. A representative from Tishman construction and the subcontractor working on the emergency cleanup, and the housekeeper were in attendance for the insured.

## INSURED AND RISK:

The insured is Wynn Resorts, a large corporation with extensive hotel and casino holdings in Las Vegas, NV. The property involved with this claim is the corporate apartment situated on the 7th floor of 817 5th Avenue, New York, NY. The apartment occupies the entire 7th floor of the building overlooking Central Park. There are 3 bedrooms, a formal dinging room, and a large sitting room. I was told by the representative of Tishman Construction that the apartment was renovated 4 years ago, and the cost was said to be several million dollars.



EXTERIOR OF RISK

## COVERAGE:

I do not have a complete copy of the policy. I do have a basic declarations page and a list of forms make up the policy. I will provide a more detailed coverage summary in my first full report.

From the descriptions on the form schedule, this policy covers property owned by the insured for loss by risks of direct physical loss or damage, except when the cause of the loss is expressly excluded or limited in the policy. The valuation of loss is at replacement cost, if the property is actually replaced. The form schedule lists mold exclusion, but I do not have the detailed wording of that form.

This is a layers subscription policy and Lexington Insurance covers $7.5 million of the first $10 million excess of the deductible. I do not have any information what the deductible amount is that applies.

## THE LOSS:

The loss was caused by a water pipe break that we believe occurred within a wall cavity of the 8th floor apartment. The reason for the water pipe break is unknown, because the leaking section has not been located.

According to Karl Schneider, the Building Superintendent, the doorman was delivering the morning papers at approximately 5:00 AM on 12/29/04 when he noticed water coming from

below the entry door to the insured's apartment. The water was coming into the hall and flowed into the elevator shaft. The doorman checked the 6th and 8th floors and noticed that water was leaking there as well.



<u>WATER PIPE IN 7TH FLOOR CEILING GOING TO 8TH FLOOR APARTMENT</u>

The 6th floor is vacant and the doorman was able to look inside and could see any source for the water. The 8th is occupied but the owner is in Florida. The doorman tried to call the housekeeper for the 8th floor apartment, but there was no answer. The doorman notified Mr. Schneider who located the water valve in the basement and shut off all water to that riser.

The insured's housekeeper was called and when she arrived, the building employees assisted her with the emergency water clean up.

The housekeeper notified Mr. Sean Klimeck who manages all of Mr. Wynn's residence properties and his personal estate. Mr. Klimeck called Tishman construction and hired them to oversee the cleanup and the repairs of the property.

Tishman was on site by noon on the 29th and they called in a remediation contractor, Degnon, Inc. to assist with the water extraction and dehumidification of the building. Degnon was on site within two hours and installed drying equipment throughout the apartment.

I spoke with the building handyman, Harold (last name unknown), who told me the plans to locate and repair the leaking pipe. The owner of the 8th floor apartment has hired an architect who is coming on Monday January 3, 2005 to locate source. The building handyman has contacted a plumber who will be standing by to make the repairs once the pipe is located. The nature of the break is not known, and Harold agreed to remove the leaking pipe (or valve) and set it aside for examination later.

I have discussed the subrogation possibilities with Mr. Dan Krowlikowski, of AI Recovery. Mr. Krowlikowski sent a fax to the building manger asking them to hold the pipe aside for examination by your representative. I will request a copy of the lease, or applicable contract, from the insured's Risk Manager. Finally, I will call Douglas Petersons office to see if they have an engineer in NYC who can examine the pipe and determine the cause of the leak.

## NATURE AND EXTENT OF DAMAGE:

The damage to the insured's apartment is localized in the main hallway and the adjoining rooms. There are 5 rooms that sustained water damage. These rooms are listed below, and I have summarized the damages that were visible during my inspection.

### Hallway

This room has the most serious damage.

Replace all of the sheetrock ceiling and insulation. The two-piece crown molding will need to be removed to accomplish this.

The walls are covered with a padded fabric that was wet and is wrinkling near the baseboard molding. The designer and the contractor who installed the fabric say that it cannot be removed, or stretched in place without causing more damage to the fabric. If the fabric must be repaired, and I believed that it will, then all of the material in the hallway will have to come out. I am told by Tishman construction, that this is an imported German material that is no longer available.



MAIN HALLWAY CEILING WITH DRYWALL REMOVED



MAIN HALLWAY WALLS WITH FABRIC IN PLACE

<u>Powder Room</u>

This room was located next to the small closet where most of the water entered the apartment. The wall fabric was still wet when I examined it, and the ceiling and insulation were still in place but obviously damaged to the point that it had to be replaced. Your consultant from Hillman Environmental recommended that the ceiling and the fabric walls be removed to allow for the property drying of this room.



POWDER ROOM WALL FABRIC IN THE AREA WHERE THE WATER ENTERED THE ROOM

<u>Bath Room and Exercise Room, and Hall to Second Bed Room</u>

Only the carpeting in these rooms was damaged, and it had already been removed and thrown out by the time I arrived.



BATH ROOM WITH CARPETING REMOVED



EXERCISE ROOM WITH CARPETING REMOVED

There was very little content damaged by the loss. The housekeeper showed my two paintings that had come in contact with water. The damage appears minor to me. The actual painting was not damaged, but the mat and the back of the frame was. I believe that these items can be re-

framed.  I do not think an art conservation expert is needed to evaluate the condition of these two paintings.



SMALL RELIEF ETCHING WITH STAIN ON LEFT SIDE OF MAT



LARGER PRINT WITH WATER STAIN ON THE BACK

ESTIMATE:

I estimate that the loss could be as much as $100,000. This is only my initial assessment of the potential loss, and I have asked your consultant to provide me with a range for the value of the loss. I expect this estimate will be available in a few days.

There are several issues that will affect the cost of the repairs. The first issue is the wall fabric in the hallway. Another issue affecting the cost of the repairs are the physical conditions at the building. The service elevator is very small and only 4 adults can fit at one time. Any materials that are needed for the reconstruction will need to come through this elevator.

FUTURE HANDLING:

Hillman Environmental will return to the apartment on Tuesday January 4th to check the progress of the drying, and to take some discreet air and surface samples.

Tishman will begin to bring in subcontractors who will prepare submissions for the repairs to the interior finishes. I expect that the list of the subcontractors will include: carpentry; plumbing; electrical; wall covering; and painting.

I will obtain copies of the lease or the condominium agreement from the insured. I will coordinate the inspection of the damaged section of the pipe with your subrogation department, and cause and origin engineer.

I will review the estimates for the repairs and then verify the reasonableness of these costs with your building consultant.

A detailed report will follow in 30 days.

# EXHIBIT B

# YORK
Claims Service, Inc.

*421-004208*
*1374229*

**Specialized Loss Adjusting Division**
125 High Rock Avenue
Saratoga Springs, NY 12866

| | | |
|---|---|---|
| Interested Companies | **Date:** | March 16, 2005 |
| c/o | **Report:** | Two |
| Jon Wanczyk | **Insured:** | Wynn Resorts. LLC |
| AIG Technical Services | **Claim No:** | Various |
| 400 Interpace Pkwy. | **Policy No:** | Various |
| Building A, 4th Floor | **York File No:** | SLA-0151A9 |
| Parsippany, NJ 07054 | **Loss Location:** | 817 5th Ave., New York, NY |
| | **Policy Period:** | 6/22/2004 – 2005 |
| | **Type of Claim:** | Water Damage |
| | **Date of Claim:** | 12/29/04 |

Mr. Wanczyk,

Please refer to my first report of January 31, 2005, along with the detailed inspection memo dated January 2, 2005, for additional details about this matter. I have also copied you with various e-mail correspondences with the policyholder, the engaged experts, the policyholder's contractor, and the insurer for the building.

## ENCLOSURES:

1. Hillman Environmental Group report dated February 1, 2005 on the results of the reinspection performed on January 11, 2005.

2. My letter to the building owner and their insurer regarding the subrogation claim.

3. Letter from Admiral Insurance explaining their position that they are not liable for the Wynn's damage.

4. Demolition and Project Repair Cost Estimate prepared by Tishman.

5. 'Loss Reports' received from Tishman Construction dated:

    a. January 4, 2005
    b. January 20, 2005
    c. February 1, 2005
    d. February 4, 2005
    e. Tishman payment requisition No. 1 February 7, 2005

York
Claims Service, Inc.

Wynn Resorts, LLC
Report Two
Page 2 of 7

## SURVEYS AND INSPECTIONS:

### Building Construction Costs

You have agreed to allow Engineering Management Group, Inc., the retained building consultant, to make periodic inspections of the property to monitor the demolition performed at the property. Mr. Brian Stevens completed these inspections, and sent an email confirming his findings after each of his visits. Copies of Mr. Stevens' emails have already been sent to you, and I will not duplicate his comments here. However, it will be useful to summarize several key points.

- The demolition was completed for amounts less than the contractors' original estimate.

- The conditions within the bathroom will allow the major plumbing fixtures to remain in place while the plywood sub floor is removed.

- The amount of the building materials removed agrees with the findings and recommendations of the retained environmental consultant.

### Environmental Issues

On January 11, 2005, Hillman Environmental completed a reinspection of the Wynn's apartment to verify the humidity and other potential environmental issues. Hillman's report on that inspection (Enclosure 1) is attached. The recommendations contained in the report were discussed with the policyholder's contractor.

## RESERVE:

I estimate that the property damage loss will approach $365,000.00, and I recommend you reserve your file accordingly. I have summarized the basis of the estimated loss in the table below. The information included on this table comes from the insured, their contractor, and retained experts.

**York**
Claims Service, Inc.

Wynn Resorts, LLC
Report Two
Page 3 of 7

| ESTIMATE OF LOSS AND RECOMMENDED RESERVE | TISHMAN | EMG |
|---|---|---|
| ENVIRONMENTAL CONTROLS | 29,000.00 | 29,000.00 |
| INCURRED AS OF 1/7/05 | 20,984.00 | 20,984.00 |
| DEMOLITION AND REMOVALS | 92,398.47 | INCLUDED |
| RECONSTRUCTION | TO COME | 288,105.00 |
| GRAND TOTALS | 142,382.47 | 338,089.00 |
| RECOMMENDED RESERVE WITH CONTINGENCY | | 365,000.00 |

The apportionment of the reserve between the two carriers is:

| SCHEDULE OF INSURANCE AND APPORTIONMENT | PARTICIPATION | APPORTIONMENT |
|---|---|---|
| LEXINGTON INSURANCE CO. | 75% | 273,750.00 |
| ALLIED WORLD ASSURANCE CO. | 25% | 91,250.00 |
| TOTAL | | 365,000.00 |

## SUBROGATION:

Subrogation possibilities are being investigated, and I have copied Mr. Dan Krolikowski of A.I. Recovery on all of my reports and correspondence. In addition, I have communicated with AIR's attorney, and I am providing him with a copy of this report, and its enclosures.

While I have already copied you on the various correspondences with the building and their insurer, I will now summarize the progress on this aspect of the claim:

- The building owner, 817 5th Avenue Condominium Assoc., is insured by Admiral Indemnity Company, who have assigned claim number 101157 to this matter.

York
Claims Service, Inc.

Wynn Resorts, LLC
Report Two
Page 4 of 7

- Admiral is represented in the adjustment of this claim by Clermont
  Specialty Managers, Ltd., 3 University Plaza, Hackensack, NJ 07601.
  Tel: 201-342-4211. The adjuster assigned to this claim is Jay Vigneaux.

- On February 9, 2005, I sent a letter to the building owner and their
  insurer (Enclosure 2) placing them on notice that we were planning of
  filing a claim for all amounts paid in connection with this claim.

- Mr. Vigneaux has sent me a letter (Enclosure 3) stating that their
  investigation found that the water damage occurred because:

  o "...a LEAK on our insured's premises, of which our insured
    had no prior notice, either actual or constructive, of any
    defective condition that would otherwise give rise to
    liability..."
  o "... Please be advised that the subject pipe was a concealed
    pipe. Accordingly, there was no negligence on the part of our
    insured under these circumstances, and bears no liability".
  o "I sincerely regret that we cannot be of further service in this
    matter."

At this point, I will wait for AIR's attorney to review the attached
documents, as well as the documents attached to my earlier reports, before
taking any further action, or communicating with the building or their
insurer.

## CLAIM:

The most significant document was received just this week. Tishman has
prepared the attached Demolition and Project Repair Cost Estimate
(Enclosure 4) totaling $548,870. The major elements of this estimate are:

- Cleanup          $ 47,387
- Demolition          39,966
- Reconstruction     461,517

I have attached copies of various additional documents from Wynn's
contractor, Tishman Construction. The documents (Enclosure 5) are as
follows:

York
Claims Service, Inc.

Wynn Resorts, LLC
Report Two
Page 5 of 7

- 'Loss Report,' dated January 4, 2005:

- "Loss report Follow-up,' dated January 20,2005:

- "Loss report Follow-up #2,' dated February 1, 2005:

- "Loss report Follow-up #3,' dated February 4, 2005:

- Contractors Payment Requisition #1 for work performed through
  January 31, 2005, requests a payment of $47,387.20

    o  I realize that you and the policyholder have agreed that you
       will issue payments, except of course for the deductible,
       directly to Tishman.  However, I am not recommending any
       payment at this time.  I will review these costs with Mr.
       Stevens, and then make the appropriate recommendations in a
       future report.

## REVIEW AND COMMENT ON DOCUMENTS:

**Reconstruction Estimate**

This estimate was only received a few days ago, but I have completed a very
preliminary review and I have conferenced with Mr. Stevens, as well as the
policyholder's various representatives.  While it is safe to say that I was
surprised by the total amount of the estimate, some of the more specific
observations are as follows:

- The estimate includes the replacement of an unexplained quantity of
  materials.  This suggests that the estimate includes portions of the
  complete renovation of the apartment already planned by the policy
  holder before the loss occurred – such as:

    o  the carpeting
    o  the replacement of all cabinets in the bathroom
    o  plastering

**York**
Claims Service, Inc.

Wynn Resorts, LLC
Report Two
Page 6 of 7

    o lighting (includes the replacement of all lighting)
    o plumbing (includes the roughing of the fixtures)

- The soft cost, including the construction management and supervision costs seem unusually high.

- Certain unit costs appear unusually high. For example, the estimated unit costs for drywall is $15.00 per square foot. This amount seems unusually high even with the additional material handling requirements required at the site.

**Tishman's 'Loss Reports'**

Some comments of the Tishman 'Loss Reports' are required to avoid a misunderstanding of their content:

- The 'Loss Reports' were prepared by Tishman, and they are intended to document the work performed at the site, which has been independently verified by Mr. Stevens own inspections, as well. The retained experts are not relying on these documents to verify the nature and the extent of damage.

- Tishman made a point of drawing attention to the mold that has formed on some building components. However, we have verified that the materials that are shown in the photos are the same components that Hillman Environmental recommended for removal in the first place.

- The components were removed by conventional demolition means and no additional remediation protocols, and the corresponding increased costs, are involved.

## COMMUNICATIONS WITH THE POLICY HOLDER:

Shortly after I received the Tishman estimate, the risk manager, Linda Young, and the Wynn's Property Manager, Sean Klimeck called to comment on the amount of the estimate. Both were very surprised with the total cost.

York
Claims Service, Inc.

Wynn Resorts, LLC
Report Two
Page 7 of 7

Mr. Klimeck says that he is speaking with another contractor about the renovation. This contractor works with the designer the Wynn's have hired to coordinate the renovation of the apartment.

Mr. Klimeck has asked if the final claim payment can be made to the policyholder instead of the contractor. I have asked Mr. Klimeck to discuss the matter with Ms. Young. Ms. Young will let me know where the payments will be made.

### FUTURE HANDLING:

The adjustment of this claim will include the following activities:

- Reinspection of the site by Mr. Stevens with the Tishman estimate and identify the major issues – especially the observed differences in the scope of work.

- Request that Tishman provide documentation of the material costs used in the estimate – including the original costs of the major finish elements.

- Prepare a model of the insurable loss sustained and discuss the settlement of the claim with the policyholder.

Respectfully submitted,

*James E. Podesva/mg*

James E. Podesva, RPA
Executive General Adjuster
518-306-3730

jep/mg

**ENCLOSURE 4**

**The Wynn Residence**
817 Fifth Avenue
Demolition and Reconstruction Costs
March 2,2005

**Demolition and Protection Costs:**

| | Description | Personnel | Date Work Performed | No. Hours | Rate | Cost | Total Cost | Comments |
|---|---|---|---|---|---|---|---|---|
| 1 | Protection; protection of existing stone flooring, floor to ceiling sealed plastic wall at all rooms not effected by demo | Tishman Labor Foreman | 1/27 - 1/28/05 | 16 hrs | $ 72.00 | $ 1,152.00 | | |
| | | Laborer | 1/28/2005 | 7 hrs | $ 67.00 | $ 469.00 | $ 1,621.00 | |
| 2 | Demolition of hallway and powder room; walls/ceilings | see below | | | | | | |
| 3 | Remove stone counter tops and bath surround for future reinstatation | see below | | | | | | |
| 4 | Demolition of master bath walls & plywood sub-floor | see below | | | | | | |
| 5 | Stand-by labor during millwork removal for elevator protection, clean-up and maintenance of protection | see below | | | | | | |
| 6 | Removal of protection | see below | | | | | | |
| 7 | Electrical stand-by during demolition and work in bath | Tishman Labor Foreman | 1/31 - 2/11/05 | 80 hrs | $ 72.00 | $ 5,760.00 | | |
| | | Tishman Laborer | 1/31 - 2/11/05 | 70 hrs | $ 67.00 | $ 4,690.00 | $ 10,450.00 | |
| | | Mazzeo Elec. | 2/1 - 2/2/05 | 12 hrs | $ 106.50 | $ 1,278.00 | | |
| 8 | Disconnect "Smart House" panel in master bath | Mazzeo Elec. | Included above | | | $ - | $ 1,278.00 | |
| 9 | Plumbing safe-off and disconnects/reconnects at master bath including removal of jacuzzi for storage in exercise room | Evergreen Plumbing | 2/1/2005 | 14 hrs | $ 90.33 | $ 1,264.62 | | |
| 10 | Materials associated with plumbing work. | Evergreen Plumbing | 2/1/2005 | | | $ 452.76 | $ 1,717.38 | Invoice Attached |
| 11 | Removal of all millwork in master bath and remove from site (all moldy millwork to be sealed for disposal) | Bauerschmidt | 2/1 - 2/4/05 | 46 hrs | $ 108.07 | $ 4,971.00 | | |
| 12 | Packing and trucking of millwork removed | Bauerschmidt | 2/4 - 2/5/05 | 16 hrs | $ 77.25 | $ 1,236.00 | | |
| 13 | Tax on above | Bauerschmidt | | | | $ 535.35 | $ 6,742.35 | Invoice Attached |
| 14 | Protection Materials | Peargreen | | | | $ 1,994.00 | $ 1,994.00 | Invoices Attached |
| 15 | Carting | Waldorf Carting | | | | $ 600.00 | $ 600.00 | Invoice Attached |
| 16 | 5% mark-up on contractor costs items 7-15 | Tishman | | | | $ 616.59 | $ 616.59 | |
| | Sub-Total Union Personnel & Trade Costs: | | | | | $ 25,019.32 | $ 25,019.32 | |
| 17 | Insurance; 1.214% of construction costs | | | | | $ 296.25 | | |
| 18 | Supervision | Frank Servidio | 1/27 - 2/11/05 | 36 hrs | $ 125.00 | $ 4,500.00 | | |
| 19 | Project Manager | Pat Hauserman | 1/27 - 2/11/05 | 36 hrs | $ 140.00 | $ 5,040.00 | | |
| 20 | Project Executive | Fred Corrado | 1/27 - 2/11/05 | 10 hrs | $ 190.00 | $ 1,900.00 | | |
| | Total Actual Protection & Demolition Costs: | | | | | $ 39,966.15 | $ 39,966.15 | |

**Reconstruction Costs:**

| | Description | Personnel | Date Work Performed | No. Hours | Rate | Cost | Total Cost | Comments |
|---|---|---|---|---|---|---|---|---|
| 21 | Protection and Clean-up | | | | | | | |
| 21a | Protection and Labor for Clean-up | | 2 men, 4 weeks | 280 hrs | $ 69.50 | $ 19,460.00 | | |
| | | | 1 man, 4 weeks | 160 hrs | $ 72.00 | $ 11,520.00 | | |
| 21b | Materials associated with protection and clean-up | | | | | $ 4,000.00 | | |
| 21c | Carting associated with protection and clean-up | | | | | $ 1,500.00 | $ 36,480.00 | |
| 22 | Carpentry, Taping and Plastering; | | | | | | | |
| 22a | F/I full height walls on existing studs with insulation | | | 1562 sf | $ 10.00 | $ 15,620.00 | | high unit due to limited loading capacity |
| 22b | Framing around existing windows | | | 2 ea | $ 150.00 | $ 300.00 | | and waste associated w/small boards |
| 22c | S/R ceilings with insulation | | | 537 sf | $ 15.00 | $ 8,055.00 | | |
| 22d | Patching at work to remain | | | 28 hrs | $ 100.95 | $ 2,826.60 | | |
| 22e | Plaster on all walls | | | 1562 sf | $ 3.50 | $ 5,467.00 | | |
| 22f | F/I 2 layers of 2/3" fireproof plywood subflooring | | | | | $ 1,200.00 | $ 33,468.60 | |
| 23 | Flooring; | | | | | | | |
| 23a | F/I replacement carpeting; Wilton Diamond Pattern | | | 309 sy | $ 229.75 | $ 70,992.21 | | |
| 23b | F/I replacement carpeting; Wilton Diamond Clover | | | 67 ly | $ 300.04 | $ 20,102.81 | | |
| 23c | Cost to move/replace furniture during flooring installation | | 2 men, 8 days | 120 hrs | $ 69.50 | $ 8,340.00 | $ 99,435.02 | |
| 24 | Painting; | | | | | | | |
| 24a | Preparation and painting of all walls and ceilings | | 2 men, 8 days | 112 hrs | $ 75.00 | $ 8,400.00 | | |
| 24b | Painting materials | | | 35 gal | $ 33.00 | $ 1,155.00 | $ 9,555.00 | |
| 25 | Millwork; | | | | | | | |
| 25a | Replace millwork in master bath | | | | | $ 83,000.00 | | |
| 25b | Replace Crown Molding and Base in Hallway | | | | | $ 6,100.00 | | |
| 25c | Replace Frames in Hallway | | | | | $ 16,000.00 | | |
| 25d | Replace Fabric Panels (fabric cost $75/yard) including piping | | | | | $ 33,000.00 | | |
| 25f | Replace vanity in Powder Room | | | | | $ 8,600.00 | $ 146,700.00 | |
| 26 | Stone Restoration; | | | | | | | |
| 26a | Replace stone in master bath | | | 18 sf | $ 85.00 | $ 1,530.00 | | |
| 26b | Remove cracked grout, replace grout at all joints | | 2 men, 4 days | 56 hrs | $ 79.00 | $ 4,424.00 | | |
| 26c | Grind, restore and seal stone flooring | | | 440 sf | $ 2.70 | $ 1,188.00 | $ 7,142.00 | |
| 27 | Electrical; | | | | | | | |
| 27a | Replace all lighting and reconnect smart house system | | 2 men, 5 days | 70 hrs | $ 106.50 | $ 7,455.00 | | |
| 27b | Materials associated with electrical work | | | | | $ 400.00 | $ 7,855.00 | |
| 28 | Plumbing; | | | | | | | |
| 28a | Rough-in and re-connect fixtures in master bath & powder room | | 2 men, 3 days | 42 hrs | $ 90.33 | $ 3,793.86 | | |
| 28b | Materials associated with plumbing work | | | | | $ 500.00 | $ 4,293.86 | |
| | Sub-Total Union Personnel & Trade Costs: | | | | | $ 344,929.48 | | |
| 29 | Insurance; 1.214% of construction costs | | | | | $ 4,187.44 | | |
| 30 | General Conditions; | | | | | | | |
| 30a | Supervision | | 8 weeks | 320 hrs | $ 125.00 | $ 40,000.00 | | |
| 30b | Project Management (50%) | | 8 weeks | 160 hrs | $ 140.00 | $ 22,400.00 | $ 62,400.00 | |
| 31 | Fee; | | | | | $ 50,000.00 | | |
| | Total Reconstruction Costs: | | | | | $ 461,516.92 | | |

| Total Clean-up, Demolition and Reconstruction Costs: | | | | | | | |
|---|---|---|---|---|---|---|---|
| Clean-up, Water Removal and Dry Out Process (see billing dated 2/7/05) | | | | | | $ 47,387 | |
| Actual Demolition Costs (from above) | | | | | | $ 39,966 | |
| Reconstruction Costs (from above) | | | | | | $ 461,517 | |
| SUM TOTAL PROJECT COSTS: | | | | | | $ 548,870 | |

# EXHIBIT C

**Podesva, Jim**

| | |
|---|---|
| **From:** | Podesva, Jim |
| **Sent:** | Friday, April 08, 2005 2:25 PM |
| **To:** | 'Young, Linda'; patrick.mcginley@willis.com |
| **Cc:** | Wanczyk, Jon; Podesva, Jim |
| **Subject:** | Wynn Apartment NYC |

Linda,

My letter and spreadsheet with the proposed adjustment is attached.    Please call me after you have a chance to look it over.


JEP

James E. Podesva, RPA
York Insurance Services, Inc.
Specialized Loss Adjusting Division
125 High Rock Avenue
Saratoga Springs, NY 12866
518-306-3730

# YORK

Claims Service, Inc.                                    Specialized Loss Adjusting Division

J.E. Podesva, RPA
125 High Rock Avenue
Saratoga Springs, NY 12866
Phone: 518-306-3730
Fax: 518-306-3731
Jim.Podesva@York-claims.com

THE STRENGTH OF YORK
Experience, Leadership and Integrity

April 8, 2005

**Via electronic mail:**
Linda.Young@wynnlasvegas.com

     **RE:**    **Wynn Resorts International**
             **817 5th Avenue, NY, NY**
             **Water Damage 12/29/04**

Dear Linda,

Enclosed is a copy of the spreadsheet with the proposed adjustment of this claim totaling $217,879.95. This figure represents the replacement cost value of the damage to the apartment caused by the water leak.

I understand that the repairs will be made as part of a complete renovation of the apartment, so I have not calculated an actual cash value of the damage. As you know, the policy will cover the replacement cost value if the work is completed and the money is spent.

As you know, Tishman submitted an original estimate totaling $548,870. After meeting with the carrier's consultant, Tishman submitted a revised estimate totaling $470,201. This estimate contains a computation error. The correct total should be $466,990.

Tishman submitted the attached revised estimate which still includes several items that are not included in the proposed adjustment of the loss. These issues include the following:

- *Painting the entire apartment.* The proposed adjustment allows for the painting of the damaged hallway, and includes painting the area to a point where a natural break exists.

York
Claims Service, Inc.

Wynn Resorts
Letter to Mr. Stevens
Page 2

- *Replacing the carpet throughout the apartment.* The proposed adjustment includes the replacement of the carpeting in the bathroom, powder room, and exercise room. The carpet in the remaining areas was not damaged and does not need to be replaced.

- *Replacement of the fabric wall panels throughout the entire apartment.* The proposed adjustment allows for replacing the panels in the damaged hallway, and includes the area to a natural break exists.

I would also like to acknowledge my conversation with Pat McGinely regarding the deductible issue that is being discussed directly with the insurer. As he requested, I will not send out any correspondence to Tishman, or anyone else at Wynn International, until the matter is resolved.

Please call me after you review this schedule to discuss these figures and how best to proceed with finalizing this matter. Naturally, nothing in this letter is intended to waive or modify any of the policy terms or conditions.

Sincerely,


James E. Podesva, RPA
Executive General Adjuster


cc:    By Electronic Mail
       patrick.mcginley@willis.com
       Jon.Wanczyk@AIG.com


jep/mg

The Wynn Res⸍  ⸍nce
817 Fifth Ave⸍,
Demolition and reconstruction Costs

| Description | Tishman'S Estimate | | EMG's Estimate for an As-Was Repair 03/24/05 | | INSURANCE | |
|---|---|---|---|---|---|---|
| | Cost | Tishman Comments | Cost | Comments | PROPOSE | ADJUSTER COMMENTS |
| **Demolition and Protection Costs:** | | | | | | |
| 1 Protection; protection of existing stone flooring, floor to ceiling sealed plastic wall at all rooms not effected by demo | $ 1,152.00 | | $ - | Dates are pre-loss, This time should be included in the initial clean up work. | $ 1,152.00 | Allowed as presented |
| 2 Demolition of hallway and powder room; walls/ceilings | $ 469.00 | | $ - | EMG has not reviewed this invoice. | $ 469.00 | Allowed as presented |
| 3 Remove stone counter tops and bath surround for future reinstallation | | | | | | |
| 4 Demolition of master bath walls & plywood sub-floor | | | | | | |
| 5 Stand-by labor during millwork removal for elevator protection, clean-up and maintenance of protection | | | | | | |
| 6 Removal of protection | $ 5,760.00 | | $ 5,760.00 | | $ 5,760.00 | Allowed as presented |
| | $ 4,690.00 | | $ 4,690.00 | EMG has not reviewed this invoice. | $ 4,690.00 | Allowed as presented |
| 7 Electrical stand-by during demolition and work in bath | $ 1,278.00 | | $ 1,278.00 | | $ 1,278.00 | Allowed as presented |
| 8 Disconnect "Smart House" panel in master bath | $ - | | $ - | EMG has not reviewed this invoice. | $ - | Allowed as presented |
| 9 Plumbing safe-off and disconnects/reconnects at master bath including removal of jacuzzi for storage in exercise room | $ 1,264.62 | | $ 1,264.62 | Tub was not removed - Removed one toilet and two vanities | $ 1,264.62 | Allowed as presented |
| 10 Materials associated with plumbing work | $ 452.76 | Invoice Attached | $ 452.76 | EMG has not reviewed this invoice. Material costs seem high. Based on the work stated above the materials required would be pipe caps? | $ 452.76 | Allowed as presented |
| 11 Removal of all millwork in master bath and remove from site (all moldy millwork to be sealed for disposal) | $ 4,971.00 | | $ 4,971.00 | | $ 4,971.00 | Allowed as presented |
| 12 Packing and trucking of millwork removed | $ 1,236.00 | | $ 1,236.00 | | $ 1,236.00 | Allowed as presented |
| 13 Tax on above | $ 535.35 | Invoice Attached | $ 535.35 | EMG has not reviewed this invoice. | $ 535.35 | Allowed as presented |

Tishman Revised Estimate.xls

The Wynn Re...    nce
817 Fifth Ave...
Demolition and Reconstruction Costs

| Description | Tishman's Estimate Cost | Tishman Comments | EMG's Estimate for an As-Was Repair 03/24/05 Cost | Comments | INSURANCE PROPOSE | ADJUSTER COMMENTS |
|---|---|---|---|---|---|---|
| 14 Protection Materials | $ 1,994.00 | Invoices Attached | $ 1,994.00 | EMG has not reviewed this invoice. | $ 1,994.00 | Allowed as presented |
| 15 Carting | $ 600.00 | Invoice Attached | $ 600.00 | EMG has not reviewed this invoice. | $ 600.00 | Allowed as presented |
| 16 5% mark-up on contractor costs items 7-15 | $ 616.59 | | $ 616.59 | | $ 616.59 | Allowed as presented |
| Sub-Total Union Personnel & Trade Costs: | $ 25,019.32 | | $ 23,398.32 | | $ 25,019.32 | |
| 17 Insurance: 1.214% of construction costs | $ 296.25 | | $ 296.25 | EMG has not reviewed this invoice. | $ 296.25 | Allowed as presented |
| 18 Supervision | $ 4,500.00 | | $ 4,500.00 | EMG has not reviewed this invoice. | $ 4,500.00 | Allowed as presented |
| 19 Project Manager | $ 5,040.00 | | $ 5,040.00 | EMG has not reviewed this invoice. | $ 5,040.00 | Allowed as presented |
| 20 Project Executive | $ 1,900.00 | | $ 1,900.00 | EMG has not reviewed this invoice. | $ 1,900.00 | Allowed as presented |
| Total Actual Protection & Demolition Costs: | $ 36,755.57 | Claimed as $39,966.15 but contained formula error duplicating items 14,15 & 16 | $ 35,134.57 | The Tishman Total is incorrect their formula adds lines 14 through 20. Which duplicates costs. The labor hours do not appear to be excessive. | $ 36,755.57 | Allowed as presented |
| **Reconstruction Costs:** | | | | | | |
| 21 Protection and Clean-up | | | | | | |
| 21a Protection and Labor for Clean-up | $ 19,460.00 | | $ 5,360.00 | The labor rate was previously billed at $67. This cost is for protecting when removing all remain carpeting. This is not in EMG's scope of repairs. Post construction clean up is | $ 5,360.00 | Allowed per EMG |
| 21b Materials associated with protection and clean-up | $ 11,520.00 | | $ 2,880.00 | No additional protection material is required. | $ 2,880.00 | Allowed per EMG |
| | $ 4,000.00 | | $ 1,000.00 | | $ 1,000.00 | Allowed per EMG |
| 21c Carting associated with protection and clean-up | $ 1,500.00 | | $ 1,500.00 | | $ 1,500.00 | Allowed as presented |

Tishman Revised Estimate.xls

The Wynn Re    nce
817 Fifth Ave.
Demolition and Reconstruction Costs

| Description | Tishman's Estimate Cost | Tishman Comments | EMG's Estimate for an As-Was Repair 03/24/05 Cost | Comments | INSURANCE PROPOSE | ADJUSTER COMMENTS |
|---|---|---|---|---|---|---|
| **22 Carpentry, Taping and Plastering;** | | | | | | |
| 22a F/I full height walls on existing studs with insulation | $ 6,560.00 | high unit due to limited loading | $ 9,700.00 | EMG originally estimated approximately 770 sf. Of gypsum wall board damaged, the demolition process removed an additional 200 sf. For a total of 970 sf. | $ 9,700.00 | Allowed per EMG |
| 22b Laminate 1 layer sheetrock on full height walls | $ 2,628.00 | | Included above | | Included above | |
| 22c Framing around existing windows | $ 300.00 | capacity and waste associated | $ 300.00 | | $ 300.00 | Allowed as presented |
| 22d S/R ceilings with insulation | $ 6,900.00 | w/small boards | $ 6,000.00 | EMG estimated the ceiling gypsum to be replaced 400 sf | $ 6,000.00 | Allowed per EMG |
| 22e Patching at work to remain | $ 2,826.60 | | $ 2,826.60 | There is no plaster that requires patching all plaster wall are located behind the gypsum walls | $ 2,826.60 | Allowed as presented |
| 22f Plaster on all walls | $ 2,256.00 | | | | $ - | Allowed per EMG |
| 22g F/I 2 layers of 2/3" fireproof plywood sub flooring | $ 1,200.00 | | $ 1,200.00 | | $ 1,200.00 | Allowed as presented |
| **23 Flooring;** | | | | | | |
| 23a F/I replacement carpeting; Wilton Diamond Pattern | $ 70,992.21 | | $ 15,393.13 | The total area of damaged carpeting was 366sf. Which equals 41 sy. The carpeting required at 12' rolls would be 67 yds | $ 15,393.13 | Allowed per EMG. Claim is for the entire apartment. |
| 23b F/I replacement carpeting; Wilton Diamond Clover | $ 20,102.81 | | $ - | This carpet did not require replacement, it was dried and reinstalled. | $ - | Allowed per EMG |
| 23c Cost to move/replace furniture during flooring installation | $ 8,340.00 | | $ 2,224.00 | The exercise equipment is the only items required to be moved. 2 men two days. | $ 2,224.00 | Allowed per EMG |
| **24 Painting;** | | | | | | |
| 24a Preparation and painting of all walls and ceilings | $ 8,400.00 | | $ 4,200.00 | The walls behind the fabric covering was not previously painted, The painting is limited to crown and base moldings, mill work in master bath and doors. | $ 4,200.00 | Allowed per EMG. Claim is for the entire apartment. |
| 24b Painting materials | $ 1,155.00 | | $ 198.00 | All trim was the same color. | $ 198.00 | Allowed per EMG. Claim is for the entire apartment. |

The Wynn Re...nce
817 Fifth Ave...
Demolition and Reconstruction Costs

| Description | Tishman's Estimate Cost | Tishman Comments | EMG's Estimate for an As-Was Repair 03/24/05 Cost | Comments | INSURANCE PROPOSE | ADJUSTER COMMENTS |
|---|---|---|---|---|---|---|
| **25 Millwork;** | | | | | | |
| 25a Replace millwork in master bath | | | $ 17,290.43 | Cabinets were to be reused and required reinstallation only | $ 17,290.43 | Allowed per EMG |
| panles along window wall | $ 7,921.85 | | | | $  - | Allowed per EMG |
| storage cabinet and drawer along window wall | $ 10,250.00 | | | | $  - | Allowed per EMG |
| tall storage cabinet | $ 6,300.00 | | | | $  - | Allowed per EMG |
| 25b Replace vanity in powder room | $ 8,200.00 | | $ 864.52 | Vanity saved to be reinstalled | $ 864.52 | Allowed per EMG |
| 25b Replace Crown Molding and Base in Hallway | $ 6,100.00 | | $ 6,100.00 | | $ 6,100.00 | Allowed as presented |
| 25c Replace Frames in Hallway | $ 8,000.00 | | $ 2,269.37 | There were only three frames requiring replacement. | $ 2,269.37 | Allowed per EMG. Claim was for the entire hallway. |
| 25d Replace Fabric Panels (fabric cost $75/yard) including piping | $ 33,000.00 | | $ 8,100.00 | The replacement of fabric covering should be the same area as the gypsum walls. 970 sf. Is equal to approximately 108 sy. | $ 8,100.00 | Allowed per EMG. Claim is for the entire apartment. Allowed entire hall stopping at natural breaks. |
| **26 Stone Restoration;** | | | | | | |
| 26a Replace stone in master bath | $ 1,530.00 | | $ 1,530.00 | Counter tops - | $ 1,530.00 | Allowed as presented |
| 26b Remove cracked grout, replace grout at all joints | $ 4,424.00 | | $  - | EMG does not believe this work is required, EMG did not see and damage to the existing hallway tile | $  - | Allowed per EMG |
| 26c Grind, restore and seal stone flooring | $ 1,188.00 | | $  - | EMG does not believe this work is required | $  - | Allowed per EMG |
| **27 Electrical;** | | | | | | |
| 27a Replace all lighting and reconnect smart house system | $ 7,455.00 | | $ 4,473.00 | EMG estimate is 2 men 3 days | $ 4,473.00 | Allowed per EMG |
| 27b Materials associated with electrical work | $ 400.00 | | 400.00 | | 400.00 | Allowed as presented |
| **28 Plumbing;** | | | | | | |
| 28a Rough-in and re-connect fixtures in master bath & powder room | $ 3,793.86 | | 2,529.24 | Replacing one toilet and two vanities EMG estimate is 2 men 2 days | 2,529.24 | Allowed per EMG |
| 28b Materials associated with plumbing work | $ 500.00 | | 200.00 | Material required is Shut offs and flex piping. | 200.00 | Allowed per EMG |
| **Sub-Total Union Personnel & Trade Costs:** | $ 267,203.33 | | $ 96,538.30 | | $ 96,538.30 | |

Tishman Revised Estimate.xls

The Wynn Re:        ce
817 Fifth Aven
Demolition and Reconstruction Costs

| Description | Tishman's Estimate | | EMG's Estimate for an As-Was Repair 03/24/05 | | INSURANCE | |
|---|---|---|---|---|---|---|
| | Cost | Tishman Comments | Cost | Comments | PROPOSE | ADJUSTER COMMENTS |
| 29 Insurance; 1.214% of construction costs | $ 3,243.85 | | $ 1,171.97 | | $ 1,171.97 | Allowed per EMG |
| 30 General Conditions: | | | | | | |
| 30a Supervision | $ 40,000.00 | | $ 20,000.00 | Supervision in Tishman's estimate is 18% | $ 20,000.00 | Allowed per EMG |
| 30b Project Management (50%) | $ 22,400.00 | | $ 11,200.00 | | $ 11,200.00 | Allowed per EMG |
| 31 Fee: | $ 50,000.00 | | $ 4,826.91 | CM FEE @ 5% of project cost | $ 4,826.91 | Allowed per EMG |
| Total Reconstruction Costs: | $ 382,847.18 | | $ 133,737.19 | | $ 133,737.19 | |

**Total Clean-up, Demolition and Reconstruction Costs:**

| | | | | |
|---|---|---|---|---|
| Clean-up, Water Removal and Dry Out Process (see billing dated 2/7/05) | $ 47,387.20 | | $ 47,387.20 EMG has not reviewed this cost | $ 47,387.20 Allowed as presented |
| Actual Demolition Costs (from above) | $ 36,755.57 Corrected total - see notes above | | $ 35,134.57 EMG has not reviewed the invoices for this cost | $ 36,755.57 Allowed as presented |
| Reconstruction Costs (from above) | $ 382,847.18 | | $ 133,737.19 | $ 133,737.19 |
| SUM TOTAL PROJECT COSTS: | $ 466,989.95 | | $ 216,258.95 | $ 217,879.95 |

Notes:
*Claimed as $470,201, but see correction above*

# EXHIBIT D

# YORK
Claims Service, Inc.

**Specialized Loss Adjusting Division**
125 High Rock Avenue
Saratoga Springs, NY 12866

RECEIVED AIGDC
HOME OFFICE PROPERTY
JUL 1 3 2005
PARSIPPANY, NJ

| | | |
|---|---|---|
| Interested Companies | **Date:** | July 8, 2005 |
| c/o Jon Wanczyk | **Report:** | Five |
| AIG Technical Services | **Insured:** | Wynn Resorts, LLC |
| 400 Interpace Pkwy. | **Claim No:** | Various |
| Building A, 4th Floor | **Policy No:** | Various |
| Parsippany, NJ 07054 | **York File No:** | SLA-0151A9 |
| | **Loss Location:** | 817 5th Avenue, New York, NY |
| | **Policy Period:** | 6/22/2004 – 2005 |
| | **Type of Claim:** | Water Damage |
| | **Date of Claim:** | 12/29/2004 |

Dear Mr. Wanczyk,

As you know, an agreement on the whole loss and damage was reached in May of 2005. Payments of the actual cash value loss were sent to the insured at that time. This claim remains open for the adjustment of the replacement cost claim with a depreciation holdback totaling $9,214.34.

## RESERVES:

The agreed adjustment of this claim can be summarized as follows:

| | |
|---|---|
| Replacement cost damage to building | $217,879.95 |
| Less Depreciation | ($9,214.34) |
| Actual Cash Value loss | $208,665.61 |
| Less Deductible | ($25,000.00) |
| Net claim payment | $183,665.61 |

A direct payment to Tishman Construction totaling $84,142.77 was made for the work including demolition and emergency clean up. The remaining amount of the actual cash value loss totaling $101,143.84 was paid to Steve and Eileen Wynn at the request of Linda Young, the Risk Manager for Wynn Resorts, Ltd.

## DEVELOPMENTS:

Several weeks ago, the risk manager for Wynn Resorts called me to let me know that the insured, Steven Wynn, had just been to the property and was

York
Claims Service, Inc.

Wynn Resorts, LLC
Report Five
Page 2 of 4

very upset with the conditions he found.  It appears that Mr. Wynn was not
advised that the apartment was going to be renovated.  There was a
significant amount of demolition in the property which Mr. Wynn assumed
was all part of the water damage incident.  Mr. Wynn contacted his personal
attorney to look into this matter.  I was asked to call the attorney to explain
the water damage that was involved with this claim.

I called the attorney's office on two occasions and left messages. I later
learned from Ms. Young, that the attorney was going to review the issue and
then discuss the matter with his client.  I was also advised that Ms. Young
and the broker, Pat McGinley had sent copies of their files to Mr. Wynn's
personal attorney for his review.

I have not had any direct communication with Mr. Wynn's personal attorney
regarding this claim.  Since it has been several weeks since the loss occurred
and Ms. Young's file includes copies of my schedules of loss detailing the
water damages that occurred, it is possible that this issue has been resolved.

Approximately three weeks ago, I received a call from Mr. Richard Peek who
advised that this property was scheduled for quality assurance re-inspection.
Mr. Peek informed me that his schedule was very tight and he would get
back to me with a date when he was available to complete the re-inspection.
On July 7th, I called Mr. Peek to see when he would be available to complete
the re-inspection of the property.  I informed him that the demolition of the
entire apartment was complete therefore, if would be very difficult to
differentiate between water damages and apartment renovations.

Mr. Peek advised me that his schedule was still very tight and he would not
be available until either the end of July or early part of August.  He informed
me that he would telephone after he returns from his vacation to let me
know what dates are available and he asked that I coordinate the re-
inspection with the insured and Ms. Young.

Finally, I received a call yesterday from the insured asking when the
depreciation holdback could be released.  While Pat McGinley understood
the replacement cost claim process, it appears that Ms. Young thought that
the release of the holdback would be based on the re-inspection of Mr. Peek.
Once again I explained that the re-inspection is part of your quality

York
Claims Service, Inc.

Wynn Resorts, LLC
Report Five
Page 3 of 4

assurance program and did not affect their claim settlement in any way. I
reviewed the replacement cost process and asked the broker to review this
with the insured as well.

Some of the confusion appears to be created by a miscommunication
between different departments within the Wynn organization. For example,
when I spoke with Mr. Wynn's personal assistant, they were not aware that
the actual cash value payments had already been sent. When I spoke to Mr.
McGinley, I learned that Ms. Young was waiting to receive the depreciation
holdback before discussing the insurance loss settlement with Mr. and Mrs.
Wynn. And since the personal assistant was waiting for confirmation of the
insurance proceeds before beginning repairs, there have been no repairs at
the apartment.

In an electronic mail message which I copied you, I outlined the replacement
cost process for the insured in writing, and advised them that we would
need to receive copies of the actual invoices for expenses incurred. I also
explained that you may request a re-inspection of the property to confirm
that repairs were actually completed. I am hopeful that this written
explanation, combined with the various discussions I have had with the
insured and the broker, have clarified the replacement cost process.

## FUTURE HANDLING:

We are keeping this file open pending confirmation that the repairs have
been completed. We will obtain copies of invoices supporting the actual
costs incurred and will perform a re-inspection of the property to make sure
that all policy terms and conditions have been satisfied.

In addition, we will assist your re-inspector, Mr. Dick Peek, with
coordinating his quality assurance inspection of the property as soon as his
schedule permits.

We are submitting an interim service invoice for your consideration. Copies
of the details supporting the time and expenses charged to this matter are
also attached. As always, please call me should you have any questions
regarding this invoice or any aspect of this report.

A member of York Insurance Services Group, Inc.

York
Claims Service, Inc.

Wynn Resorts, LLC
Report Five
Page 4 of 4

Respectfully submitted,

*James E. Podesva/mg*

James E. Podesva, RPA
Executive General Adjuster
918-306-3730

jep/mg

**ENCLOSURES:**

1. Original Sworn Statements in Proof of Loss for Allied World Assurance and Lexington Insurance Company for their respective interest in the actual cash value claim settlement.
2. York interim service invoice.
3. Email message to the insured and their broker regarding the replacement cost claim holdback.

**ENCLOSURE 1**

 RESORTS

RECEIVED
JUN - 8 2005
WILLIS - CLAIMS
RADNOR, PA

June 7, 2005

Mr. Patrick McGinley
Assistant Vice President
Willis of Pennsylvania
Commercial Lines Division
P.O. Box 9052
Radnor, Pennsylvania  19087-9052

RE:  New York Apartment – Water Damage Claim

Dear Pat:

Please find enclosed the original signed Proof of Loss forms.  Would you please process accordingly with the carrier.  As a reminder, the check needs to be made payable to Mr. and Mrs. Wynn

If you have any questions, please advise.

Sincerely,

Linda A. Young
Insurance Manager

LAY:cmh

Enclosure

## SWORN STATEMENT IN PROOF OF LOSS

| | |
|---|---|
| **$2.5 million part of $10 million** | 1374229 |
| AMOUNT OF POLICY AT TIME OF LOSS | POLICY NUMBER |
| 06/22/2004 | Willis of Pennsylvania, Inc. |
| DATE ISSUED | AGENT |
| 06/22/2005 | Radnor, PA |
| DATE EXPIRES | AGENCY AT |

To the _____ **Allied World Assurance Co.** _____ Insurance Company

of _____ **Boston, Massachusetts** _____

At the time of loss, by the above indicated policy of insurance, you insured _____ **Wynn Resorts, LLC** _____

Per schedule: 817 5th Avenue, New York, NY

against loss by **Water Damage** _____ to the property described under Schedule "A", according to the terms

and conditions of the said policy and all forms, endorsements, transfers and assignments attached thereto.

**1. Time and Origin:** A ___**Water Pipe Leak**___ loss occurred about the hour of _____ o'clock

on the **29th** day of **December** , 2004 . The cause and origin of the said loss were ___**Pipe leaking in**___

**apartment above insured's residence.**

**2. Occupancy:** The building described, or containing the property described, was occupied at the time of the loss as follows, and for no

other purpose whatever ___**Personal Residence**___

**3. Title and interest:** At the time of the loss the interest of your insured in the property described therein was ___**N/A**___

_____ No other person or persons had any

interest therein or encumbrance thereon, except: ___**no exceptions**___

**4. Changes:** Since the said policy was issued there has been no assignment thereof, or change of interest, use, occupancy, possession,

location or exposure of the property described except: ___**no exceptions**___

**5. Total Insurance:** The total amount of insurance upon the property described by this policy was, at the time of loss, ___**$2.5 Mil. Part of $10 mil.**___

as more particularly specified in the apportionment attached under Schedule "C", besides which there was no policy or other contract of

insurance, written or oral, valid or invalid.

**6. Actual Cash Value** of said property at the time of the loss was...................................................$ ___**To Be Determined**___

**7. The whole loss and Damage was** ...........................................................................................$ ___**208,665.61**___

**8. Less amount of Deductible and/or participation by the insured......Payments already made.............**$ ___**107,521.77**___

**9. The Amount Claimed under the above numbered policy is**.............................................................$ ___**25,285.96**___

**Any person who knowingly and with intent to injure, defraud, or deceive any Insurance Co., files a statement of claim concerning any false incomplete or misleading information is guilty of a felony of third degree.**

The furnishing of this blank or the preparation of proofs by a representative of the above company is not a waiver of any of its rights.

State of ___NEVADA___

County of ___CLARK___

Subscribed and sworn before me this ___7th___ day of ___JUNE___ ___2005___

*Linda Young — Insurance Manager*
*Wynn Resorts, Limited* _____ Insured

*Kathleen M. Olson* Notary Public

KATHLEEN M. OLSON
Notary Public State of Nevada
No. 02-74973-1
My appt. exp. Mar. 26, 2006

## SWORN STATEMENT IN PROOF OF LOSS

**$7.5 million part of $10 million**
AMOUNT OF POLICY AT TIME OF LOSS

**06/22/2004**
DATE ISSUED

**06/22/2005**
DATE EXPIRES

**1374229**
POLICY NUMBER

**Willis of Pennsylvania, Inc.**
AGENT

**Radnor, PA**
AGENCY AT

To the **Lexington Insurance Company**    Insurance Company

of **Boston, Massachusetts**

At the time of loss, by the above indicated policy of insurance, you insured **Wynn Resorts, LLC**
per schedule: 817 5th Avenue, New York, NY

against loss by **Water Damage**    to the property described under Schedule "A", according to the terms
and conditions of the said policy and all forms, endorsements, transfers and assignments attached thereto.

1. Time and Origin:  A    **Water Pipe Leak**    loss occurred about the hour of _____ o'clock
on the **29th** day of **December**, **2004**. The cause and origin of the said loss were    **Pipe leaking in**
**apartment above insured's residence.**

2. Occupancy: The building described, or containing the property described, was occupied at the time of the loss as follows, and for no
other purpose whatever    **Personal Residence**

3. Title and Interest: At the time of the loss the interest of your insured in the property described therein was    **N/A**
No other person or persons had any
interest therein or encumbrance thereon, except:    **no exceptions**

4. Changes: Since the said policy was issued there has been no assignment thereof, or change of interest, use, occupancy, possession,
location or exposure of the property described except:    **no exceptions**

5. Total Insurance: The total amount of insurance upon the property described by this policy was, at the time of loss,    **$7.5 Mil. Part of $10 mil.**
as more particularly specified in the apportionment attached under Schedule "C", besides which there was no policy or other contract of
insurance, written or oral, valid or invalid.

6. Actual Cash Value of said property at the time of the loss was..................................................$    **To Be Determined**

7. The whole loss and Damage was ...............................................................................$    **208,665.61**

8. Less amount of Deductible and/or participation by the insured......Payments already made.............$    **107,521.77**

9. The Amount Claimed under the above numbered policy is...........................................................$    **75,857.88**

**Any person who knowingly and with intent to injure, defraud, or deceive any Insurance Co., files a statement of
claim concerning any false incomplete or misleading information is guilty of a felony of third degree.**

The furnishing of this blank or the preparation of proofs by a representative of the above company is not a waiver of any of its rights.

State of **NEVADA**

County of **CLARK**

Subscribed and sworn before me this **7th** day of **JUNE**, **2005**

*Linda Young – Insurance Manager*

*Wynn Resorts Limited*    Insured

*Kathleen M. Olson* Notary Public



KATHLEEN M. OLSON
Notary Public State of Nevada
No. 02-74973-1
My appt. exp. Mar. 26, 2006

**ENCLOSURE 2**

AIG CLAIMS SERVICES INC.
P.O. BOX 314
PARSIPPANY NJ 07054-0334

00012011/ 00001490

WYNN RESORTS
313 LAS VEGAS BLVD
ATTN: LINDA A YOUNG
LAS VEGAS , NV          89109

## NON-NEGOTIABLE

| Remittance - | MR AND MRS WYNN | | No. | 00001490 |
| NEWMARKET UNDERWRITERS INSURANCE COMPANY | | | RFP No. | 00012011 |
| | | | | G01 |
| Insured: | WYNN RESORTS L.L.C | | | 07/02/2005 |
| Claimant: | WYNN RESORTS LTD | | Claim Office: | 648 |
| Producer: | | | | |

25% DIFFRENCE IN DEDUCTIBLE                     J.

| Policy | Claim | Sym. | DOL | Type | S | Amount | Total To Date |
|--------|-------|------|-----|------|---|--------|---------------|
| 00001374229 | 00007687 | 0 | 12/29/2004 | IND | 0 | $3,750.00 | $49,666.40 |

Use file # 648 - 00007687   on all correspondence for prompt processing.

For check information call:          973-702-2996          **NON-NEGOTIABLE**

THIS DOCUMENT CONTAINS A CUSTOM COLORED BACKGROUND AS A SECURITY FEATURE
AMERICAN INTERNATIONAL COMPANIES • AMERICAN INTERNATIONAL COMPANIES • AMERICAN INTERNATIONAL COMPANIES • AMERICAN INTERNATIONAL COMPANIES

⑈00001490⑈ ⑆011900445⑆   ⑈89326⑈