UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

|  |  |
|---|---|
| STEVEN WYNN, ELAINE WYNN, WYNN RESORTS LIMITED AND WYNN RESORTS L.L.C. | X : : : : |
| Plaintiffs, | : 07 CV 7604 (NRB) (MHD) : |
| vs. | : : : |
| LEXINGTON INSURANCE COMPANY, and ALLIED WORLD ASSURANCE COMPANY (US) INC., | : : : |
| Defendants. | : : X |

## MEMORANDUM OF LAW IN SUPPORT OF DEFENDANTS'
## MOTION TO COMPEL APPRAISAL AND TO STAY PENDING ACTION

**STEPTOE & JOHNSON LLP**
750 Seventh Avenue, Suite 1900
New York, N.Y. 10019
(212) 506-3900

*Attorneys for Defendants*
*Lexington Insurance Company and*
*Allied World Assurance Company*
*(US) Inc.*

Defendants Lexington Insurance Company ("Lexington") and Allied World Assurance Company (US) Inc. ("Allied") respectfully submit this memorandum, along with the accompanying May 9, 2008 Declaration of Christopher J. Marino with exhibits ("Marino Decl."), in support of their Motion to Compel Appraisal and to Stay Pending Action.

## PRELIMINARY STATEMENT

Appraisal is a term of art in the world of property insurance. One of the first and most enduring forms of alternative dispute resolution, appraisal has been a feature of New York law for nearly 100 years. Property appraisers regularly resolve complex disputes involving millions of dollars and intricate factual issues, as exemplified by the critical role appraisers played in resolving the World Trade Center property claims arising out of the 9/11 terrorist attacks. As is generally the case with ADR, New York courts have long recognized a strong public policy in favor of appraisal proceedings in actions involving insurance disputes.

The central disagreement between the parties to this case is one perfectly suited to appraisal: the Defendants do not dispute that the Plaintiffs' property suffered damage as a result of a covered event; they dispute the *amount* of damage to the property. There is no issue of policy interpretation or legal causation. Rather the appraisers would determine the amount of loss to property that was damaged at all. Such a fact-intensive determination is the reason that appraisal exists, because it fosters the efficient resolution of thorny factual disputes that would otherwise have to be tried before a judge or jury, while leaving the court to attend to any remaining legal issues once appraisal is complete.

Federal courts sitting in New York have the power to enforce appraisal clauses, and courts typically grant stays in actions pending the outcome of the appraisal. This result is especially warranted here, where it would be a waste of the Court's resources to delve into questions of law before appraisal, especially when the result of the appraisal could render this case moot or lead to a resolution of the entire dispute. The Defendants therefore respectfully request that the Court enter an order compelling

the parties to submit to an appraisal pursuant to the terms of the insurance policy, and staying

proceedings in this action pending the outcome of the appraisal.

## BACKGROUND

Defendants Lexington and Allied issued property insurance policies (the "Policy") to Wynn

Resorts L.L.C. ("Wynn"), covering the period from June 22, 2004 to June 22, 2005.  *See* Am. Compl.,

¶¶ 14-15, Exs. A & B.  The Policy includes a provision providing for Appraisal:

E.2. Appraisal

> If we and you disagree on the value of the property or the amount of loss, either may
> make written demand for an appraisal of the loss.  In this event, each party will select a
> competent and impartial appraiser.  The two appraisers will select an umpire.  If they
> cannot agree, either may request that selection be made by a judge of a court having
> jurisdiction.  The appraisers will state separately the value of the property and amount of
> loss.  If they fail to agree, they will submit their differences to the umpire.  A decision
> agreed to by any two will be binding.  Each party will:
>
> a.      Pay its chosen appraiser; and
>
> b.      Bear the other expenses of the appraiser and umpire equally.
>
> If there is an appraisal, we will still retain our right to deny the claim.

*See id.*

On December 29, 2004, a pipe burst on the eighth floor of 817 Fifth Avenue in New York, New

York and water entered an apartment owned by Wynn.  *See* Am. Compl., ¶ 20.  The outside claims

adjuster, James Podesva, conducted an inspection of the damage on December 31, 2004.  *See* Marino

Decl. ¶ 5, Ex. A.  The hallway sustained the most damage, with some damage also found in the powder

room, the bathroom, the exercise room and the hall to the second bathroom.  *See id.*  Mr. Podesva found

virtually no damage to the apartment's contents.  *See id.*

On approximately March 5, 2005, the construction company retained by the Plaintiffs to handle

the clean-up and repair prepared a Demolition and Project Repair Cost Estimate totaling $548,870.  *See*

Marino Decl. ¶ 6, Ex. B.  Approximately one month later, Mr. Podesva submitted a proposed adjustment

to the Plaintiffs' insurance manager.  *See* Marino Decl., ¶ 7, Ex. C.  The adjustment totaled $217,879.95,

which represented the replacement cost value of the water damage to the apartment.  *See id.*  As a basis

for the adjustment, Mr. Podesva pointed to several over-inclusive items in the revised estimate.  *See id.*

     Partial payments were sent directly to the Insured's contractor for payments totaling $84,142.77.

*See* Marino Decl. ¶ 8, Ex. D.  On June 7, 2005, the Plaintiffs' insurance manager signed a proof of loss

recognizing the whole loss and damage as $208,665.61 and the remaining Net Claim Payments less

deductible were made directly to Mr. and Mrs. Wynn.  *See id.*  There was no indication that Wynn

would make any further claim on the policy other than seeking return of a depreciation hold-back, and

Mr. Podesva prepared to close out his file.  *See* Marino Decl., ¶ 9, Ex E.  Indeed, the Plaintiffs'

insurance manager was explicit in saying that the insurance claim was concluded and that renovation

work that would continue in the apartment was not related to the water leak.  *See* Marino Decl. ¶ 10, Ex.

F.

     After more than nine months of silence regarding the water damage claim, on March 17, 2006,

the Defendants' counsel in this action informed Mr. Podesva that the Plaintiffs would be submitting a

supplemental claim.  *See* Marino Decl. ¶ 11, Ex. G.  On April 6, 2006, Mr. Podesva told the Defendants'

counsel that Lexington would keep its file open until May 1, 2006 (*see* Marino Decl. ¶ 12, Ex. H), but

no correspondence from the Defendants was received, so the file was closed on June 8, 2006 (*see*

Marino Decl. ¶ 13, Ex. I).

     On June 12, 2006, the Defendants' counsel submitted a supplemental claim seeking an additional

$3,360,864.34 to settle the claim.  *See* Marino Decl. ¶ 14, Ex. J.  The supplemental claim encompassed a

renovation and redecorating of the apartment and sought payment for many items – such as new

windows, extravagant ottomans, and hundreds of thousands of dollars in interior design fees – that had

not been damaged at all. Mr. Podesva requested documentary evidence of the supplemental claim in early October of 2006, (*see* Marino Decl. ¶ 15, Ex. K), but the Defendants' counsel did not provide this information until five months later – in March 2007 (*see* Marino Decl. ¶ 16, Ex. L). Plaintiffs' counsel provided additional documentation on April 26, 2007. *See* Marino Decl. ¶ 17, Ex. M.

Shortly thereafter, Frederic R. Mindlin, coverage counsel to the Defendants, offered an additional payment of approximately $600,000 (*see* Marino Decl. ¶ 18, Ex. N) which was paid after Wynn submitted a sworn proof of loss in October 2007 (*see* Marino Decl. ¶ 19, Ex. O). Thus, the Defendants have now paid out roundly $800,000 on this claim – nearly twice what the Plaintiffs' own contractor claimed as damages originally. There is no basis for further payments on this claim, a fact the Defendants seek to have established conclusively through the appraisal process agreed to in the contract between the Parties.

The Defendants presented the Plaintiffs with a Demand for Appraisal on October 15, 2007, and answered the Plaintiffs' complaint on January 30, 2008. *See* Marino Decl. ¶ 20, Ex. P. By letter dated February 29, 2008, the Defendants requested a pre-motion conference on the Defendants' proposed motion to compel appraisal and stay the action pending such appraisal. *See* Marino Decl. ¶ 21, Ex. Q. During the conference before this Court on March 4, 2008, the merits of such a motion were discussed by the Parties. On April 21, 2008, pursuant to a Stipulation and Order signed by the Parties and endorsed by the Court April 4, 2008, the Plaintiffs filed an Amended Complaint. In the Stipulated Order, the Parties also agreed to a briefing schedule for the Defendants' motion to compel appraisal and stay the action pending such appraisal, and to a stay of the proceedings in this case pending a decision on the Defendants' motion.

## LEGAL ARGUMENT

I.    **This Court Should Compel Appraisal Because the Parties Disagree as to Amount of Loss**

Under New York law appraisal is appropriate where the parties primarily disagree as to *the amount of loss or damage. Duane Reade, Inc. v. St. Paul Fire & Marine Ins. Co.*, 411 F.3d 384, 389 (2d Cir. 2005); *ZAR Realty Mgmt. Corp. v. Allianz Ins. Co.*, No. 02 Civ. 6741(HB), 2003 WL 1744288, at *5 (S.D.N.Y.  Mar. 31, 2003); *Richardson v. Merrimack Mut. Fire Ins. Co.*, No. 98 CIV 5967 JFK, 2000 WL 297171, at *5 (S.D.N.Y.  Mar. 21, 2000); *Louise Paris, Ltd. v. Lloyds,* 192 A.D.2d 356, 357, 595 N.Y.S.2d 776, 776 (1st Dep't 1993); *Kawa v. Nationwide Mut. Fire Ins. Co.*, 174 Misc. 2d 407, 408, 664 N.Y.S.2d 430, 431 (N.Y. Sup. Ct. 1997).

The amount of loss is precisely the source of the disagreement between the Parties in this case. The Defendants do not dispute that the insured property suffered some damage as a result of a covered event – that is why the Defendants have already paid the Plaintiffs over $800,000 on their claim.  The Defendants do contend, however, that the additional costs claimed by the Plaintiffs relate to items that were not damaged and therefore did not require repair or replacement.

In a similar case, Judge Baer found that, where the defendant "does not disagree that the policy covers the type of losses and damages claimed" and the dispute "centers around the valuation of plaintiffs' losses and damages" appraisal is appropriate. *ZAR Realty Mgmt.*, 2003 WL 1744288, at *5 n.2.  Moreover, the New York's Appellate Division, First Department, interpreting a nearly identical appraisal clause, held that appraisal is "sufficiently broad to encompass" a disagreement as to whether any losses occurred at all. *Louise Paris*, 192 A.D. at 357, 595 N.Y.S.2d at 777 (compelling an insurer to submit to an appraisal upon the insured's demand where the insurer disputed that there was any loss at all).

Courts from other jurisdictions have similarly held that, if the insurer concedes that the insured's property suffered some loss as a result of a covered event, but disputes the extent of that loss, appraisal is appropriate.

For example, in *Johnson v. State Farm Lloyds*, 204 S.W.3d 897 (Tex. App. – Dallas 2006), *review granted*, No. 06-1071, 2007 Tex. LEXIS 875 (Tex. Sept. 28, 2007), the Texas Court of Appeals ordered appraisal where the parties agreed that some damage occurred as the result of a covered event, but disagreed as to the extent of damage. There, the insured claimed that the entire roof of her home was damaged by hail, but the insurer contended that only the ridgeline was damaged. *Id.* at 898. The *insured* demanded that the dispute be submitted for appraisal. *Id.* Similar to the language in the policy at issue here, the appraisal clause read: "If you and we fail to agree on the amount of loss, either one can demand that the amount of the loss be set by appraisal." *Id.* at 900.

The *Johnson* court found that appraisal was appropriate, holding that "if the parties agree there is coverage but disagree on the extent of damage, the dispute concerns the 'amount of loss' and that issue is determined in accordance with the appraisal clause." *Id.* at 903. The court elaborated on the possibility of abuse if the parties were first required to agree on the specific items damaged before an appraisal was appropriate:

> If the parties had to first agree on which specific shingles were damaged and approach every disagreement on extent of damage as a causation, coverage or liability issue, either party could defeat the other party's request for an appraisal by labeling a disagreement as a coverage dispute. Instead, as the process is designed, once it is determined that there is a covered loss and a dispute about the amount of that loss, the appraisal process determines the amount that should be paid because of loss from a covered peril.

*Id; see also Lundstrom v. United Servs. Auto. Ass'n-CIC*, 192 S.W.3d 78, 87-88 (Tex. App. – Houston [14th Dist.] 2006), *review denied*, No. 06-02091, 2006 Tex. LEXIS 833 (Tex. Sept. 1, 2006) (appraisal appropriate where insurer agreed to cover the loss occurring at the time of the initial water intrusion and

requested that the appraisers determine the amount of that loss); *Ori v. Am. Family Mut. Ins. Co.*, No. CV-2005-697-PHX-ROS, 2005 WL 3079044, at *4 (D. Ariz. Nov. 15, 2005) (appraisal appropriate where parties agreed that fire caused smoke smell to build up in a ceiling cavity but disagreed as to the repairs necessary to restore home to pre-fire state).

Similarly, the Florida Supreme Court has held that "causation is a coverage question for the court when an insurer wholly denies that there is a covered loss and an amount-of-loss question for the appraisal panel when an insurer admits that there is a covered loss, the amount of which is disputed." *Johnson v. Nationwide Mut. Ins. Co.*, 828 So. 2d 1021, 1022 (Fla. 2002); *see also Kendall Lakes Townhomes Developers, Inc. v. Agric. Excess & Surplus Lines Ins. Co.*, 916 So. 2d 12, 15 (Fla. Dist. Ct. App. 2005) (explaining that where an insurer does not wholly deny a claim, it is the appraiser's duty to determine the amount of loss associated with the admittedly covered event). *See also Lasha v. Farmers Ins. Co.*, No. 21641-1-III, 2004 WL 119880, at *3 (Wash. Ct. App. Jan. 27 2004) (quoting *Johnson*, 828 So. 2d at 1022, for the proposition that causation is an amount-of-loss issue for the appraisers "'when an insurer admits that there is a covered loss, the amount of which is disputed'").

Without question, not every dispute between an insured and an insurer is appropriate for appraisal. In *CIGNA Insurance Co. v. Didimoi Property Holdings, N.V.*, 110 F. Supp. 2d 259, 264 (D. Del. 2000), by way of example, the insurer did not contest that fire damaged the insured's building, but only contested the extent of the damage to the building. Appraisal was appropriate on this factual issue while the court was careful to note that "[c]overage questions, such as whether damage is excluded for reasons beyond fire damage," "are legal questions for the Court . . . ." *Id.* at 268. Just the same, *Kawa v. Nationwide*, 174 Misc. 2d at 409, 664 N.Y.S.2d at 432, held that "appraisers cannot determine such coverage questions as whether the damage claimed by an insured falls under a policy exclusion." *CIGNA*, 110 F. Supp. 2d at 266; *see also Lundstrom*, 192 S.W.3d at 89 (appraisal panel determinations

- 8 -

of causation only exceed the panel's authority where "they engage in making the *legal determination of what is or is not a covered loss* based on their determination of what caused the loss or a portion of it.") (emphasis added).

The above cases from other jurisdictions are on all fours with the Second Circuit's summary of New York law in *Duane Reade*: "It is well established that the scope of coverage provided by an insurance policy is a purely legal issue that cannot be determined by an appraisal, which is limited to factual disputes over the amount of loss for which an insurer is liable." 411 F.3d at 389. Here the Defendants do not dispute that the Plaintiffs' apartment was damaged as a result of a covered event – there is no "purely legal issue" presented. What the Defendants do dispute is the amount of the loss. Such a determination is appropriate for appraisal, and appraisal is required by the terms of the contract of insurance between the Parties.

## II.    Public Policy Favors Appraisal

Compelling appraisal here would not only enforce the terms of the insurance contract, it would further public policy interests favoring alternative dispute resolution. "Like the arbitration remedy, appraisal is designed to be consistent with the public policy of discouraging litigation. Accordingly, every reasonable presumption will support the validity of a loss appraisal." 15 Lee R. Russ & Thomas F. Segulla, *Couch on Insurance* § 209:8 (3d ed. 2005). Consonant with this general rule, New York courts have long recognized a strong public policy in favor of appraisal proceedings in actions involving insurance disputes: "New York public policy favors an appraisal proceeding over a trial on damages . . . ." *SR Int'l Bus. Ins. Co. v. World Trade Ctr. Props., LLC*, No. 01 Civ. 9291 CMBM, 2004 WL 2979790, at *3 (S.D.N.Y. Dec. 1, 2004); *see also, e.g., Maiden Creek T.V. & Appliance, Inc. v. Gen. Cas. Ins. Co.*, No. 05-667, 2008 WL 351906, at *2 (E.D. Pa. Feb. 8, 2008) (Pennsylvania's public policy favors appraisal when "the liability for the loss is admitted and the only question that remains is the amount of the loss"); *Tristar Lodging, Inc. v. Arch Specialty Ins. Co.*, 434 F. Supp. 2d 1286, 1298 n.12

(M.D. Fla. 2006) (same), *aff'd*, 215 Fed. App'x 879 (11th Cir. 2007); *Motorists Mut. Ins. Co. v. Post*, No. Civ.A. 04-487-JBC, 2005 WL 2674987, at *3 (E.D. Ky. Oct. 20, 2005) (same); *Meineke v. Twin City Fire Ins. Co.*, 892 P.2d 1365, 1370 (Ariz. Ct. App. 1994) (same); *Ice City Inc. v. Ins. Co. of N. Am.*, 314 A.2d 236, 241 (Pa. 1974) (same). The Plaintiffs accordingly face a significant burden to establish that the alternative dispute resolution mechanism they agreed to in their contract with the Defendants should not be enforced.

## III.   This Court Has the Power to Enforce the Appraisal Clause

The case law discussed above supports compelling appraisal here, and this Court has the power to do so. *SR Int'l Bus. Ins. Co. v. World Trade Ctr. Props., LLC*, Nos. 01 Civ. 9291(JSM), 02 Civ. 0017(JSM), 2002 WL 1905968 (S.D.N.Y. Aug. 19, 2002). When enforcing appraisal clauses, it is customary for courts to stay the action pending the outcome of the appraisal. *ZAR Realty Mgmt.*, 2003 WL 1744288; *SR Int'l Bus. Ins. Co. v. World Trade Ctr. Props., LLC*, 445 F. Supp. 2d 320, 330 (S.D.N.Y. 2006) (saying that "a court generally reviews disputed questions of law after an appraisal is complete"). Such a result is especially warranted here where the primary dispute between the Parties involves the amount of loss or damage. Staying non-appraisal claims is the most efficient method of conducting litigation where appraisal would have a large impact on and may result in the resolution of non-appraisal eligible claims. *See Ori*, 2005 WL 3079044, at *4; *CIGNA*, 110 F. Supp. 2d at 269 (appraisal would foster parties' resolution of certain issues without legal intervention by narrowing and identifying disputed issues, thereby promoting the purpose of appraisal). Therefore, a stay pending appraisal is in the interest of all of the Parties, as well as this Court.

## CONCLUSION

For the foregoing reasons, the Defendants respectfully request that this Court compel the

Plaintiffs to participate in the appraisal that they agreed to in the insurance contract, and to stay

proceedings in this case pending the outcome of the appraisal.

Respectfully submitted,

Dated: New York, New York
      May 9, 2008

STEPTOE & JOHNSON LLP

By:  /s Evan Glassman
      Michael C. Miller
      Evan Glassman
      Christopher J. Marino
      750 Seventh Avenue
      New York, N.Y. 10019
      (212) 506-3900

      *Attorneys for Defendants*
      *Lexington Insurance Company and*
      *Allied World Assurance Company*
      *(US) Inc.*

*Of Counsel*:
Roger E. Warin, Esq.
Matthew J. Herrington, Esq.
STEPTOE & JOHNSON LLP
1330 Connecticut Avenue, NW
Washington, D.C.  20036
Telephone:    (202) 429-3000
Facsimile:    (202) 429-3902

## CERTIFICATE OF SERVICE

I hereby certify that I caused to be served upon the parties listed below by electronic mail and

Federal Express on May 9, 2008, a true and correct copy of the annexed Memorandum Of Law In

Support Of Defendants' Motion To Compel Appraisal And To Stay Pending Action.

/s Kimberlyn Brzozowski

Stuart P. Slotnick, Esq.
Buchanan Ingersoll &
  Rooney PC
New York Times Building
620 8th Avenue, 23rd Floor
New York, NY  10018