# YORK

Specialized Loss Adjusting Division
James E. Podesva, RPA
Executive General Adjuster

### Memorandum

Date: January 2, 2005

To: File

From: J.E. Podesva

Re: Wynn Resorts
Water Damage Loss
7th Floor Apartment
817 5th Avenue, New York, NY

When I learned of this assignment on December 30th, I called both of the contacts provided and arranged to inspect the loss on December 31, 2004. I also telephoned the building superintendent t and discussed the circumstance leading up to the discovery of the loss as well as the planned repairs of the damaged water equipment.

I inspected the loss with Mr. Brian Stevens of Engineering Management Group, and Ms. Theresa TC of Hillman Environmental who have been retained for the insurer's interests. A representative from Tishman construction and the subcontractor working on the emergency cleanup, and the housekeeper were in attendance for the insured.

INSURED AND RISK:

The insured is Wynn Resorts, a large corporation with extensive hotel and casino holdings in Las Vegas, NV. The property involved with this claim is the corporate apartment situated on the 7th floor of 817 5th Avenue, New York, NY. The apartment occupies the entire 7th floor of the building overlooking Central Park. There are 3 bedrooms, a formal dinging room, and a large sitting room. I was told by the representative of Tishman Construction that the apartment was renovated 4 years ago, and the cost was said to be several million dollars.

125 High Rock Ave., Saratoga Springs, NY 12866
Tel. 518-306-3730  Fax 518-306-3731



EXTERIOR OF RISK

## COVERAGE:

I do not have a complete copy of the policy. I do have a basic declarations page and a list of forms make up the policy. I will provide a more detailed coverage summary in my first full report.

From the descriptions on the form schedule, this policy covers property owned by the insured for loss by risks of direct physical loss or damage, except when the cause of the loss is expressly excluded or limited in the policy. The valuation of loss is at replacement cost, if the property is actually replaced. The form schedule lists mold exclusion, but I do not have the detailed wording of that form.

This is a layers subscription policy and Lexington Insurance covers $7.5 million of the first $10 million excess of the deductible. I do not have any information what the deductible amount is that applies.

## THE LOSS:

The loss was caused by a water pipe break that we believe occurred within a wall cavity of the 8th floor apartment. The reason for the water pipe break is unknown, because the leaking section has not been located.

According to Karl Schneider, the Building Superintendent, the doorman was delivering the morning papers at approximately 5:00 AM on 12/29/04 when he noticed water coming from

below the entry door to the insured's apartment. The water was coming into the hall and flowed into the elevator shaft. The doorman checked the 6th and 8th floors and noticed that water was leaking there as well.



WATER PIPE IN 7TH FLOOR CEILING GOING TO 8TH FLOOR APARTMENT

The 6th floor is vacant and the doorman was able to look inside and could see any source for the water. The 8th is occupied but the owner is in Florida. The doorman tried to call the housekeeper for the 8th floor apartment, but there was no answer. The doorman notified Mr. Schneider who located the water valve in the basement and shut off all water to that riser.

The insured's housekeeper was called and when she arrived, the building employees assisted her with the emergency water clean up.

The housekeeper notified Mr. Sean Klimeck who manages all of Mr. Wynn's residence properties and his personal estate. Mr. Klimeck called Tishman construction and hired them to oversee the cleanup and the repairs of the property.

Tishman was on site by noon on the 29th and they called in a remediation contractor, Degnon, Inc. to assist with the water extraction and dehumidification of the building. Degnon was on site within two hours and installed drying equipment throughout the apartment.

I spoke with the building handyman, Harold (last name unknown), who told me the plans to locate and repair the leaking pipe. The owner of the 8th floor apartment has hired an architect who is coming on Monday January 3, 2005 to locate source. The building handyman has contacted a plumber who will be standing by to make the repairs once the pipe is located. The nature of the break is not known, and Harold agreed to remove the leaking pipe (or valve) and set it aside for examination later.

I have discussed the subrogation possibilities with Mr. Dan Krowlikowski, of AI Recovery. Mr. Krowlikowski sent a fax to the building manger asking them to hold the pipe aside for examination by your representative. I will request a copy of the lease, or applicable contract, from the insured's Risk Manager. Finally, I will call Douglas Petersons office to see if they have an engineer in NYC who can examine the pipe and determine the cause of the leak.

NATURE AND EXTENT OF DAMAGE:

The damage to the insured's apartment is localized in the main hallway and the adjoining rooms. There are 5 rooms that sustained water damage. These rooms are listed below, and I have summarized the damages that were visible during my inspection.

Hallway

This room has the most serious damage.

Replace all of the sheetrock ceiling and insulation. The two-piece crown molding will need to be removed to accomplish this.

The walls are covered with a padded fabric that was wet and is wrinkling near the baseboard molding. The designer and the contractor who installed the fabric say that it cannot be removed, or stretched in place without causing more damage to the fabric. If the fabric must be repaired, and I believed that it will, then all of the material in the hallway will have to come out. I am told by Tishman construction, that this is an imported German material that is no longer available.



MAIN HALLWAY CEILING WITH DRYWALL REMOVED



MAIN HALLWAY WALLS WITH FABRIC IN PLACE

Powder Room

This room was located next to the small closet where most of the water entered the apartment. The wall fabric was still wet when I examined it, and the ceiling and insulation were still in place but obviously damaged to the point that it had to be replaced. Your consultant from Hillman Environmental recommended that the ceiling and the fabric walls be removed to allow for the property drying of this room.



POWDER ROOM WALL FABRIC IN THE AREA WHERE THE WATER ENTERED THE ROOM

<u>Bath Room and Exercise Room, and Hall to Second Bed Room</u>

Only the carpeting in these rooms was damaged, and it had already been removed and thrown out by the time I arrived.



<u>BATH ROOM WITH CARPETING REMOVED</u>



<u>EXERCISE ROOM WITH CARPETING REMOVED</u>

There was very little content damaged by the loss. The housekeeper showed my two paintings that had come in contact with water. The damage appears minor to me. The actual painting was not damaged, but the mat and the back of the frame was. I believe that these items can be re-

framed. I do not think an art conservation expert is needed to evaluate the condition of these two paintings.



SMALL RELIEF ETCHING WITH STAIN ON LEFT SIDE OF MAT



LARGER PRINT WITH WATER STAIN ON THE BACK

ESTIMATE:

I estimate that the loss could be as much as $100,000. This is only my initial assessment of the potential loss, and I have asked your consultant to provide me with a range for the value of the loss. I expect this estimate will be available in a few days.

There are several issues that will affect the cost of the repairs. The first issue is the wall fabric in the hallway. Another issue affecting the cost of the repairs are the physical conditions at the building. The service elevator is very small and only 4 adults can fit at one time. Any materials that are needed for the reconstruction will need to come through this elevator.

FUTURE HANDLING:

Hillman Environmental will return to the apartment on Tuesday January 4th to check the progress of the drying, and to take some discreet air and surface samples.

Tishman will begin to bring in subcontractors who will prepare submissions for the repairs to the interior finishes. I expect that the list of the subcontractors will include: carpentry; plumbing; electrical; wall covering; and painting.

I will obtain copies of the lease or the condominium agreement from the insured. I will coordinate the inspection of the damaged section of the pipe with your subrogation department, and cause and origin engineer.

I will review the estimates for the repairs and then verify the reasonableness of these costs with your building consultant.

A detailed report will follow in 30 days.