UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

STEVEN WYNN, ELAINE WYNN, WYNN
RESORTS LIMITED AND WYNN RESORTS L.L.C.,

                                 Plaintiffs,

                -against-

LEXINGTON INSURANCE COMPANY, and
ALLIED WORLD ASSURANCE COMPANY (US),
INC.,

                              Defendants.

Civ. Action No.
07 Civ. 7604 (NRB)(MHD)

## PLAINTIFFS' MEMORANDUM OF LAW IN OPPOSITION TO DEFENDANTS' MOTION TO COMPEL APPRAISAL AND TO STAY PENDING ACTION

BUCHANAN INGERSOLL & ROONEY PC
Barry I. Slotnick, Esq.
Stuart P. Slotnick, Esq.
620 Eighth Avenue, 23rd Floor
New York, NY 10018
(212) 440-4400

*Attorneys for Plaintiffs*
*Wynn Resorts Limited, Wynn Resorts L.L.C.,*
*Steve Wynn, Elaine Wynn*

# TABLE OF CONTENTS

**Page**

PRELIMINARY STATEMENT ......................................................................................1

STATEMENT OF FACTS............................................................................................3

    A.  The Extensive Damage ....................................................................................3

    B.  Demolition to the Apartment ..........................................................................5

    C.  The Untimely Demand for an Appraisal...........................................................7

ARGUMENT..............................................................................................................9

   I.  DEFENDANTS' MOTION IS UNTIMELY AND IN BAD FAITH ...........................9

    A.  A Meaningful Appraisal is No Longer Possible.......................................................9

       1.  Defendants Were Fully Aware of the Restoration and
          Disposal of Damaged Property ........................................................10

       2.  Defendants' Knowledge Prevents the Granting of Their Motion.....................10

    B.  Defendants Nonetheless Delayed in Their Demand For An Appraisal ................11

    C.  Defendants' Delayed Request for An Appraisal is Evidence
       of Their Bad Faith Conduct ...............................................................................12

  II.  ASSUMING *ARGUENDO* THAT AN APPRAISAL WAS
     PRACTICAL, DEFENDANTS' REQUEST FOR AN APPRAISAL
     AT THIS JUNCTURE IS PREMATURE AS MATERIAL DISPUTES
     REGARDING COVERAGE AND LIABILITY MUST FIRST BE RESOLVED .....14

    A.  Appraisals Do Not Resolve Legal Questions of Causation,
       Coverage, or Liability ........................................................................................14

    B.  This Case, At Its Core, is a Dispute Regarding Defendants'
       Liability and the Scope of Coverage Under Plaintiffs'
       Insurance Policies ..............................................................................................17

      C.  The Cases Defendants Cite Are Inapposite ........................................................... 20

III.  IN THE EVENT THE COURT GRANTS DEFENDANTS'
     MOTION TO COMPEL AN APPRAISAL, DEFENDANTS'
     REQUEST TO STAY THE ACTION SHOULD BE DENIED
     BECAUSE THE APPRAISAL DOES NOT RESOLVE CLAIMS
     RELATING TO DEFENDANTS' BAD FAITH ......................................................... 21

CONCLUSION .................................................................................................................. 23

# TABLE OF AUTHORITIES

**Cases** .................................................................................................................. **Page(s)**

*Bard's Apparel Mfg., Inc. v. Bituminous Fire and Marine Ins. Co.*
   849 F.2d 245 (6th Cir. 1988) ................................................................................11

*Chainless Cycle Mfg. Co. v. Sec. Ins. Co. of Conn.*
   169 N.Y. 304 (Ct. of App. Dec. 31, 1901) ................................................... 9, 10, 11

*Duane Reade v. St. Paul Fire & Marine Ins. Co.*
   411 F.3d 384 (2d Cir. June 22, 2005).....................................................................15

*GBC & A. Richardson v. Merrimack Mut. Fire Ins. Co.*
   98 Civ. 5967 (JFK), 2000 WL 297171 (S.D.N.Y. March 21, 2000)........................14

*Indian Chef v. Fire and Cas. Ins. Co. of Conn.*
   02 Civ. 3401 (DLC), 2003 WL 329054 (S.D.N.Y. Feb. 13, 2003)...........................9

*Johnson v. Nationwide Mut. Ins. Co.*
   828 So. 2d 1021 (Fla. 2002) ..................................................................................17

*Johnson v. State Farm Lloyds*
   204 S.W.3d 897 (Tex. App. 2006) .........................................................................16

*Kawa v. Nationwide Mut. Fire Ins. Co.*
   174 Misc.2d 407 (Sup. Ct. Erie County 1997) ..................................................14, 20

*Louise Paris Ltd. v. Those Certain Underwriters at Lloyds*
   192 A.D.2d 356 (1st Dep't 1993)............................................................................17

*Ori v. Amer. Family Mut. Ins. Co.*
   2005 WL 3079044 (D.Ariz. 2005) .........................................................................20

*Peck v. Planet Ins. Co.*
   93 Civ. 4961 (MBM), 1994 WL 381544 (S.D.N.Y. July 21, 1994)........................10

*Rogers v. State Farm Fire and Casualty Company*
   2007 WL 2966694 (Ala. 2007)...............................................................................16

*Salinas v. State Farm Lloyds*
   2008 WL 552498 (5th Cir. Feb. 28, 2008) .............................................................15

**Cases** ............................................................................................................... **Page(s)**

*SR Int'l Business Ins. Co. Ltd. v. World Trade Center Properties LLC*
   445 F. Supp. 2d 320 (S.D.N.Y. 2006) ....................................................................20

*Zar Realty Mgt. Corp. v. Allianz Ins. Co.*
   02 Civ. 6741 (HB), 2003 WL 1744288 (S.D.N.Y. March 31, 2003) .................................14, 15


**Statutes** ............................................................................................................. **Page(s)**

General Business Law § 349 ...........................................................................................22

Nevada Declaratory Judgments Act and Unfair Insurance Practices Act .....................................22

## PRELIMINARY STATEMENT

Plaintiffs, Steven Wynn, Elaine Wynn (collective, the "Wynn Plaintiffs"), Wynn Resorts Limited, and Wynn Resorts L.L.C. (collectively referred to herein as "Plaintiffs"), respectfully submit this memorandum of law in opposition to the motion of defendants Lexington Insurance Company ("Lexington") and Allied World Assurance Company (US) Inc. ("Allied") (collectively referred to herein as "Defendants") to compel a non-binding appraisal and to stay the pending action.

Defendants' motion must be denied on the grounds that: 1) Defendants' request to compel an appraisal is untimely and in bad faith due to their delay of that request until *after* the time to demand an appraisal has passed and disposal of all the damaged property at issue, rendering a meaningful appraisal impossible, and 2) assuming *arguendo* that an appraisal is even possible, which it is not, the extensive unresolved material disputes regarding coverage and liability must be resolved *before* this Court can compel an appraisal in order to establish its parameters.

Defendants provided insurance to the Plaintiffs, which covered the Wynn Plaintiffs' apartment in New York City. On or about December 29, 2004, the Wynn Plaintiffs' apartment was rendered uninhabitable by a massive flood caused by a burst water pipe. As a result of the extensive damage, prompt commencement of demolition and removal of affected items was required, and significant repairs were necessary to restore the apartment to its pre-flood splendor. Defendants were fully aware that all property damaged or destroyed directly by the flood, as well as subsequently through the resulting moisture, odor, dust and other residual contaminants in the apartment, were removed from the apartment and discarded.

The disposal of all affected property renders the non-binding appraisal impossible and impractical at this time. Defendants' significant delay in demanding an appraisal until after

they knew that one would no longer be possible cannot possibly be in good faith.  In these circumstances, and in light of the fact the appraisal they seek will not bind them to provide coverage, it is plain that Defendants made their motion only with the hope of delaying judicial resolution of Plaintiffs' coverage and misconduct claims.

Furthermore, assuming *arguendo* that any appraisal is possible now, the significant disputes among the parties regarding coverage and liability must be resolved *before* any appraisal can occur.   It is well settled that an appraisal can only resolve issues of valuation; it cannot resolve legal disputes concerning the scope of coverage and liability.  Equally well settled is that these legal issues must necessarily be resolved first to determine the scope of the appraisal.  Because defendants question not only the replacement cost or valuation of the damaged property, but also whether a substantial amount of Plaintiffs' property was damaged at all, an appraisal is inappropriate.

Moreover, even if the Defendants' motion to compel the non-binding appraisal is granted, there is no legitimate purpose for staying this proceeding, and the motion for a stay must be denied.  This is particularly true because the appraisal Defendants' seek does not bind them to coverage, in whole or in part, and, therefore, may ultimately be only a colossal waste of time and money.  In addition, there are several issues and claims in this case that do not pertain to valuation and that would prevent the appraisal from disposing of the entire case.  The non-binding nature of the appraisal, the legal dispute over coverage, the existence of claims unaffected by the appraisal, and the impossibility and impracticality of a meaningful appraisal is at this time all utterly refute Defendants' contention that the appraisal would eliminate the need for litigation or further any policy goal.

Accordingly, Defendants' motion should either be denied in its entirety, or in the alternative, to the extent the Court grants the motion to compel an appraisal, their motion for a stay of this proceeding should be denied.

## STATEMENT OF FACTS

Defendants Lexington and Allied issued "All Risk Including Flood" insurance policies to Plaintiffs for the coverage period of June 22, 2004 through June 22, 2005 ("Policies"), which extend to the Wynn Plaintiffs' apartment, located at 817 Fifth Avenue, New York, NY ("Apartment"). *See* Lexington and Allied Policies, annexed to Slotnick Decl. as Exs. "1" and "2." The Wynn Plaintiffs had made substantial improvements to the Apartment, as well as lavishly adorned, decorated, and furnished it. The Apartment was adorned largely with high-end and/or custom-made furnishings, fabrics, and carpeting, and the Apartment was designed to allow each element in each room to complement the others and to provide for uniformity in the elegant design throughout.

On or about December 29, 2004, a water pipe burst in the ceiling of the Apartment when no one was present, causing water to pour in undetected (the "Flood"). Due to the Flood, much of the infrastructure of the Apartment, as well as its contents and improvements, were either damaged or destroyed. *See, e.g.*, Tishman Construction Loss Report, Jan. 4, 2005 ("Loss Report"), annexed to Slotnick Decl. as Ex. "3" (documenting damage to carpet, artwork, draperies, fabric panels, walls, floors, subflooring, installation, etc.).

## A.    THE EXTENSIVE DAMAGE

This extensive damage was detailed in the Loss Report by Tishman Construction. Damage included, but was not limited to, substantial damage to the infrastructure in certain areas, including the walls, floors, and ceiling, as well as the electrical and other systems located behind the walls. Consequently, whole rooms had to be entirely gutted to remove and repair

3

water-damaged walls, floors, and ceilings. In addition, the custom-made carpet and wall

coverings were "saturated" in several rooms including the living room, powder room, work out

room, master bath, rear bedroom, closet, and hallways, and all furnishings in certain areas were

damaged beyond repair. *Id.* at 2. Moreover, the resulting moisture required the installation of

dehumidifiers "in <u>all</u> rooms." *Id.* at 3, ¶ 14.3. (emphasis added). The "48 hours of

dehumidification" with "industrial strength dehumidifiers and multiple fans," however, did not

eliminate the "high moisture content" from the walls, ceilings, and floors." *Id.* at 3-4. The

extensive damage from the Flood rendered the Apartment substantially uninhabitable and

necessitated prompt remediation work.

On or about December 31, 2005, Defendants hired an adjuster, James E. Podesva,

from York Insurance Services ("Adjuster") to inspect the damages to the Apartment. *See*

Memorandum from James E. Podesva, York Insurance Services, Inc.: Specialized Adjusting

Division ("York Memorandum") (Jan. 2, 2005), at 4-7, annexed to Slotnick Decl. as Ex. "5."

Even that cursory inspection revealed,[1] *inter alia*, that sheetrock and insulation had been

damaged beyond repair, and the high-end, custom-made fabrics, ceiling, and carpeting required

replacement. In addition, several paintings and original works of art had been damaged. York

further acknowledged that the restoration needed was substantial and would include carpentry,

plumbing, electrical repairs, wall covering, and painting work. *Id.*

Similarly, a Loss Report by Tishman Construction documented the extensive

damage to the Apartment including, but not limited to, saturated carpet throughout the

Apartment, damage to artwork that were "quite wet with very visible damage to flower

painting," "[i]nsulation in ceiling was completely wet, and was removed and disposed of," wet

---

[1] The Plaintiffs intend to prove at trial that the inspection by the adjuster was wholly inadequate and disregarded major sources of damage in the Apartment.

and warping millwork trim, and damage to drapes and fabric panels. *See* Tishman Loss Report, Jan. 4, 2005, annexed to Slotnick Decl. as Ex. "3."

## B.     DEMOLITION TO THE APARTMENT

Although demolition of the Apartment commenced immediately after the initial damage, the renovation and repair of the Apartment did not begin in earnest until 2006, more than a year after the initial loss.[2] Plaintiffs duly notified Defendants and York of their intent to commence restoration of the Apartment to a habitable condition.  York confirmed that Defendants authorized that commencement.  *See*, *e.g.*, E-mail from James Podesva, Executive General Adjuster, York Insurance Services, Inc.: Specialized Adjusting Division, to Linda Young, Insurance Manager, Wynn Resorts (Jan. 20, 2005, 10:30 a.m.), bearing Bates Stamp No. LEX 000044, annexed to Slotnick Decl. as Ex. "6" (wherein Defendants' insurance adjuster agreed with the scope of work for the Apartment and authorized work to begin).  In addition, the Adjuster acknowledged that he would monitor the progress of the restoration and advise Plaintiffs' representatives if any work involved was, in his view, outside the coverage of the Policies. *See*, E-mail from Podesva to Young (Jan. 21, 2005, 12:44 p.m.), bearing Bates Stamp No. LEX 000064, annexed to Slotnick Decl. as Ex. "6."

Construction, renovation, and remediation to the Apartment followed Defendants' authorization.  The Wynn Plaintiffs fully restored the Apartment to its pre-Flood elegance, an undertaking that necessarily involved the removal and disposal of all damaged or destroyed

---

[2] Defendants reference to a June 7, 2005 e-mail from Plaintiffs' employee, who erroneously stated that the insurance claim was concluded, (Marino Decl., ¶ 10) was meant to mislead this Court.  In fact, as Defendants know, at the time of that e-mail, the re-construction and renovation of the Apartment had not yet begun and a majority of expense related to the loss had not yet been incurred.  This point was discussed with this Court and Defendants' counsel at a Court conference.  To now attempt to mislead this Court with irrefutably false information smacks of bad faith.

personal property, custom millwork, and infrastructure, the hiring of architects and an interior

designer. Due to the extensive structural damage, restoration necessitated removal and

replacement of ceilings, floors, and electrical and mechanical devices. In addition to widespread

structural damage, Plaintiffs' imported, high-end furnishings and adornments such as custom-

made wall coverings, carpet, and other décor throughout the Apartment also were either directly

damaged by the Flood or subsequently by the resulting high levels of humidity, mildew, odor,

dust or other contaminants. *See*, *e.g.*, Loss Report, annexed to Slotnick Decl. as Ex. "3"

(discussing high levels of moisture and humidity); Letter from Laurence B. Malloy, LLC to

Stuart Slotnick, Dec. 3, 2005, annexed to Slotnick Decl. as Ex. "7" (regarding air quality

inspection). These items were also removed from the Apartment, discarded, and replaced.

       Throughout the repair work, Plaintiffs continually communicated with Defendants

and their representatives regarding the damage to the Apartment, the expenses of repair, and the

status of the restoration. *See*, *e.g.*, E-mail from Podesva to Young (Jan. 20, 2005, 10:30 a.m.),

bearing Bates Stamp No. LEX 000044, annexed to Slotnick Decl. as Ex. "6." Defendants'

assertion that there was "more than nine months of silence regarding the water damage claim"

before a March 17, 2006 communication from Plaintiffs that they would submit a supplemental

claim, (Defs.' Mem. at 4), is simply false. To the contrary, there was continuous correspondence

among the parties, including, for example, communications regarding the condition of the

Apartment related to the Flood. *See*, *e.g.*, E-mail from Young to Podesva (Dec. 14, 2005),

bearing Bates Stamp Nos. LEX 000209-LEX 000210, annexed to Slotnick Decl. as Ex. "6"

(regarding re-inspections in the Apartment); E-mail from Young to Podesva (Dec. 14, 2005),

bearing Bates Stamp Nos. LEX 000211-LEX 000212, annexed to Slotnick Decl. as Ex. "6"

(forwarding Plaintiffs' report to Defendants' representatives, which revealed the presence of

toxic mold in the Apartment); Letter from Laurence B. Malloy, LLC to Stuart Slotnick, Dec. 3, 2005 (reporting on toxins in the Apartment following the Flood), annexed to Slotnick Decl. as Ex. "7"; *see also* E-mail from Richard Peeke, of American Insurance Group ("AIG"), to Podesva (Aug. 16, 2005) bearing Bates Stamp Nos. LEX 000206-LEX 000207, annexed to Slotnick Decl. as Ex. "6" (discussing a recent inspection of the Apartment by Defendants' representatives, wherein members of Plaintiffs' law firm were present, and highlighting that "involved areas have not yet been repaired").

## C.    THE UNTIMELY DEMAND FOR AN APPRAISAL

Notwithstanding their knowledge of the complete demolition and restoration of the Apartment (and after commencement of this lawsuit), not until approximately October 15, 2007 (two years after the initial Proof of Loss was submitted) did Defendants demand an appraisal for the first time. *See* Letter from Herrington to Slotnick of 10/15/07, annexed to Slotnick Decl. as Ex. "8." The Policies provide for an appraisal, but make clear that the process is not binding on Defendants. Specifically:

> If we and you disagree on the value of the property or the amount of loss, either may make written demand for an appraisal of the loss. In this event, each party will select a competent and impartial appraiser. The two appraisers will select an umpire. If they cannot agree, either may request that selection be made by a judge of a court having jurisdiction. The appraisers will state separately the value of the property and amount of loss. If they fail to agree, they will submit their differences to the umpire. A decision agreed to by any two will be binding. Each party will:
>
> (a)    Pay its chosen appraiser; and
>
> (b)    Bear the other expenses of the appraisal and umpire equally.
>
> If there is an appraisal, we will still retain our right to deny the claim.

Policies, § E.2, annexed to Slotnick Decl. as Exs. "1" and "2" (emphasis added). The

emphasized text makes clear that Defendants may reject in whole or in part the conclusions of

even the umpire by their reservation of the right to deny coverage.

> The time-frame for an appraisal demand is set forth in the Policies:

>> If the Insured and the Company fail to agree as to the amount of loss, each shall, on the written demand of either, made within sixty (60) days after receipt of proof of loss by the Company, select a competent and disinterested appraiser, and the appraisal shall be made at a reasonable time and place. The appraisers shall first select a competent and disinterested umpire, and failing for fifteen (15) days to agree upon such umpire, then, on the request of the Insured or the Company, such umpire shall be selected by a judge of a court of record in the State in which such appraisal is pending....

> *Id.*, ¶ 19 ("Form 3715," page 3 of 5) (emphasis added). On or about June 7, 2005,

Plaintiffs submitted Proof of Loss Statements to Defendants Lexington and Allied. *See* Proof of

Loss Statements of 6/7/05 and 10/3/07, annexed to Slotnick Decl. as Ex. "9." Plaintiff provided

a second Proof of Loss Statement on October 3, 2007, which reflected only further payments due

to Plaintiffs under the Policies.

> Defendants' October 15, 2007 letter demand for an appraisal was submitted more

than two years after the submission of the first Proof of Loss Statement, and more than two and a

half years after the Flood. This demand came long after the disposal of the property destroyed

or damaged by the Flood, and after the Apartment had undergone substantial reconstruction, all

with the Defendants' prior authorization. *See* Compl., Aug. 6, 2007; *see also* Tishman Loss

Report, Jan. 4, 2005, annexed to Slotnick Decl. as Ex. "3"; Tishman Construction "Loss Report

Follow-Up #3," Feb. 4, 2005, annexed to Slotnick Decl. as Ex. "4"; General e-mail

correspondence between the parties and their representatives, annexed to Slotnick Decl. as Ex.

"6."

At this time, there remain significant disputes among the parties regarding coverage and liability. Notably, Defendants continue to deny that Defendants are obligated to cover a substantial amount of loss and renovations that were performed as a direct result of the Flood. *See, e.g.*, Defs.' Answer, at 10-11, Jan. 30, 2008, annexed to Slotnick Decl. as Ex. "10." It is plain that Defendants have demanded an appraisal and stay of this action to avoid prompt judicial resolution of these disputes.

## ARGUMENT

### POINT I

### DEFENDANTS' MOTION IS UNTIMELY AND IN BAD FAITH.

**A.    A MEANINGFUL APPRAISAL IS NO LONGER POSSIBLE.**

A meaningful appraisal of the damage to the Apartment and its contents is impossible and entirely impractical at this juncture due to the removal of all indicia of damage and destruction from the Apartment and disposal thereof. The disposal of the damaged property has consistently led courts to deny motions to compel an appraisal. *See Indian Chef v. Fire and Cas. Ins. Co. of Conn.*, 02 Civ. 3401 (DLC), 2003 WL 329054, at *2 (S.D.N.Y. Feb. 13, 2003) (this Court denied defendants' motion to compel an appraisal finding that an appraisal was impractical because plaintiff had completely repaired its restaurant ); *see also Chainless Cycle Mfg. Co. v. Sec. Ins. Co. of Conn.*, 169 N.Y. 304, 310-312 (Ct. of App. Dec. 31, 1901) (finding that defendant insurer's demand for an appraisal was untimely where plaintiff had already sold a substantial part of its damaged property). Defendants had full knowledge of the demolition, renovation and restoration of the Apartment and the disposal of the damaged items, rendering their instant request as evidence of their bad faith. Defendants' motion must, therefore, be denied.

1.    **DEFENDANTS WERE FULLY AWARE OF THE RESTORATION AND DISPOSAL OF DAMAGED PROPERTY.**

The Apartment and its contents, due to the substantial repair and remediation, no longer bear any indicia of damage from the Flood. All damaged property has long since been discarded, and all damaged or destroyed portions of the Apartment have been repaired. *See, e.g.*, Tishman Construction "Loss Report Follow-Up #3," Feb. 4, 2005, annexed to Slotnick Decl. as Ex. "4" (regarding status of demolition). In other words, the Apartment has been restored to its pre-Flood splendor, eliminating any traces of the ruination and destruction.

Defendants were fully aware of the extensive restoration to the Apartment, which long predated their demand for an appraisal. Correspondence between the parties makes clear that Defendants authorized the commencement of the repairs on the premises. *See, e.g.*, E-mail from Podesva to Young (Jan. 20, 2005, 10:30 a.m.), bearing Bates Stamp No. LEX 000044, annexed to Slotnick Decl. as Ex. "6."

2.    **DEFENDANTS' KNOWLEDGE PREVENTS THE GRANTING OF THEIR MOTION.**

Defendants' knowledge of the complete restoration of the Apartment makes evident that their demand for an appraisal is in bad faith. *See Peck v. Planet Ins. Co.*, 93 Civ. 4961 (MBM), 1994 WL 381544, at **2-3 (S.D.N.Y. July 21, 1994) (impossibility or impracticality of an appraisal may be considered in determining the reasonableness/timeliness of an appraisal request). An insurer must provide reasonable notice of an intent for appraisal *before* the ability to do so becomes impossible through disposal of damaged property. *See id.* (citing *Chainless Cycle*, 169 N.Y. at 310 (finding that an insurance company's appraisal demand was void and untimely because it was made after plaintiff had already sold a substantial part of its damaged property in reliance on an adjustment made by the insurance company's agent)).

Indeed, "[t]he insurer,[], knowing that the insured desires a prompt appraisal or an adjustment, so that the property may not suffer further injury before it is sold, cannot postpone its demand for an appraisal until after the insured, misled by its acts, has been placed in a position where one is impossible." *Chainless Cycle*, 169 N.Y. at 310. Here, all destroyed or damaged infrastructure, furnishings, décor, and other items have long been discarded, with Defendants' knowledge, and are no longer available for any kind of inspection, making any attempt to appraise them futile. The futility of such an exercise is apparent from Defendants' inability to explain how an appraisal could occur at this juncture. Defendants' motion to compel an appraisal and stay discovery must, therefore, be denied. *See Bard's Apparel Mfg., Inc. v. Bituminous Fire and Marine Ins. Co.*, 849 F.2d 245, 249 (6th Cir. 1988) (finding that defendant waived its right to an appraisal and waited an unreasonable length of time to the prejudice of plaintiff by not demanding an appraisal until after they received notice of a lawsuit and after insured property had been disposed).

## B. DEFENDANTS NONETHELESS DELAYED IN THEIR DEMAND FOR AN APPRAISAL.

Despite Defendants' knowledge of demolition in and restoration to the Apartment, they did not demand an appraisal until October 15, 2007 – more than 2 ½ years after the Flood. *See* Letter from Herrington to Slotnick, 10/15/07, annexed to Slotnick Decl. as Ex. "8"; Defs.' Mem. at 5 (noting Defendants' appraisal demand). This demand did not come until *after* the damaged property had been discarded and the Apartment had been fully restored. Such unreasonable delay should be deemed as a waiver of any rights Defendants may have to demand an appraisal. More significant, the demand is untimely under Defendants' own Policies. The Policies provide:

> If the Insured and the Company fail to agree as to the amount of loss, each shall, on the written demand of either, made <u>within sixty (60) days after receipt of proof of loss</u> by the Company, select a competent and disinterested appraiser, and the appraisal shall be made at a reasonable time and place…

Lexington and Allied Policies, ¶ 19 ("Form 3715," page 3 of 5) (emphasis added), annexed to Slotnick Decl. as Exs. "1" and "2." Proof of Loss Statements were submitted to Defendants on two occasions. Plaintiff first submitted a Proof of Loss statement to Defendants on or about June 7, 2005 and the second on or about October 3, 2007. *See* Proof of Loss Statements, 6/7/05, 10/3/07, annexed to Slotnick Decl. as Ex. "9." Under the language of the Policies, the last day to demand an appraisal was August 6, 2005, sixty days after Plaintiff first filed its proof of loss. In these circumstances, Defendants' failure to timely demand an appraisal should therefore be deemed as a waiver, and their motion to compel an appraisal and stay discovery should be denied.

## C.  DEFENDANTS' DELAYED REQUEST FOR AN APPRAISAL IS EVIDENCE OF THEIR BAD FAITH CONDUCT.

In light of the fact that Defendants know an appraisal to be impossible at this time, their motion to compel can only be driven by bad faith. As detailed below, there are significant disputes between the parties concerning the scope of liability and the extent of coverage. Defendants' bad faith in their delayed demand to compel an appraisal is further evidenced by the fact that any appraisal process would not be binding on the coverage issues. As stated in the Policies:

> If we and you disagree on the value of the property or the amount of loss, either may make written demand for an appraisal of the loss. …
>
> If there is an appraisal, <u>we will still retain our right to deny the claim</u>.

Lexington and Allied Policies, § E.2, annexed to Slotnick Decl. as Exs. "1" and "2" (emphasis added).  *See* Defs.' Mem., at 3.

Defendants are, in other words, seeking to force Plaintiffs into an appraisal process, the expenses of which Plaintiffs are required to bear under the Policies, and yet retain the power to deny or limit Plaintiffs' claims in the event that an appraiser's findings are not favorable to Defendants.[3]  Their attempt to compel a non-binding appraisal, where one is not even possible, could only arise out of a bad faith attempt to delay judicial resolution of Plaintiffs' claims and prevent Plaintiffs from recovering under their Policies.  *See infra* Point III (discussing that the Court should deny Defendants' request to stay this action for a non-binding appraisal).[4] The useless and non-binding nature of the appraisal utterly prevent the process from advancing *any* policy interest, flatly refuting Defendants' arguments in support of their Motion.

---

[3] For that reason, as detailed in Point III below, this appraisal will not necessarily, as argued by the Defendants, end the litigation.

[4] Defendants' bad faith conduct in this motion constitutes nothing more than their continuing attempts to reduce their obligations to Plaintiffs.  For example, Defendants compelled Plaintiffs to execute Proof of Loss statements, which limited Plaintiffs' recovery despite Defendants' knowledge that Plaintiffs' claim had only been partially adjusted at the time.   This is evidenced by Defendants' severely deficient claims payment to date of approximately $800,000 despite Plaintiffs' documented evidence of over $3 million in damages and loss.  *See* Proof of Loss Statements, dated June 7, 2005 and Oct. 3, 2007, annexed to Slotnick Decl. as Ex. "9," (indicating Defendants' first claims payment to Plaintiffs of approximately $200,000, followed by a second payment more than two years later of approximately $600,000 only to cover the cost of carpet and wall coverings, only after the instant lawsuit was initiated).

### POINT II

**ASSUMING *ARGUENDO* THAT AN APPRAISAL WAS PRACTICAL, DEFENDANTS' REQUEST FOR AN APPRAISAL AT THIS JUNCTURE IS PREMATURE AS MATERIAL DISPUTES REGARDING COVERAGE AND LIABILITY MUST FIRST BE RESOLVED.**

**A.    APPRAISALS DO NOT RESOLVE LEGAL QUESTIONS OF CAUSATION, COVERAGE, OR LIABILITY.**

It is well-settled that appraisals are inappropriate where, as here, disputes concerning liability and coverage remain unresolved. *See Zar Realty Mgt. Corp. v. Allianz Ins. Co.*, 02 Civ. 6741 (HB), 2003 WL 1744288, at *4 (S.D.N.Y. March 31, 2003) (denying in part defendant's motion to compel an appraisal with respect to matters concerning scope of policy coverage, and stating, "[d]isputes that concern coverage denial should not be referred for appraisal.") (internal citations omitted); *GBC & A. Richardson v. Merrimack Mut. Fire Ins. Co.*, 98 Civ. 5967 (JFK), 2000 WL 297171, at *5 (S.D.N.Y. March 21, 2000) (stating, "[t]he appraisal clause *only* applies to a case where the disagreement is to the amount of loss or damage and *not* where a company denies liability.") (emphasis added); *see also Kawa v. Nationwide Mut. Fire Ins. Co.*, 174 Misc.2d 407, 408 (Sup. Ct. Erie County 1997).

Defendants highlight in their moving memorandum this Court's decision in *Zar Realty*, the analysis of which if extended further than Defendants' cursory evaluation, squarely supports that an appraisal is not appropriate in the instant case. In *Zar Realty*, this Court found that "[t]he essential dispute" in regard to the matters at issue in that case "concern[ed] the scope of defendant's policy coverage and not the computation of the amount of loss." *Zar Realty Mgt. Corp.*, 2003 WL 1744288, at *4. This Court concluded that "an appraisal will not be appropriate to resolve the dispute in regards to those matters." *Id.* The instant action mirrors the scenario in

*Zar Realty* in that there remain material disputes of policy coverage, and not just computation of amount of loss as Defendants suggest, which render an appraisal wholly inappropriate at this time.

The Second Circuit embraced this principle in *Duane Reade v. St. Paul Fire & Marine Ins. Co.*, 411 F.3d 384, 389 (2d Cir. June 22, 2005), where it held that "no appraisal can occur until the legal parameters for valuating [] losses have been set." *Id.* The Second Circuit so held due to the well-established principle "that the scope of coverage provided by an insurance policy is a purely legal issue that cannot be determined by an appraisal, which is limited to factual disputes over the amount of loss for which an insurer is liable." *Id.* (citations omitted); *see Salinas v. State Farm Lloyds*, Slip Copy, 2008 WL 552498, at *4 (5th Cir. Feb. 28, 2008) (court upheld denial of an appraisal and affirmed that "the appraisal panel was limited to determining the *amount of loss*, not questions concerning cause and/or liability") (internal citations omitted).

Likewise, the Fifth Circuit is consistent with the view that legal questions regarding causation, coverage, and liability are separate legal issues that must not be addressed by appraisers. *See Salinas v. State Farm Lloyds*, Slip Copy, 2008 WL 552498, at *4 (5th Cir. Feb. 28, 2008) (court upheld denial of an appraisal and affirmed that "the appraisal panel was limited to determining the *amount of loss*, not questions concerning cause and/or liability") (internal citations omitted). In *Salinas*, the Fifth Circuit found that an insurer was not entitled to an appraisal "given that coverage and causation issues still existed." *Id.* ("'[A]ppraisers exceed their authority when they engage in making the legal determination of what is or is not a covered loss based on their determination of what caused the loss or a portion of it.'") (internal citations omitted).

15

Defendants mislead this Court by suggesting that the "amount of loss" relates to a determination of **what** was damaged when in fact the "amount of loss" refers only to the monetary **valuation** of the damaged property.[5] By way of example, assume that an insured has loss coverage for all rooms in her house and the contents therein. If the contents of Jane Doe's kitchen and children's playroom were damaged by a flood, an appraisal would be appropriate only if the insurer and Jane Doe agreed that the contents of both rooms were in fact damaged by the flood, but where the insurer found that Jane Doe overstated the value of those contents. However, if the insurance company determines that only the contents of the kitchen were affected by the flood and not the contents of the children's playroom, then an appraisal, as in this case, would be inappropriate because the issue as to coverage and liability of the contents of the children's playroom has not been resolved.

Defendants' own citation to *Johnson v. State Farm Lloyds*, 204 S.W.3d 897 (Tex. App. 2006) (Defs.' Mem. at 7) contradicts their implication that appraisals can determine causation issues. *See Johnson*, 204 S.W.3d at 902 (emphasizing that "appraisers do not have the power to decide the cause of loss but only the value of the loss"). In *Johnson*, a Texas court granted an appraisal request finding that if the parties had to agree on whether "specific shingles" of a roof were damaged, a request for an appraisal could be easily defeated. *Id.* at 903. In that extreme scenario, unlike the instant case, the parties at least agreed on the actual piece of property (i.e. a roof) that was damaged by a hail storm and covered under a policy. Here, Defendants' disagreement with Plaintiffs is not based solely on individual shingles of a roof, a

---

[5] As stated by an Alabama Supreme Court, "[A]n appraiser's duty is limited to determining the 'amount of loss' – the <u>monetary value</u> of the property damage – and that appraisers are not vested with the authority to decide questions of coverage and liability."). *Rogers v. State Farm Fire and Casualty Company*, 2007 WL 2966694 (Ala. 2007).

leg of a chair, or a panel of fabric. The parties disagree on much more substantial pieces of property and whole rooms of Plaintiffs' Apartment which Defendants contend were not damaged by the Flood, and accordingly not covered by the Policies.[6]

Defendants' distorted interpretation of this language improperly suggests that an appraisal is appropriate to determine coverage and liability issues, which is exactly the issue in this case.[7] Accordingly, where disputes of causation, coverage, or liability exist as in the instant case, Defendants' motion to compel an appraisal and stay discovery must be denied.

## B.     THIS CASE, AT ITS CORE, IS A DISPUTE REGARDING DEFENDANTS' LIABILITY AND THE SCOPE OF COVERAGE UNDER PLAINTIFFS' INSURANCE POLICIES.

Defendants wholly misrepresent that there are no disputes regarding coverage and liability (Defs.' Mem. at Point I) when in fact those disputes are the crux of the action. Indeed, such disputes led to Plaintiffs' filing of this lawsuit. Defendants' Answer, as well as their

---

[6] Defendants use of a non-binding Florida State case, *Johnson v. Nationwide Mut. Ins. Co.*, 828 So. 2d 1021 (Fla. 2002), is misplaced as the holding addressed a non-analogous situation where the appraiser was tasked with determining whether the loss was "caused by a sinkhole, a covered peril" or whether the loss "was caused by earth movement, an excluded cause." *Id.* at 1023. The court concluded that this was not a matter for appraisers to decide. Similarly, the instant case involves disputes regarding causation and coverage that are not appropriate for appraisal -- thus the determination as to whether or not property damage was caused by alternative causes or not damaged at all by the covered peril is not a question for an appraisal. An appraisal at this time is not appropriate to attempt assessment of the monetary value of damages and the "amount to be paid" when the parties here have significant disputes whether portions of Plaintiffs' Apartment were damaged by the Flood and whether Plaintiffs' renovations are covered by the Policies.

[7] Defendants' citation to *Louise Paris Ltd. v. Those Certain Underwriters at Lloyds*, 192 A.D.2d356 (1st Dep't 1993) in their moving memorandum (Defs.' Mem. at 6) is another clear example of Defendants' misrepresentation of case law as applies to the case at hand. While Defendants' cite *Louise Paris Ltd.* as an example where an insurer was "compelled…to submit to an appraisal" (Defs. Mem. at 6), in truth, the case involved a demand for an *arbitration*, which involves an entirely different analysis than appraisals. In *Louise Paris*, overly broad language was used to evaluate "amount of loss" in the arbitration context. There, the court found that "if any dispute shall arise, relating to the amount of any loss … including no loss at all" than an arbitration (not an appraisal) would be appropriate. *Id.* at 357 (emphasis added). Such overly broad language employed in the arbitration context is inapposite to the instant case.

17

moving memorandum and prior representations to the Court and to Plaintiffs, make crystal clear that such disputes exist, wholly contradicting their self-serving assertion in their moving papers that none do.

In their Answer to the Complaint, Defendants "aver that a *large* portion of the 'actual cost' claimed by Plaintiffs derive from a complete remodel of the insured property, not resulting from the water damage." Defs.' Answer, ¶ 2, Jan. 30, 2008 (emphasis added).[8] Defendants plainly concede through their statements that there is a material dispute regarding to what extent the contents of the Apartment will be covered under provisions including the Replacement Cost Coverage Endorsement provision of Plaintiffs' Policies. *See* Lexington and Allied Insurance Policies, Endorsement #13, annexed to Slotnick Decl. as Exs. "1" and "2."

Defendants' Answer is rife with further references to disputes of causation, coverage, and liability:

> **Fifth Additional Defense:** The claims are barred to the extent that Plaintiffs failed to disclose, concealed, or misrepresented material facts at the time *coverage* under the policies was negotiated, placed, purchased, renewed, or when premiums were adjusted. Such facts included, but are not limited to, facts relating to the property to be insured and its value and the condition of the property.

> **Seventh Additional Defense:** To the extent that Plaintiffs seek *coverage* for loss or damage caused by, arising out of, or resulting from fungus, molds, mildew or yeast; or any spores or toxins created or produced by or emanating from such fungi, molds, mildew or yeast, the *Insurers have no duty to provide such coverage* pursuant to Endorsement #007 of the Policies.

> **Twelfth Additional Defense:** Some of the amounts claimed by the Plaintiffs were for new remodeling of the Apartment wholly unrelated to the damage allegedly caused by water.

---

[8] Defendants have not yet filed an Answer to Plaintiffs' First Amended Complaint, dated April 21, 2008 and are now in default.

Defs.' Answer, at 10-11, Jan. 30, 2008, annexed to Slotnick Decl. as Ex. "10" (emphasis added). Defendants' Twelfth Additional Defense highlights an essential factual and legal dispute concerning coverage. Defendants argue that Plaintiffs' Policies do not cover all of the reconstruction and repair performed to Plaintiffs' Apartment. Plaintiffs maintain that the amounts claimed under their Policies were for expenses to demolition, reconstruction, renovation, and remediation related to the Flood and are therefore covered by their Policies. It is important to note that Defendants have misrepresented to the Court the items for which Plaintiffs are seeking payment. *See, e.g.*, Defs.' Mem. at 4 (wherein Defendants state that Plaintiffs are seeking "payment for many items – such as new windows"). Plaintiffs' counsel has clearly and repeatedly communicated to Defendants the items for which they are seeking reimbursement, and have specifically informed Defendants on numerous occasions that they are not seeking reimbursement for new windows in addition to other items that were not damaged by the Flood. *See* Slotnick Decl. ¶ 12. Again, this is yet another example of Defendants' bad faith misrepresentations.

Moreover, Defendants concede in their memorandum that there is a material dispute regarding coverage and liability. Specifically, their memorandum asserts that "the additional costs claimed by the Plaintiffs related to items that were not damaged and therefore did not require repair or replacement." Defs.' Mem., at 6. In the utmost of bad faith, Defendants assert that they seek to have the appraiser resolve these legal disputes concerning the extent of Defendants' liability. Defs.' Mem. at 5 ("[t]here is no basis for further payments on this claim, a fact the Defendants seek to have established conclusively through the appraisal process agreed to in the contract between the Parties" ). The fact that Defendants find no *legal* basis to make

payments on Plaintiffs' claim is the essence of the coverage dispute that must be resolved before any appraisal can be performed.

The fundamental disputes regarding causation, coverage, and liability set forth in Defendants' Answer and Memorandum must be resolved before an appraisal is proper. *See Kawa v. Nationwide Mut. Fire Ins. Co.*, 174 Misc.2d 407, 408 (Sup. Ct. Erie County 1997). "'It is essential that the legal contentions of the parties be resolved in order to make correct computations in a determination of the actual loss sustained.'" *Id.* at 409 (internal citation omitted).

## C.    THE CASES DEFENDANTS CITE ARE INAPPOSITE.

Defendants' citation to *SR Int'l Business Ins. Co. Ltd. v. World Trade Center Properties, LLC*, 445 F. Supp. 2d 320 (S.D.N.Y. 2006) for the proposition that courts customarily stay an action pending the outcome of an appraisal, is distinguishable from the instant case. In *SR Int'l* appraisal proceedings were already underway at the time the legal disputes arose. The Court recognized that resolution of the legal disputes was mandated "in the interests of efficiency" because of the implications that the rulings would have on the appraisal process. *Id.* at 330. Plaintiffs' opposition to Defendants' motion is perfectly consistent with that holding: the legal issues must be resolved before an appraisal can occur.  Moreover, there is no indication in *SR Int'l* that the Court ordered a stay of discovery while the appraisal proceedings took place.

Defendants' citation to *Ori v. Amer. Family Mut. Ins. Co*, 2005 WL 3079044 (D.Ariz. 2005) for support that stays are granted pending appraisals, is also distinguishable. In *Ori*, an Arizona District Court issued a stay as to claims that were "subject to" an appraisal. *Id.* at *4. The court reasoned that "[i]f Ori prevails at the appraisal for the full amount of damages,

that result would support his claim that American Family acted in bad faith in denying his request for appraisal." *Id.* Conversely, here, an appropriate appraisal requires resolution of the disputes over the extent of coverage and liability to set the parameters thereof. Moreover, any appraisal and corresponding stay of the action will unnecessarily delay judicial resolution of those very disputes, which appraisal, because it is not binding, may not even be a productive endeavor. *See* Lexington and Allied Policies, § E.2, annexed to Slotnick Decl. as Exs. "1" and "2" (outlining the procedure for an appraisal including the parties' selection of appraisers, appraisers' selection of an umpire, use of courts to resolve selection disputes, comparison of appraisal findings, etc.).

### POINT III

**IN THE EVENT THE COURT GRANTS DEFENDANTS' MOTION TO COMPEL AN APPRAISAL, DEFENDANTS' REQUEST TO STAY THE ACTION SHOULD BE DENIED BECAUSE THE APPRAISAL DOES NOT RESOLVE CLAIMS RELATING TO DEFENDANTS' BAD FAITH.**

To the extent the Court grants Defendants' motion for an appraisal, which Plaintiffs submit it should not for reasons set forth above, there is simply no principled basis for staying this proceeding. As set forth above, the Policies give Defendants the unilateral right to reject coverage in whole or in part, notwithstanding the results of the appraisal process. That right can wholly prevent the appraisal from having any productive purpose whatsoever, let alone one that assists in the resolution of this litigation. In these circumstances, there is no reason to inflict the prejudice of delay on the Plaintiffs for a process that may prove to be wholly unproductive. For that reason, to the extent that the Court grants the motion to compel the appraisal, it should deny the motion for a stay of the proceedings.

This is particularly true because, assuming that it is possible at this time, which it is not, the appraisal cannot resolve all issues raised in this litigation. Plaintiffs' claims include several claims that bear no relation to any valuation, including fraud, violations of the Nevada Declaratory Judgments Act and Unfair Insurance Practices Act, violations of the General Business Law § 349, as well as a claim for punitive damages. While Defendants argue that an appraisal prevents litigation, in the best possible circumstance, that prevention would only extend due litigation over damages. The issues concerning liability, as well as for fraud and bad faith, would not be affected by the results of any appraisal, assuming that one were practical at this time. *See supra* Point II.A (discussing that an appraisal does not resolve causation, coverage, and liability issues). Defendants' motion to stay this action, to the extent the motion for an appraisal is granted, must be denied because an appraisal would have absolutely no impact on the substantive liability claims in this action.

## CONCLUSION

For the foregoing reasons set forth herein, Plaintiffs respectfully request that Defendants' Motion to Compel an Appraisal and to Stay the Pending Action be denied in its entirety with prejudice, together with such and other further relief as this Court may deem just and proper.

Dated: May 23, 2008
New York, New York

BUCHANAN INGERSOLL & ROONEY PC

By: _____

Barry I. Slotnick, Esq.
Stuart P. Slotnick, Esq.
620 Eighth Avenue, 23rd Floor
New York, NY 10018
(212) 440-4400

*Attorney for Plaintiffs*
*Wynn Resorts Limited, Wynn Resorts L.L.C*
*Steve Wynn, Elaine Wynn*