UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

------------------------------------------------------X

STEVEN WYNN, ELAINE WYNN,
WYNN RESORTS LIMITED AND
WYNN RESORTS L.L.C.,

                      Plaintiffs,

              vs.

LEXINGTON INSURANCE COMPANY, and
ALLIED WORLD ASSURANCE COMPANY (US)
INC.,

                      Defendants.

------------------------------------------------------X

07 CV 7604 (NRB) (MHD)

(ORAL ARGUMENT REQUESTED)

**REPLY MEMORANDUM OF LAW IN FURTHER SUPPORT OF DEFENDANTS'
MOTION TO COMPEL APPRAISAL AND TO STAY PENDING ACTION**

                                                 **STEPTOE & JOHNSON LLP**
                                                 750 Seventh Avenue
                                                 New York, N.Y. 10019
                                                 (212) 506-3900

                                                 *Attorneys for Defendants*
                                                   *Lexington Insurance Company and*
                                                   *Allied World Assurance Company*
                                                   *(US) Inc.*

In reading Plaintiffs' Opposition, one has to remind oneself that this is a piece of *civil* litigation.[1] Undersigned counsel is variously accused of bad faith, utmost bad faith and, on a score of occasions, misleading this Court. Not a single one of these overheated allegations bears scrutiny. The Opposition attempts to manufacture sizzle to obscure its utter lack of steak.

Plaintiffs face an uphill battle in asking this Court to override the public policy favoring alternative dispute resolution mechanisms such as appraisal, and to excuse Plaintiffs from their obligation to conform their conduct to the clear terms of the contract they invoke in this suit. Plaintiffs have not carried their burden and, just the same, fail to provide any explanation as to why all the parties – and this Court – would not be better served by an efficient streamlined process to resolve the thorny factual disputes implicated in this loss.

## ARGUMENT

### I.  DEFENDANTS SEEK A BINDING APPRAISAL

Perhaps half a dozen times, Plaintiffs complain about Defendants' request for a "non-binding" appraisal. There is nothing to this argument. The Defendants do not contest and never have contested that the leak at the Plaintiffs' apartment was a covered event. Defendants agree that the Plaintiffs sustained a covered loss and in fact have paid more than $800,000 on the loss. Plaintiffs claim this amount is inadequate. To resolve this dispute, Defendants seek an appraisal of the amount of the loss, and agree to be bound by the appraisal as provided in the Policies.

---

[1] All abbreviations and short citations to the record in Defendants' prior submission are incorporated by reference herein. Defendants Memorandum of Law in Support of Defendants' Motion to Compel Appraisal and to Stay Pending Action is referred to herein as Defendants' Memo or Defs.' Memo. References herein to Plaintiffs' Memo or Pls.' Memo are to Plaintiffs' "Amended" Opposition which was submitted on May 27, 2008. To their credit, Plaintiffs, after being notified by undersigned counsel, removed from their Opposition an argument that Defendants had breached a 60-day deadline for requesting appraisal. As is now conceded, that deadline appears in an inland marine transportation rider that is of no application to this case.

- 2 -

II. **APPRAISAL IS BOTH REASONABLE AND APPROPRIATE**

Under New York law three factors are relevant to the pending motion:

> (i) "whether the parties engaged in good-faith negotiations over valuation of the loss prior to the appraisal demand;"
>
> (ii) "whether an appraisal is desirable or necessary under the circumstances;" and
>
> (iii) "whether the appraisal sought is 'impractical or impossible'" and thus would prejudice one party or the other.

*See SR Int'l Bus. Ins. Co. v. World Trade Ctr. Props., LLC*, No. 01 Civ. 9291(MBM), 2004 WL 2979790, at *3 (S.D.N.Y. Dec. 1, 2004). Each of these factors weigh decidedly in favor of appraisal.

A. **Defendants Engaged in Ongoing Good-Faith Negotiations**

Appraisal is reasonable here because the parties engaged in good-faith back-and-forth regarding the loss prior to the appraisal demand. The adjustment process dragged on because the Plaintiffs were chronically both late and slow in furnishing information to the Defendants.

As of at least July 7, 2005, Defendants understood that the insurance claim was concluded based on the Plaintiffs' insurance manager's unequivocal statements.[2] *See* E-Mail from Young to Podesva (July 7, 2005, 12:52 PM); Marino Decl. ¶ 10, Ex. F. Plaintiffs then waited nearly nine months to even raise the issue of a supplemental claim.[3] *See* Marino Decl. ¶ 11, Ex. G. It took Plaintiffs an additional three months to furnish an undifferentiated and undocumented demand for more than $3 million. *See* Marino Decl. 14, Ex. J. Defendants'

---

[2] Regardless of whether, as Plaintiffs' counsel suggests, this was "erroneous," (Pls.' Memo at 5, n.2), it nonetheless led the Defendants to believe that the claim was fully adjusted, and that all other work being performed at the Plaintiffs' property had nothing to do with the water damage claim.

[3] Plaintiffs' repeated assertions that undersigned counsel has attempted to mislead this Court regarding continued communications between Plaintiffs' insurance manager and James Podesva during the nine month period are wide of the mark. The point is not that there was no communication – but that there was no communication on the claim. The correspondence during that period, to which Plaintiffs point, refers only to a quality control inspection or to an unrelated mold issue that is not the subject of the present dispute.

outside adjuster, James Podesva, diligently sought support for Plaintiffs' exorbitant supplemental claim, but Plaintiffs did not comply until April 26, 2007 – nearly a full year after they submitted their supplemental claim. *See* Marino Decl. ¶¶ 15-17, Exs. K-M. It was only at this point that negotiations could in fact begin.

To facilitate resolution of the claim, Defendants entered numerous tolling agreements after Plaintiffs' counsel submitted the supplemental claim, tolling the statute of limitations from November 15, 2006 through July 23, 2007.[4] Further, in an effort to resolve this dispute, numerous adjournments of the present action were sought and granted by this Court. When it became apparent that the Parties likely would not be able to resolve the matter, the Defendants, through undersigned counsel, promptly demanded an appraisal to resolve the dispute. *See* Marino Decl. ¶ 20, Ex. P.

Where, as here, Defendants continually worked with the insured, which itself contributed to delays in the process, it is reasonable for Defendants to demand appraisal after it became clear the Parties will not be able to resolve the matter. *See Peck v. Planet Ins. Co.*, No. 93 Civ. 4961(MBM), 1994 WL 381544, at *3 (S.D.N.Y. July 21, 1994) (holding that the insurer's appraisal demand thirteen months after a fire damaged the insured's property was "reasonable and valid" because "the parties were engaged in on-going discussions which made an appraisal at first unnecessary, and [the insured] contributed to the delays in adjusting her claim"); *see also Chainless Cycle Mfg. Co. v. Sec. Ins. Co.*, 169 N.Y. 304, 310, 62 N.E. 392, 394 (1901) (determination of reasonable period depends "upon the facts of the particular case").

---

[4] After Plaintiffs submitted the supplemental claim, the Parties entered into Standstill/Tolling Agreements on or about November 7, 2006, June 1, 2007 and June 19, 2007 forbearing and tolling the statute of limitations period on any causes of action the Parties may have had. The Standstill/Tolling Agreements effectively tolled the statute of limitations during the period beginning November 15, 2006 through July 23, 2007. An unsigned draft of a Fourth Standstill/Tolling Agreement remained outstanding at the time the Plaintiffs filed the action herein.

Plaintiffs' reliance on *Chainless Cycle* to support their contention that Defendants acted in bad faith is misplaced. In that case, the insurer rejected the insured's appraisal demand and the parties then reached settlement with the understanding that certain portions of the fire-damaged property would be sold the very next day. *Chainless Cycle*, 169 N.Y. at 312, 62 N.E. at 395. Six days later – the property having been sold – the insurer repudiated the settlement and demanded an appraisal. *Id.* Under those circumstances, "[t]he evidence warrant[ed] the inference that [the insurer] did not desire an appraisal, and had no intention of requiring one until it thought it could take advantage of the plaintiff." *Id.* This case is completely inapposite. To force the facts in this case into the *Chainless Cycle* holding, Plaintiffs' mischaracterize the emails from Defendants' outside adjuster, James Podesva. Contrary to Plaintiffs assertions otherwise, the Podesva emails evidence Defendants' good faith efforts to work with Plaintiffs, not that Defendants' surreptitious actions induced Plaintiffs to discard damaged items.[5]

Moreover, "under New York law, waiver of the right to an appraisal is not lightly inferred." *SR Int'l Bus. Ins. Co. v. World Trade Ctr. Props., LLC*, No. 01 Civ. 9291(JSM), 2003 WL 1344882, at *3 (S.D.N.Y. Mar. 18, 2003) (citing *Stony Brook Marine Transp. Corp. v. Wilton*, No.-94-Civ. 5880(JS), 1997 WL 538913, at *7 (E.D.N.Y. Apr. 21, 1997) and *S & E Motor Hire Corp. v. New York Indem. Co.*, 255 N.Y. 69, 72, 174 N.E. 65, (1930)). This reluctance to infer waiver goes hand in hand with the public policy of New York State favoring appraisal. Defs.' Mem. at 9-10. Plaintiffs do not cite, much less distinguish, these cases and the existence of the public policy consideration has thus been conceded.

---

[5] For example, in the key email on which Plaintiffs base their argument, Podesva indicates that "[t]he estimate appears high," but "the work can begin as long as we agree to work on the prices." *See* E-mail from Podesva to Young (Jan. 20, 2005, 10:30 AM) (Bates LEX 00044); Slotnick Decl., Ex. 6. Further, Podesva indicated the next day that he will "keep an eye" on the construction progress, "[b]ut [they were] actually working to have an agreed price before the reconstruction work begins." *See* E-mail from Podesva to Young (Jan. 21, 2005, 12:44 PM) (Bates LEX 00064); Slotnick Decl., Ex. 6.

### B.     Appraisal Is Desirable and Necessary as <u>Defendants Contest the Amount of Loss</u>

Appraisal is desirable and necessary because the Defendants have acknowledged coverage for the water damage at Plaintiffs' property and have paid the Plaintiffs more than $800,000 on their claim. Plaintiffs contend that this payment was inadequate – leaving only a dispute as to amount of damage. Defendants have in fact never contested that Plaintiffs' claim resulted from a covered event. Thus there is no dispute over causation or coverage.

Plaintiffs do not contest that appraisal is appropriate where the dispute "centers around the valuation of plaintiffs' losses and damages." *Zar Realty Mgmt. Corp. v. Allianz Ins. Co.*, No. 02 Civ. 6741 (HB), 2003 WL 1744288, at *5 n.2 (S.D.N.Y. Mar. 31, 2003). Where, as here, there is no support for an insured's assertion that coverage issues exist and the insurer "made a settlement offer . . . prior to [the insured] bringing suit, which [the insured] rejected as insufficient," appraisal of the amount of loss is appropriate. *See, e.g., Richardson v. Merrimack Mut. Fire Ins. Co.*, No. 98 Civ. 5967 (JFK), 2000 WL 297171, at *5 (S.D.N.Y. Mar. 21, 2000) (under similar circumstances requiring insured to submit a dispute to appraisal). Tellingly, Plaintiffs have failed to point to any statement or position taken by Defendants throughout the course of their dealings indicating that Defendants intend to deny coverage of Plaintiffs' water damage claim. The evidence presented in connection with this motion by both parties – including the evidence of Defendants' payment for water damaged items and the Parties' ongoing negotiations – directly contradicts and disproves Plaintiffs' position.[6] Defendants' only

---

[6] Plaintiffs cite to various coverage related defenses set forth in Defendants' Answer to support their contention that Defendants are contesting coverage. *See* Pls.' Mem. at 18-19. The argument lacks any merit. As this Court has recognized, where, as here, an insurer has not issued a formal denial of the insured's claim prior to litigation, "[the insurer] is permitted to plead multiple defenses [including those related to coverage], regardless of consistency, in its Answer." *Richardson*, 2000 WL 297171, at *5.

position has been and remains that certain items were not damaged at all – a dispute relating to the amount, or scope, of loss, not coverage.

In their Opposition, Plaintiffs cite to various cases for the unremarkable proposition that issues of causation are not appropriate for appraisal. *See* Pls.' Mem. at 15-16. Because the issue of whether damage to specific property was caused by a covered event is not in dispute, these cases are inapposite. For example, in *Salinas v. State Farm Lloyds*, No. 06-40121, 2008 WL 552498 (5th Cir. Feb. 28, 2008), the insurance company accepted certain claims but rejected others arguing that the damages arose from excluded causes. The Fifth Circuit affirmed the district court's refusal to compel appraisal because the insurer disputed coverage and causation. In *Rogers v. State Farm Fire & Cas. Co*, No. 1051458, 2007 WL 2966694, at *1 (Ala. Oct. 12, 2007), the insurer disputed that certain damaged items – the brick veneer and the foundation – were not covered because that damage resulted from house settlement (an uncovered loss), as opposed to the tornado (a covered loss). *Id.* The Alabama Supreme Court held that the dispute was one over coverage as opposed to "amount of loss." *Id.* at *9. Both *Salinas* and *Rogers* are inapt because here, in addition to challenging valuation, Defendants challenge that certain property was damaged at all, not that an uncovered event caused actual damage to property. Under New York Law, such a dispute falls within the purview of an amount of loss dispute subject to appraisal. *See Louise Paris, Ltd. v. Those Certain Underwriters at Lloyds*, 192 A.D.2d 356, 356, 595 N.Y.S.2d 776, 776 (1st Dep't 1993).[7]

---

[7] As Plaintiffs point out, *Louis Paris Ltd.* nominally dealt with an arbitration clause. 192 A.D.2d at 357, 595 N.Y.S.2d at 777. However, the clause contained identical restrictions to a standard appraisal clause. *See id.* (clause provided for "arbitration" only "if any dispute shall arise, relating to the amount or value of any loss or damage"). Indeed under New York law, while the scope of arbitrations and appraisals are markedly different, it is the plain meaning of the language in such clause that will dictate the scope and type of proceeding that the parties have negotiated. *See, e.g., Penn Cent. Corp. v. Consol. Rail Corp.*, 82 A.D.2d 208, 213, 441 N.Y.S.2d 266, 270 (1st Dep't 1981) (where "[t]he plain meaning of the agreement was to submit the entire controversy between the parties to impartial third parties for final resolution," held that the provision was an arbitration agreement despite being nominally referred to as an appraisal), *aff'd*, 56 N.Y.2d 120, 436 N.E.2d 512 (1982). Where, as here, the language

### C. Appraisal of the Amount of Loss at Issue Is Possible and Practical

Defendants' appraisal demand is also both possible and practical. Plaintiffs' suggestion otherwise ignores the process by which an insurance appraisal can resolve amount of loss disputes and avoid unnecessary and protracted litigation.

As is well known from the breadth of the appraisal processes seen in the *World Trade Center Properties* cases, while an appraisal process may not have the same rigid rules and process afforded in arbitration, it is by no means limited only to the visual inspection of damaged property. *See, e.g., SR Int'l Bus. Ins. Co. v. World Trade Ctr. Props. LLC*, Nos. 01 Civ. 9291 (JSM), 02 Civ. 0417(JSM), 2002 WL 1905968 (S.D.N.Y. Aug. 19, 2002) (enforcing appraisal of the amount of loss sustained during the World Trade Center attacks); *SR Int'l Bus. Ins. Co. v. World Trade Ctr. Props.*, 2004 WL 2979790, at *1 (recognizing an ongoing appraisal process wherein multiple insurers participated and others were permitted to be present during proceedings presided over by the appraisers). There would be no prejudice to the Plaintiffs from proceeding with an appraisal especially as expert appraisers are in a much better position to establish the value of the loss based on documentary evidence than would be a traditional factfinder. *Id.* at *3 (whether the appraisal is impractical or impossible determined by "whether granting an insurer's appraisal demand would result in prejudice to the insured party"). Moreover, as Plaintiffs point out, there are various voluminous reports detailing the condition of the property before, during and after the loss. Defendants also understand that numerous vendors provided products and services to the apartment including rehabilitation of purportedly damaged items. All such evidence could be presented to the appraisal panel for determination of the

---

of an agreement provides for "resolution of the specific issues of actual cash value and the amount of loss" as opposed to the entire controversy, such clause is an appraisal clause. *See id.*

amount of loss pursuant to an agreed upon protocol. Plaintiffs' counsel rejected Defendants' proposal outright without any definitive reason or any attempt to agree upon a protocol. Thus, Plaintiffs' assertion that destruction of the purportedly damaged property renders appraisal impossible evidences nothing more than their unwillingness to live up to the terms of the contract that they are suing under.[8] Any claim that appraisal of destroyed property is *ipso facto* impracticable is demonstrably false considering the World Trade Center appraisal process.

### III.   PLAINTIFFS' OTHER CLAIMS SHOULD BE STAYED

Neither Plaintiffs' baseless fraud and bad faith claims, nor Defendants' reservation of the right to deny Plaintiffs' claims post appraisal, should serve to perpetuate this litigation while the Parties complete an appropriate appraisal process.

*First*, Plaintiffs have failed to identify any sound basis why their fraud and bad-faith claims should continue as a bifurcated action while the appraisal process is proceeding. Their position is untenable because the outcome of the appraisal process would have a significant impact on Plaintiffs' bad-faith and fraud claims. *See, e.g., Ori v. Am. Family Mut. Ins. Co.*, No. CV-2005-697-PHX-ROS, 2005 WL 3079044, at *4 (C.D. Ariz. Nov. 15, 2005) (staying proceedings pending appraisal was warranted where "the claims subject to appraisal will have a large impact on the non-appraisal eligible claims" and "appraisal may result in a settlement of the non-appraisal eligible claims"). In other words, depending on the result of the appraisal, it could provide evidence refuting Plaintiffs' additional claims. Defendants therefore would be significantly prejudiced if they are forced to litigate Plaintiffs' bad-faith and fraud claims prior to appraisal.

---

[8] Accordingly, Plaintiffs' reliance on *Indian Chef, Inc. v. Fire & Cas. Ins. Co.*, No. 02 Civ. 3401(CDLC), 2003 WL 329054 (S.D.N.Y. Feb. 13. 2003) is misplaced. In that case, unlike the present action, the insurer demanded appraisal but failed to offer any "explanation of how an appraisal could be conducted" after the property had been renovated and business had resumed on such property. *Id.* at *2. However in this case, substantial evidence exists regarding the condition of the property.

*Second*, Plaintiffs' efforts to perpetuate this litigation based on its assertion that Defendants have reserved the right to deny their claim post appraisal fails to recognize that the results of the appraisal are binding pursuant to the provision's terms. *See* Am. Compl. ¶¶ 14-15, Exs. A & B. Thus, the only other remaining issues that would warrant Defendants' denial of Plaintiffs' claims would be based on coverage, which Defendants do not dispute.

## **CONCLUSION**

For the foregoing reasons, the Defendants respectfully request that this Court compel the Plaintiffs to participate in the appraisal that they agreed to in the insurance contract, and to stay proceedings in this case pending the outcome of the appraisal.

Respectfully submitted,

Dated: New York, New York  
      June 6, 2008

STEPTOE & JOHNSON LLP

By: /s Evan Glassman  
     Michael C. Miller  
     Evan Glassman  
     Christopher J. Marino  
     750 Seventh Avenue  
     New York, N.Y. 10019  
     (212) 506-3900

     Matthew J. Herrington  
      (admitted *pro hac vice*)  
     1330 Connecticut Avenue, N.W.  
     Washington, D.C. 20036  
     Telephone: (202) 429-3000  
     Facsimile: (202) 429-3902

     *Attorneys for Defendants*  
     *Lexington Insurance Company and*  
     *Allied World Assurance Company*  
     *(US) Inc.*

*Of Counsel*:  
Roger E. Warin, Esq.  
STEPTOE & JOHNSON LLP  
1330 Connecticut Avenue, N.W.  
Washington, D.C. 20036  
Telephone:  (202) 429-3000  
Facsimile:  (202) 429-3902

## CERTIFICATE OF SERVICE

I hereby certify that I caused to be served upon the parties listed below by electronic mail and Federal Express on June 6, 2008, a true and correct copy of the annexed **Reply Memorandum of Law in Further Support of Defendants' Motion to Compel Appraisal and to Stay Pending Action**.

/s Kimberlyn Brzozowski

Stuart P. Slotnick, Esq.
Buchanan Ingersoll &
 Rooney PC
New York Times Building
620 8th Avenue, 23rd Floor
New York, NY  10018

- 11 -