Exhibit 2

POLICY

ALLIED WORLD ASSURANCE COMPANY (US) N.C.
Administrative Office 100 Summer Street, Boston, Massachusetts 02110-2103
(Hereinafter called The Company)

COMMERCIAL PROPERTY POLICY
DECLARATIONS

POLICY NUMBER: A.11974019                                    RENEWAL OR NEW

ITEM 1    Named Insured: CAPITAL RESORTS LIMITED

          Address:        1701 HULA A DRIVE HO LULES PARK, HAWAII 97770

                          ZIP: 03410              ZIP: 49109

ITEM 2    Policy Period:
          FROM: 18.22.2008                        TO: 18.22.2008
          at 12:01 A.M. Standard Time at the address of the named insured shown above.

ITEM 3    Limit of Insurance
          $5,000,000 PART OF $65,110,757          *See attached sheet*
          SEE CONTRIBUTORY ENDT#001

          Total Premium    $118,993    *See attached*    Minimum Earned Premium    $29,748

ITEM 4    Peril:
          ALL RISK INCLUDING FLOOD (EXCLUDING SFHA) & EARTHQUAKE (EXCLUDING CA, HI, AK & PR)

ITEM 5    Description of Property Covered:                                    Coinsurance
          REAL & BUSINESS PERSONAL PROPERTY, BUSINESS INTERRUPTION, EXTRA EXPENSE    N/A
          (EXCLUDING ORDINARY PAYROLL), NEWLY ACQUIRED REAL & BUSINESS PERSONAL
          PROPERTY, UNNAMED REAL & BUSINESS PERSONAL PROPERTY, LEASE HOLD INTEREST,
          SINKHOLE COLLAPSE, CIVIL AUTHORITY, INGRESS & EGRESS, DECONTAMINATION EXPENSE,
          ERRORS & OMISSIONS, ACCOUNTS RECEIVABLE, VALUABLE PAPERS, ELECTRONIC DATA
          PROCESSING EQUIPMENT & MEDIA, DEBRIS REMOVAL, DEMOLITION & INCREASED COST OF
          CONSTRUCTION (DICC), ORDINANCE OR LAW, SERVICE INTERRUPTION PD & TE, BUILDINGS
          IN DUE COURSE OF CONSTRUCTION, LOSS ADJUSTMENT EXPENSES, POLLUTION CLEAN-UP
          LAND & WATER

ITEM 6    Mortgagee Clause: Loss, if any, shall be payable to:

ITEM 7    Forms Attached:

          See attached forms schedule

                                        Authorized Representative OR
                                        Countersignature (In states where applicable)

PRPDEC 20 01 31
C-1119

COVER NOTE

ISSUED BY        EASTERN RISK SPECIALISTS

LOCATED AT       1700 MARKET STREET, __ FLOOR
                 PHILADELPHIA, PA 19103

DATE:            06 04 04

1. INSURED:      _____ llo Wynn Resorts, Limited.

2. ADDRESS:      _____ LAS VEGAS BLVD __ or 3124 Howard Hughes Pkwy #170
                 LAS VEGAS, NV 89109                    See next A.

3. COVER NOTE NUMBER        RENEWAL OF        EFFECTIVE DATE        EXPIRATION DATE:
   AW13T42091               NEW              06/22/04               06/22/05

4. AMOUNT OF INSURANCE:     $3,500,000 PART OF $10,000,000 PART OF
                           105,140,7871

5. PREMIUM:                $16,435.00 BROKER RESPONSIBLE FOR FILINGS

6. COVERING ON:            REAL & BPP, BI, EE'S (S ORDINARY PAYROLL, NEWLY        See
                           ACQUIRED REAL & BPP, UNNAMED REAL & BPP,              below
                           LEASE HOLD INT, ACCTS RECV, VALUABLE PAPERS,          + credits to
                           EDP

7. LOCATION:               AS PER SCHEDULE ON FILE WITH COMPANY

8. TO INDEMNIFY AGAINST LOSS BY:    ALL RISK (INCLUDING FLOOD (X/S SFHA) &
                                    EARTHQUAKE (X/S CA, HI, AK & PR)

9. TERMS AND CONDITIONS:
   A. TOTAL PREMIUM DUE WITHIN THIRTY DAYS OF THE EFFECTIVE DATE OF COVERAGE.
   B. DEDUCTIBLE: $25,000 AOP EXCEPT; $100,000 FLOOD, 5%, $100,000 FLOOD NAMED
      STORM, $100,000 EARTHQUAKE, $10,000 TRANSIT, $10,000 EDP, $10,000 MACHINERY &
      EQUIPMENT BREAKDOWN, 24 HOUR WAITING PERIOD QUAL PER DEFINING THE COVERED EVENT
      FOR UTILITY SERVICE INTERRUPTION, CIVIL AUTHORITY AND INGRESS & EGRESS

10. INSURED WITH: ALLIED WORLD ASSURANCE COMPANY (U.S.) INC.

11. REFERENCES:    BOUND WITH RICHARD E. JODOIN

This cover note is held on quote and/or most and/or telephone advices from the above insurer(s) and is subject to policy conditions, which,
as and if issued and is issued by the undersigned without any liability whatsoever as insurer, being solely for the convenience of the insured
and is to be automatically cancelled and superseded by the policy upon issuance.

Cancellation: This cover note may be cancelled by either the insured or the insurer by written notice to the other. In the event of cancellation,
the earned premium will be computed at short rate if cancelled by the insured unless subject to minimum premium and pro rata if cancelled
by the insurer.

If the premium is not paid within the time specified in the section, "Terms and Conditions" of this cover note, the insurance evidenced
by this cover note shall automatically terminate at the end of the time specified and the short rate premium shall be due and payable

_____
AUTHORIZED REPRESENTATIVE

Property Cover Note

ALLIED WORLD ASSURANCE COMPANY (US) INC.
Administrative Office 100 Summer Street, Boston, Massachusetts 02110-2103
(hereinafter called the Company)

COMMERCIAL PROPERTY POLICY
DECLARATIONS

POLICY NUMBER: AW1674207                                           RENEWAL OF: NEW

ITEM 1.   Named Insured: Aequus Property Trust ... by Jay Adest & Associates

          Address: 2 - 2715 Las Vegas Blvd. S

                   LAS VEGAS          NV 89109

ITEM 2.   Policy Period:
          From: 06/22/2004-                                TO: 06/22/2005
          at 12:01 A.M. Standard Time at the address of the named insured shown above.

ITEM 3.   Limit of Insurance:
          $2,500,000 PART OF $15,740,787 (SEE CONTRIBUTION ENDT#001)


          Total Premium        $15,435              Minimum Earned Premium        $4,109

ITEM 4.   Perils:
          ALL RISK INCLUDING FLOOD (EXCLUDING SFHA) & EARTHQUAKE (EXCLUDING CA, HI, AK & PR)

ITEM 5.   Description of Property Covered:                                              Coinsurance
          REAL & BUSINESS PERSONAL PROPERTY, BUSINESS INTERRUPTION, EXTRA EXPENSE        N/A
          (EXCLUDING ORDINARY PAYROLL), NEWLY ACQUIRED REAL & BUSINESS PERSONAL
          PROPERTY, UNNAMED REAL & BUSINESS PERSONAL PROPERTY, LEASE HOLD INTEREST,
          SINKHOLE COLLAPSE, CIVIL AUTHORITY, INGRESS & EGRESS, DECONTAMINATION EXPENSE,
          ERRORS & OMISSIONS, ACCOUNTS RECEIVABLE, VALUABLE PAPERS, ELECTRONIC DATA
          PROCESSING EQUIPMENT & MEDIA, DEBRIS REMOVAL, DEMOLITION & INCREASED COST OF
          CONSTRUCTION (DICC), ORDINANCE OR LAW, SERVICE INTERRUPTION PD & TE, BUILDINGS
          IN DUE COURSE OF CONSTRUCTION, LOSS ADJUSTMENT EXPENSES, POLLUTION CLEAN-UP
          LAND & WATER

ITEM 6.   Mortgagee Clause: Loss, if any, shall be payable to:
ITEM 7.   Forms Attached:

          See attached forms schedule

                                               _____
                                                  Authorized Representative OR
                                               Countersignature (in states where applicable)

PRPDEC(Ed.01/91)
LX119

ALLIED WORLD ASSURANCE COMPANY (U.S.) INC.

ANY REFERENCE IN THIS POLICY POINT TO CONTACT IN WRITING THE COMPANY'S CLAIM OR LEGAL DEPARTMENTS SHOULD USE THE ADDRESSES PROVIDED BELOW.

Attn: Claim Department
ALLIED WORLD ASSURANCE COMPANY (U.S.) INC.
100 Summer Street
Boston, Massachusetts 02110-2103

Attn: Legal Department
ALLIED WORLD ASSURANCE COMPANY (U.S.) INC.
100 Summer Street
Boston, Massachusetts 02110-2103

FORMS SCHEDULE

NAMED INSURED: KNNN RECORTS LLC.

POLICY NO:  AN107400P

EFFECTIVE DATE: 06/22/2004

| FORM NUMBER | EDITION DATE | ENDT NUMBER | TITLE |
|---|---|---|---|
| PRFIFS | 01.91 | | FIRE SCHEDULE |
| PRPDEC | 01.91 | | PROPERTY DEC |
| PR9014 | 01.91 | | OCCURRENCE LIMIT OF LIABILITY |
| IL0017 | 11.95 | | COMMON POLICY CONDITIONS |
| CP0090 | 07.88 | | COMMERCIAL PROPERTY CONDITIONS |
| PR9013 | 01.91 | | POLLUTION CONTAMINATION FORM |
| PR9019 | 01.94 | | STANDARD PROPERTY CONDITIONS |
| CP1030 | 10.95 | | CAUSES OF LOSS SPECIAL FORM |
| CP0010 | 10.85 | | BUILDING & PP COVERAGE FORM |
| CM0066 | 07.85 | | ACCOUNTS RECEIVABLE COVERAGE |
| CM0067 | 07.85 | | VALUABLE PAPERS & RECORDS |
| | | | TRANSPORTATION FROM 3715 |
| | | | INSURING AGREEMENT FORM 20031 |
| LX9592 | 05.05 | ENDT#001 | CONTRIBUTORY ENDORSEMENT |
| LEXDOC011 | 10.97 | ENDT#002 | FLOOD DEDUCTIBLE ENDT |
| PR9025 | 09.92 | ENDT#003 | EARTHQUAKE ENDORSEMENT |
| PR9566 | 11.02 | ENDT#004 | EQUIPMENT BREAKDOWN ENDT |
| PR9567 | 11.02 | ENDT#005 | EQUIPMENT BREAKDOWN SCHEDULE |
| PR9026 | 19.92 | ENDT#006 | FLOOD ENDORSEMENT |
| LX9512 | 05.02 | ENDT#007 | MOLD/FUNGUS EXCLUSION |
| PR9541 | 16.02 | ENDT#008 | NAMED INSURED ENDORSEMENT |
| CP0417 | 07.88 | ENDT#009 | OFF-PREM. POWER FAIL (DIR DMG) |
| CP1545 | 07.88 | ENDT#010 | OFF-PREM. SVCS (TIME ELEMENT) |
| CP0405 | 07.88 | ENDT#011 | ORDINANCE OR LAW COVERAGE |
| PR9514 | 09.00 | ENDT#012 | PROPERTY ENDORSEMENT |
| PR9017 | 11.91 | ENDT#013 | REPLACEMENT COST COVERAGE ENDT |
| PR9513 | 05.01 | ENDT#014 | WAR RISK & TERRORIST EXCLUSION |
| X9513 | 10.95 | ENDT#015 | COMB. PROP/B&M MILLENNIUM ENDT |

DOC01B (ED. 11.97)
L/0295

FIRE

SCHEDULE OF COVERED LOCATIONS

Policy Number:    AA1374319

Issued to:  WYNN RESORTS, LLC

DESCRIPTION OF PREMISES:
AS PER SCHEDULE ON FILE WITH
COMPANY

LIMIT
12,000,000 P/D $10,000,000 P/D
$55,140,787 & 10 EXCESS
OF $10,000,000 P/D $65,140,787

PERCENT OF COINS.
N.A.

SUBLIMITS:

| | |
|---|---|
| FLOOD ANNUAL AGGREGATE | $25,000,000 |
| EARTHQUAKE ANNUAL AGGREGATE | $25,000,000 |
| CONTINGENT BI & EE | $ 5,000,000 |
| EXTRA EXPENSE | $ 5,000,000 |
| ACCOUNTS RECEIVABLE | $ 5,000,000 |
| VALUABLE PAPERS | $ 5,000,000 |
| EDP INCLUDING MEDIA | $ 5,000,000 |
| TRANSIT | $ 250,000 |
| UNNAMED LOCATION | $ 1,000,000 |
| POLLUTANT CLEAN-UP ANNUAL AGGREGATE | $ 100,000 |
| NEWLY ACQUIRED PROPERTY (90 DAYS TO REPORT) | $ 1,000,000 |
| OFF PREMISES TE | $ 5,000,000 |
| OFF PREMISES PD | $ 5,000,000 |
| ERRORS & OMISSIONS | $ 5,000,000 |
| BUILDINGS IN DUE COURSE CONSTRUCTION | $ 2,500,000 |
| LEASEHOLD INTEREST | $ 1,000,000 |
| CIVIL AUTHORITY & INGRESS & EGRESS | $ 5,000,000 OR 30 DAYS C/O |
| FINE ARTS | $ 1,000,000 |
| EXPEDITING EXPENSE | $ 1,000,000 |
| EXHIBITION & TRADE SHOWS | $ 500,000 |
| FIRE DEPARTMENT SERVICE CHARGES | $ 500,000 |
| LOSS ADJUSTMENT EXPENSES | $ 250,000 |
| POLLUTION CLEAN-UP LAND & WATER | $ 100,000 |

A SUBLIMIT OF 25% OF THE COVERED LOSS OR $5,000,000; WHICHEVER IS LESS SHALL APPLY TO
DEBRIS REMOVAL, DEMOLITION & INCREASED COST OF CONSTRUCTION (DICC) & ORDINANCE OR
LAW.

THESE SUBLIMITS DO NOT INCREASE THE POLICY LIMIT OF $2,000,000 PART OF $10,000,000 PART
OF $55,140,787 & 10 EXCESS OF $10,000,000 PART OF $65,140,787 PAYABLE IN ANY ONE
OCCURRENCE. THIS INCLUDES ANY ADDITIONAL LIMIT SHOWN.

PRFIRS (ED. 01 91)
LX1120

## OCCURRENCE LIMIT OF LIABILITY

It is understood and agreed that the following terms, terms and conditions apply to this policy:

1. The maximum amount of insurance shown on the face of this policy, or endorsed onto this policy, is the total amount of the Company's liability, applicable to each occurrence, as hereafter defined. Notwithstanding any other terms and conditions of this policy to the contrary, in no event shall the liability of the Company exceed this limit or amount irrespective of the number of locations involved.

The term "occurrence" shall mean any one loss, disaster, casualty or series of losses, disasters, or casualties, arising out of one event. When the term applies to loss or losses from the perils of tornado, cyclone, hurricane, windstorm, hail, flood, earthquake, volcanic eruption, riot, riot attending a strike, civil commotion, and vandalism and malicious mischief one event shall be construed to be all losses arising during a continuous period of 72 hours. When filing proof of loss, the Insured may elect the moment at which the 72 hour period shall be deemed to have commenced, which shall not be earlier than the first loss to the covered property occurs.

2. The premium for this policy is based upon the Statement of Values on file with the Company, or attached to this policy. In the event of loss hereunder, liability of the Company, subject to the terms of paragraph one (1) above, shall be limited to the least of the following:

   a. The actual adjusted amount of loss, less applicable deductible(s).

   b. The total stated value for the property involved, as shown on the latest Statement of Values on file with the Company, less applicable deductible(s).

   c. The Limit of Liability or Amount of Insurance shown on the face of this policy or endorsed onto this policy.

COMMON POLICY CONDITIONS

All Coverage Parts included in this policy are subject to the following conditions.

A. CANCELLATION
1. The first Named Insured shown in the Declarations may cancel this policy by mailing or delivering to us advance written notice of cancellation.

2. We may cancel this policy by mailing or delivering to the first Named Insured written notice of cancellation at least:
   a. 10 days before the effective date of cancellation if we cancel for nonpayment of premium; or
   b. 30 days before the effective date of cancellation if we cancel for any other reason.

3. We will mail or deliver our notice to the first Named Insured's last mailing address known to us.

4. Notice of cancellation will state the effective date of cancellation. The policy period will end on that date.

5. If this policy is cancelled, we will send the first Named Insured any premium refund due. If we cancel, the refund will be pro rata. If the first Named Insured cancels, the refund may be less than pro rata. The cancellation will be effective even if we have not made or offered a refund.

6. If notice is mailed, proof of mailing will be sufficient proof of notice.

B. CHANGES
This policy contains all the agreements between you and us concerning the insurance afforded. The first Named Insured shown in the Declarations is authorized to make changes in the terms of this policy with our consent. This policy's terms can be amended or waived only by endorsement issued by us and made a part of this policy.

C. EXAMINATION OF YOUR BOOKS AND RECORDS
We may examine and audit your books and records as they relate to this policy at any time during the policy period and up to three years afterward.

D. INSPECTIONS AND SURVEYS
We have the right but are not obligated to:

1. Make inspections and surveys at any time;

2. Give you reports on the conditions we find; and

3. Recommend changes.

Any inspections, surveys, reports or recommendations relate only to insurability and the premiums to be charged. We do not make safety inspections. We do not undertake to perform the duty of any person or organization to provide for the health or safety of workers or the public. And we do not warrant that conditions:

1. Are safe or healthful; or

2. Comply with laws, regulations, codes or standards.

These conditions apply not only to us, but also to any rating, advisory, rate service or similar organization which makes insurance inspections, surveys, reports or recommendations.

Copyright, ISO Commercial Risk Services, Inc.

IL00170d11 95.

E. PREMIUMS

The First Named Insured shown in the Declarations:

1. Is responsible for the payment of all premiums; and

2. Will be the payee for any return premiums we pay.

F. TRANSFER OF YOUR RIGHTS AND DUTIES UNDER THIS POLICY

Your rights and duties under this policy may not be transferred without our written consent except in the case of death of an individual named insured.

If you die, your rights and duties will be transferred to your legal representative but only while acting within the scope of duties as your legal representative. Until your legal representative is appointed, anyone having proper temporary custody of your property will have your rights and duties but only with respect to that property.

Copyright, ISO Commercial Risk Services, Inc.

(CC017 Ed 11 85)

COMMERCIAL PROPERTY CONDITION

This Coverage Part is subject to the following conditions, the Common Policy Conditions and applicable Loss Conditions and Additional Conditions in Commercial Property Coverage Forms.

A. CONCEALMENT, MISREPRESENTATION OR FRAUD

This Coverage Part is void in any case of fraud by you as it relates to this Coverage Part at any time. It is also void if you or any other insured, at any time, intentionally conceal or misrepresent a material fact concerning:

1. This Coverage Part;

2. The Covered Property;

3. Your interest in the Covered Property; or

4. A claim under this Coverage Part.

B. CONTROL OF PROPERTY

Any act or neglect of any person other than you beyond your direction or control will not affect this insurance.

The breach of any condition of this Coverage Part at any one or more locations will not affect coverage at any location where, at the time of loss or damage, the breach of condition does not exist.

C. INSURANCE UNDER TWO OR MORE COVERAGES

If two or more of this policy's coverages apply to the same loss or damage, we will not pay more than the actual amount of the loss or damage.

D. LEGAL ACTION AGAINST US
No one may bring a legal action against us under this Coverage Part
unless:

1. There has been full compliance with all of the terms of this Coverage Part; and

2. The action is brought within 2 years after the date on which the direct physical loss or damage occurred.

E. LIBERALIZATION

If we adopt any revision that would broaden the coverage under this Coverage Part without additional premium within 45 days prior to or during the policy period, the broadened coverage will immediately apply to this Coverage Part.

F. NO BENEFIT TO BAILEE

No person or organization, other than you, having custody of Covered Property will benefit from this insurance.

G. OTHER INSURANCE
1. You may have other insurance subject to the same plan, terms, conditions and provisions as the insurance under this Coverage Part. If you do, we will pay our share of the covered loss or damage.

Page 1 of 2

CP0090Reg 07.88.    Copyright, ISO Commercial Risk Services, Inc.
LX1005

our share is the proportion that the applicable Limit of Insurance under this Coverage Part bears to the Limits of Insurance of all insurance covering on the same basis.

2. If there is other insurance covering the same loss or damage, other than that described in 1. above, we will pay only for the amount of covered loss or damage in excess of the amount due from that other insurance, whether you can collect on it or not. But we will not pay more than the applicable Limit of Insurance.

H. POLICY PERIOD, COVERAGE TERRITORY

Under this Coverage Part:

1. We cover loss or damage commencing:

    a. During the policy period shown in the Declarations; and

    b. Within the Coverage territory.

2. The coverage territory is:

    a. The United States of America (including its territories and possessions);

    b. Puerto Rico; and

    c. Canada.

I. TRANSFER OF RIGHTS OF RECOVERY AGAINST OTHERS TO US

If any person or organization to or for whom we make payment under this Coverage Part has rights to recover damages from another, those rights are transferred to us to the extent of our payment. That person or organization must do everything necessary to secure our rights and must do nothing after loss to impair them. But you may waive your rights against another party in writing:

1. Prior to a loss to your Covered Property or Covered Income.

2. After a loss to your Covered Property or Covered Income only if, at time of loss, that party is one of the following:

    a. Someone insured by this insurance;

    b. A business firm:

        (1) Owned or controlled by you; or

        (2) That owns or controls you; or

    c. Your tenant.

This will not restrict your insurance.

Copyright, ISO Commercial Risk Services, Inc.
CP00900Ed. 01-A9:
LK1056

POLLUTION, CONTAMINATION, DEBRIS REMOVAL
EXCLUSION ENDORSEMENT

1. Property Not Covered

This policy does not cover land, and values of water.

2. Pollution and Contamination Exclusion

This policy does not cover loss or damage caused by, resulting from, contributed to or made worse by actual, alleged or threatened release, discharge, escape or dispersal of CONTAMINANTS or POLLUTANTS, all whether direct or indirect, proximate or remote or in whole or in part caused by, contributed to or aggravated by any physical damage insured by this policy.

Nevertheless, if fire is not excluded from this policy and a fire arises directly or indirectly from seepage or contamination or pollution, any loss or damage insured under the policy, arising directly from that fire is insured, subject to the provisions of this policy.

CONTAMINANTS or POLLUTANTS means a solid, liquid, gaseous or thermal irritant or contaminant, including smoke, vapor, soot, fumes, acids, alkalis, chemicals and waste, which alter its release can cause or threaten damage to human health or human welfare or causes or threatens damage, deterioration, loss of value, marketability, or the of use to a property insured hereunder, including, but not limited to, bacteria, fungi, virus, or hazardous substances as listed in the Federal Water, Pollution Control Act, Clean Air Act, Resource Conservation, and Recovery Act of 1976, and Toxic Substances Control Act or as designated by the U. S. Environmental Protection Agency. Waste includes materials to be recycled, reconditioned or reclaimed.

This exclusion shall not apply, when loss or damage is directly caused by fire, lightning, aircraft impact, explosion, riot, civil commotion, smoke, vehicle impact, windstorm, hail, vandalism, malicious mischief. This exclusion shall also not apply when loss or damage is directly caused by leakage or accidental discharge from automatic fire protective systems.

3. Asbestos Exclusions

This policy does not cover

   a)   Asbestos, dioxin or polychlorinated biphenols (hereinafter all referred to as "Materials") removal from any good, product or structure unless the asbestos is itself damaged by fire, lightning, aircraft impact, explosion, riot, civil commotion, smoke, vehicle impact, windstorm or hail, vandalism, malicious mischief, leakage or accidental discharge from automatic fire protective system.

   b)   Demolition or increased cost of reconstruction, repair, debris removal or loss of use necessitated by the enforcement of any law or ordinance regulating such Materials.

   c)   Any governmental direction or request declaring that such Materials present in or part of or utilized on any undamaged portion of the insured's property can no longer be used for the purpose for which it was intended or installed and must be removed or modified.

   The coverage shall also does not apply to payment for the investigation or defense of any loss, damage or any cost, loss of use expense, fine or penalty or for any expense or claim or suit related to any of the above.

4. Debris Removal Exclusion

The Company will pay the expense within the sum insured to remove debris of insured property damaged or destroyed by an insured peril during the policy term.

   The Company will not pay the expense to:

   a)   Extract contaminants or pollutants from the debris; or

   b)   Extract contaminants or pollutants from, and or water; or

   c)   Remove, restore in no way contaminated or polluted land or water; or

b) Removal or transport of a property or structure to a site for storage or decontamination required because the property, or debris is unsound by pollutants or contaminants, whether or not such removal, transport, or decontamination is required by law or regulation.

It is a condition precedent to recovery under this extension that the Company shall have paid or agreed to pay for extent of actual loss or damage to the property insured hereunder and that the Insured shall give written notice to the Company of its intent to claim for cost of removal of debris or cost to clean up not later than 180 days after the date of such physical loss, loss or damage.

5.   Authorities Exclusion

Notwithstanding anything in the provisions of this policy, the Company shall not be liable for loss, damage, costs, expenses, fines or penalties incurred or sustained by or imposed on the Insured at the order of any Government Agency, Court or other Authority, arising from any cause whatsoever.

PR 00015 Ed.01 91
LYT093

ALLIED WORLD ASSURANCE COMPANY (US) INC.
Standard Property Conditions

This endorsement effective     06 01 2004                    forms part of Policy Number  C 3074029

Issued to  ANKA RESORTS LLC

By:  ALLIED WORLD ASSURANCE COMPANY (US) INC. hereinafter called "the Company")

In consideration of the premium charged, the following clauses are hereby made applicable under this policy.

## MINIMUM EARNED PREMIUM CLAUSE

In the event of cancellation of this policy by the insured, a minimum premium of  $4,709  shall become earned, any provision of the policy to the contrary notwithstanding.

Failure of the insured to make timely payment of premium shall be considered a request by the insured for the Company to cancel. On the insured's behalf. In the event of such cancellation for non-payment of premium, the minimum earned premium shall be due and payable, provided, however, such cancellation shall be rescinded if the insured remits and the Company receives the full policy premium within 10 days after the date of issuance of the cancellation notice. Such remittance and acceptance by the Company shall not effect the minimum earned premium provision of this endorsement. In the event of any other cancellation by the Company, the earned premium shall be at the insured pro rata, not subject to the minimum earned premium.

## POLICY DEDUCTIBLE

Each claim for loss or damage separately occurring shall be adjusted separately and from each such adjusted claim, the amount of  $25,000  shall be deducted. Notwithstanding the foregoing, the deductible amount applying to certain peril(s) insured against by this policy shall be as follows:

$  25,000  deductible applying to ADP, EXCEPT;
$100,000  deductible applying to EARTHQUAKE
$  10,000  deductible applying to ELECTRONIC DATA PROCESSING EQUIPMENT & MEDIA, TRANSIT, MACHINERY & EQUIPMENT BREAKDOWN
$           deductible applying to FLOOD - SEE ENDT #002
24 hour waiting period qualifier defining the covered event deductible applying to UTILITY SERVICE INTERRUPTION, CIVIL AUTHORITY & INGRESS & EGRESS

In the event of any other insurance covering the property insured hereunder, whether or not concurrent, the deductible(s) specified herein shall apply in full against that portion of any claim for loss or damage which the Company is called upon to pay under the provisions of the Apportionment Clause irrespective of any provisions to the contrary of such other insurance.

## CANCELLATION CLAUSE

Except and to the extent of the minimum Earned Premium Clause which is part of this policy, this clause supersedes other cancellation clauses made a part of this policy.

CANCELLATION: This policy may be cancelled by the insured by surrender thereof to the Company or by mailing to the Company written notice stating when thereafter such cancellation shall be effective. This policy may be cancelled by the Company by mailing to the insured, at the mailing address shown in this policy or last known address, written notice, stating when, not less than 30 days thereafter, 10 days for non-payment of premium such cancellation shall be effective. The effectiveness of cancellation is not dependent on the return of unearned premium with the notice. Proof of mailing of notice as aforesaid shall be sufficient proof of notice. The effective date and hour of cancellation stated in the notice shall become the end of the policy period. Delivery of such written notice either by the insured or the Company shall be equivalent to mailing. If the insured cancels, earned premium shall be computed in accordance with the customary short rate table and procedure. If the Company cancels, earned premium shall be computed pro rata. Premium adjustment shall be made as soon as practicable after cancellation becomes effective.

## SERVICE OF SUIT CLAUSE

Service of Suit: In the event of failure of the Company to pay any amount claimed to be due hereunder, the Company, at the request of the insured, will submit to the jurisdiction of a court of competent jurisdiction within the United States. Nothing in this condition constitutes or should be understood to constitute a waiver of the Company's rights to commence an action in any court of competent jurisdiction in the United States to remove an action to a United States District Court or to seek a transfer of a case to another court as permitted by the laws of the United States or of any state in the United States. It is further agreed that service of process in such suit may be made upon Counsel, Legal Department, Allied World Assurance Company (US) Inc., 100 Summer Street, Boston, Massachusetts, 02110-2103, or his or her representative, and that in any suit instituted against the Company upon this policy, the Company will abide by the final decision of such court or of any appellate court in the event of an appeal.

SRPO15 (Ed 01/94)                                                    1 of 2
LR1101

Further, pursuant to any statute of any state, territory, or district of the United States which makes provision therefor, the Company hereby designates the Superintendent, Commissioner or Director of Insurance, other officer specified for that purpose in the statute, or his successor or successors in office as its true and lawful attorney upon whom may be served any lawful process in any action, suit, or proceeding instituted by or on behalf of the insured or any beneficiary hereunder arising out of this policy of insurance and hereby designates the above named Counsel as the person to whom the said officer is authorized to mail such process or a true copy thereof.

## WAR RISK EXCLUSION CLAUSE

The Company shall not be liable for any loss, caused directly or indirectly, by (1) hostile or warlike action in time of peace or war, whether or not declared, including action in hindering, combatting or defending against an actual, impending or expected attack (a) by government or sovereign power, de jure or de facto, or by any authority maintaining or using military, naval or air forces; or (b) by military, naval or air forces; or (c) by an agent of any such government, power, authority or force; (2) any weapon of war employing atomic fission or fusion active force whether in time of peace or war, whether or not its discharge was accidental; (3) insurrection, rebellion, revolution, civil war, usurped power, or action taken by government authority in hindering, combatting, or defending against such an occurrence, seizure or destruction; (4) any consequence of any of the foregoing.

## NUCLEAR EXCLUSION CLAUSE

The Company shall not be liable for loss by nuclear reaction or nuclear radiation or radioactive contamination all whether controlled or not, and whether such loss be direct or indirect, proximate or remote, or be in whole or in part caused by, contributed to, or aggravated by the peril(s) insured against in this policy. If the peril of fire is insured under this policy, then, subject to the foregoing and all provisions of this policy, direct loss by fire resulting from nuclear reaction or nuclear radiation or radioactive contamination is insured against by this policy.

## SALVAGE AND RECOVERY CLAUSE

All salvages, recoveries and payments recovered or received either prior or subsequent to a loss settlement under this policy shall be applied as if recovered or received prior to the said settlement and all necessary adjustments shall be made by the parties hereto, including deduction of the Company's cost of recovery or salvage.

## REPORTING CLAUSE

Notwithstanding that the insured may be obligated to report full values for premium purposes, the Company's maximum limit of liability shall not exceed that amount stated as the policy limit of liability.

## PROOF OF LOSS AND PAYMENT

The insured shall complete and sign a sworn proof of loss within ninety (90) days after the occurrence of a loss (unless such period be extended by the written agreement of the Company) stating the time, place and cause of loss, the interest of the insured and of all others in the property, the sound value thereof and the amount of loss or damage thereto, and all other insurance thereon. All adjusted claims shall be due and payable thirty (30) days after the presentation and acceptance of satisfactory proof(s) of loss at the office of the Company at 100 Summer Street, Boston, Massachusetts 02110-2103

## GOVERNMENT ACTIVITY CLAUSE

The Company shall not be liable for loss or damage caused by or resulting from: (1) the seizure or destruction of property insured by this policy by any government body, including any customs or quarantine action, or (2) confiscation or destruction of any property by order of any government or public authority, except an order to destroy property to prevent the spread of fire or explosion.

IN WITNESS HEREOF, we have caused this policy to be executed and attested, but this policy shall not be valid unless countersigned in the Declarations by one of our duly authorized representative.

President

POLICY NUMBER: AML 4029

COMMERCIAL PROPERTY
CP 10 30 10 00

# CAUSES OF LOSS - SPECIAL FORM

Words and phrases that appear in quotation marks have special meaning. Refer to Section F. - Definitions.

## A. Covered Causes Of Loss

When Special is shown in the Declarations, Covered Causes of Loss means Risks Of Direct Physical Loss unless the loss is:

1. Excluded in Section B., Exclusions; or

2. Limited in Section C., Limitations;

that follow.

## B. Exclusions

1. We will not pay for loss or damage caused directly or indirectly by any of the following. Such loss or damage is excluded regardless of any other cause or event that contributes concurrently or in any sequence to the loss.

   a. Ordinance Or Law

   The enforcement of any ordinance or law:

   (1) Regulating the construction, use or repair of any property; or

   (2) Requiring the tearing down of any property, including the cost of removing its debris.

   This exclusion, Ordinance Or Law, applies whether the loss results from:

   (1) An ordinance or law that is enforced even if the property has not been damaged; or

   (2) The increased costs incurred to comply with an ordinance or law in the course of construction, repair, renovation, remodeling or demolition of property, or removal of its debris, following a physical loss to that property.

   b. Earth Movement

   (1) Earthquake, including any earth sinking, rising or shifting related to such event;

   (2) Landslide, including any earth sinking, rising or shifting related to such event;

   (3) Mine subsidence, meaning subsidence of a man-made mine, whether or not mining activity has ceased;





   (4) Earth sinking (other than sinkhole collapse), rising or shifting including soil conditions which cause settling, cracking or other disarrangement of foundations or other parts of realty. Soil conditions include contraction, expansion, freezing, thawing, erosion, improperly compacted soil and the action of water under the ground surface.

   But if Earth Movement, as described in b.(1) through (4) above, results in fire or explosion, we will pay for the loss or damage caused by that fire or explosion.

   c. Volcanic eruption, explosion or effusion. But if volcanic eruption, explosion or effusion results in fire, building glass breakage or Volcanic Action, we will pay for the loss or damage caused by that fire, building glass breakage or Volcanic Action.

   Volcanic action means direct loss or damage resulting from the eruption of a volcano when the loss or damage is caused by:

   (a) Airborne volcanic blast or airborne shock waves;

   (b) Ash, dust or particulate matter; or

   (c) Lava flow.

   All volcanic eruptions that occur within any 168 hour period will constitute a single occurrence.

   Volcanic action does not include the cost to remove ash, dust or particulate matter that does not cause direct physical loss or damage to the described property.

   d. Governmental Action

   Seizure or destruction of property by or order of governmental authority.

   But we will pay for loss or damage caused by or resulting from acts of destruction ordered by governmental authority and taken at the time of a fire to prevent its spread, if the fire would be covered under this Coverage Part.

Copyright, Insurance Services Office, Inc., 1999

h. Nuclear Hazard

(1) Any reaction or radiation, or radioactive contamination, however caused.

But if nuclear reaction or radiation, or radioactive contamination, results in fire, we will pay for the loss or damage caused by that fire.

i. Utility Services — *[handwritten]*

The failure of power or other utility service supplied to the described premises, however caused, if the failure occurs away from the described premises.

But if the failure of power or other utility *[handwritten]* service results in a Covered Cause of Loss, we will pay for the loss or damage caused by that Covered Cause of Loss.

This exclusion does not apply to the Business Income coverage or to Extra Expense coverage. Instead, the Special Exclusion in Paragraph B.4.a.(1) applies to these coverages.

j. War And Military Action

(1) War, including undeclared or civil war;

(2) Warlike action by a military force, including action in hindering or defending against actual or expected attack, by any government, sovereign or other authority using military personnel or other agents; or

(3) Insurrection, rebellion, revolution, usurped power, or action taken by governmental authority in hindering or defending against any of these.

g. Water

(1) Flood, surface water, waves, tides, tidal waves, overflow of any body of water, or their spray, all whether driven by wind or not;

(2) Mudslide or mudflow;

(3) Water that backs up or overflows from a sewer, drain or sump; *[handwritten]*

(4) Water under the ground surface pressing on, or flowing or seeping through:

(a) Foundations, walls, floors or paved surfaces;

(b) Basements, whether paved or not; or

(c) Doors, windows or other openings.

But if Water, as described in g.(1) through g.(4) above, results in fire, explosion or sprinkler leakage, we will pay for the loss or damage caused by that fire, explosion or sprinkler leakage.

Exclusions B.1.a. through B.1.g. apply whether or not the loss event results in widespread damage or affects a substantial area. *[handwritten]*

2. We will not pay for loss or damage caused by or resulting from any of the following:

a. Artificially generated electrical current, including electric arcing, that disturbs electrical devices, appliances or wires.

But if artificially generated electrical current results in fire, we will pay for the loss or damage caused by that fire.

b. Delay, loss of use or loss of market.

c. Smoke, vapor or gas from agricultural smudging or industrial operations.

d. (1) Wear and tear;

(2) Rust, corrosion, fungus, decay, deterioration, hidden or latent defect or any quality in property that causes it to damage or destroy itself;

(3) Smog;

(4) Settling, cracking, shrinking or expansion;

(5) Nesting or infestation, or discharge *[handwritten]* or release of waste products or secretions, by insects, birds, rodents or other animals. — *[handwritten] Silverfish*

(6) Mechanical breakdown, including rupture or bursting caused by centrifugal force. But if mechanical breakdown results in elevator collision, we will pay for the loss or damage caused by that elevator collision. *[handwritten]*

(7) The following causes of loss to personal property:

(a) Dampness or dryness of atmosphere;

(b) Changes in or extremes of temperature; or

(c) Marring or scratching.

But if an excluded cause of loss that is listed in 2.d.(1) through (7) results in a "specified cause of loss" or building glass breakage, we will pay for the loss or damage caused by that "specified cause of loss" or building glass breakage. *[handwritten] V.6. Resulting damage.*

Copyright, Insurance Services Office, Inc., 1999

Explosion of steam boilers, steam pipes, steam engines or steam turbines owned or leased by you, or operated under your control. But if explosion of steam boilers, steam pipes, steam engines or steam turbines results in fire or combustion explosion, we will pay for the loss or damage caused by that fire or combustion explosion. We will also pay for loss or damage caused by or resulting from the explosion of gases or fuel within the furnace of any fired vessel or within the flues or passages through which the gases of combustion pass.

Continuous or repeated seepage or leakage of water that occurs over a period of 14 days or more.

Water, other liquids, powder or molten material that leaks or flows from plumbing, heating, air conditioning or other equipment (except fire protective systems) caused by or resulting from freezing, unless:

(1) You do your best to maintain heat in the building or structure; or

(2) You drain the equipment and shut off the supply if the heat is not maintained.

Dishonest or criminal act by you, any of your partners, members, officers, managers, employees (including leased employees), directors, trustees, authorized representatives or anyone to whom you entrust the property for any purpose:

(1) Acting alone or in collusion with others; or

(2) Whether or not occurring during the hours of employment.

This exclusion does not apply to acts of destruction by your employees (including leased employees); but theft by employees (including leased employees) is not covered.

Voluntary parting with any property by you or anyone else to whom you have entrusted the property if induced to do so by any fraudulent scheme, trick, device or false pretense.

Rain, snow, ice or sleet to personal property in the open.

Collapse, except as provided below in the Additional Coverage for Collapse. But if collapse results in a Covered Cause of Loss at the described premises, we will pay for the loss or damage caused by that Covered Cause of Loss.

Discharge, dispersal, seepage, migration, release or escape of "pollutants" unless the discharge, dispersal, seepage, migration, release or escape is itself caused by any of the "specified causes of loss". But if the discharge, dispersal, seepage, migration, release or escape of "pollutants" results in a "specified cause of loss", we will pay for the loss or damage caused by that "specified cause of loss".

This Exclusion, i., does not apply to damage to glass caused by chemicals applied to the glass.

Neglect of an insured to use all reasonable means to save and preserve property from further damage at and after the time of loss.

We will not pay for loss or damage caused by or resulting from any of the following, 3.a. through 3.c. But if an excluded cause of loss that is listed in 3.a. through 3.c. results in a Covered Cause of Loss, we will pay for the loss or damage caused by that Covered Cause of Loss.

a. Weather conditions. But this exclusion only applies if weather conditions contribute in any way with a cause or event excluded in Paragraph 1. above to produce the loss or damage.

b. Acts or decisions, including the failure to act or decide, of any person, group, organization or governmental body.

c. Faulty, inadequate or defective:

(1) Planning, zoning, development, surveying, siting;

(2) Design, specifications, workmanship, repair, construction, renovation, remodeling, grading, compaction;

(3) Materials used in repair, construction, renovation or remodeling; or

(4) Maintenance;

of part or all of any property on or off the described premises.

4. Special Exclusions

The following provisions apply only to the specified Coverage Forms.

a. Business Income (And Extra Expense) Coverage Form, Business Income (Without Extra Expense) Coverage Form, or Extra Expense Coverage Form

Copyright, Insurance Services Office, Inc., 1999

We will not pay for:

(1) Any loss caused directly or indirectly by the failure of power or other utility service supplied to the described premises, however caused, if the failure occurs outside of a covered building.

But if the failure of power or other utility service results in a Covered Cause of Loss, we will pay for the loss resulting from that Covered Cause of Loss.

(2) Any loss caused by or resulting from:

(a) Damage or destruction of finished stock"; or

(b) The time required to reproduce "finished stock".

This exclusion does not apply to Extra Expense.

(3) Any loss caused by or resulting from direct physical loss or damage to radio or television antennas (including satellite dishes) and their leadin wiring, masts or towers.

(4) Any increase of loss caused by or resulting from:

(a) Delay in rebuilding, repairing or replacing the property or resuming "operations", due to interference by strikers or other persons at the location of the rebuilding, repair or replacement by strikers or other persons; or

(b) Suspension, lapse or cancellation of any license, lease or contract. But if the suspension, lapse or cancellation is directly caused by the "suspension" of "operations", we will cover such loss that affects your Business Income during the "period of restoration" and any extension of the "period of restoration" in accordance with the terms of the Extended Business Income Additional Coverage and the Extended Period Of Indemnity Optional Coverage or any variation of these.

(5) Any Extra Expense caused by or resulting from suspension, lapse or cancellation of any license, lease or contract beyond the "period of restoration".

(6) Any other consequential loss.

b. Leasehold Interest Coverage Form

(1) Paragraph B.1.a., Ordinance Or Law, does not apply to insurance under this Coverage Form.

(2) We will not pay for any loss caused by:

(a) Your cancelling the lease;

(b) The suspension, lapse or cancellation of any license; or

(c) Any other consequential loss.

c. Legal Liability Coverage Form

(1) The following exclusions do not apply to insurance under this Coverage Form:

(a) Paragraph B.1.a., Ordinance Or Law;

(b) Paragraph B.1.c., Governmental Action;

(c) Paragraph B.1.d., Nuclear Hazard;

(d) Paragraph B.1.e., Utility Services; and

(e) Paragraph B.1.f., War And Military Action.

(2) The following additional exclusions apply to insurance under this Coverage Form:

(a) Contractual Liability

We will not defend any claim or "suit", or pay damages that you are legally liable to pay, solely by reason of your assumption of liability in a contract or agreement. But this exclusion does not apply to a written lease agreement in which you have assumed liability for building damage resulting from an actual or attempted burglary or robbery, provided that:

(i) Your assumption of liability was executed prior to the accident; and

(ii) The building is Covered Property under this Coverage Form.

(b) Nuclear Hazard

We will not defend any claim or "suit", or pay any damages, loss, expense or obligation, resulting from nuclear reaction or radiation, or radioactive contamination, however caused.

 Copyright Insurance Services Office, Inc. 1999

C. Limitations

The following limitations apply to all coverage forms and endorsements, unless otherwise stated.

1. We will not pay for loss of or damage to property, as described and limited in this section. In addition, we will not pay for any loss that is a consequence of loss or damage as described and limited in this section.

   a. Steam boilers, steam pipes, steam engines or steam turbines caused by or resulting from any condition or event inside such equipment. But we will pay for loss of or damage to such equipment caused by or resulting from an explosion of gases or fuel within the furnace of any fired vessel or within the flues or passages through which the gases of combustion pass.

   b. Hot water boilers or other water heating equipment caused by or resulting from any condition or event inside such boilers or equipment other than an explosion.

   c. The interior of any building or structure, or to personal property in the building or structure, caused by or resulting from rain, snow, sleet, ice, sand or dust, whether driven by wind or not, unless:

      (1) The building or structure first sustains damage by a Covered Cause of Loss to its roof or walls through which the rain, snow, sleet, ice, sand or dust enters; or

      (2) The loss or damage is caused by or results from thawing of snow, sleet or ice on the building or structure.

   d. Building materials and supplies not attached as part of the building or structure caused by or resulting from theft.

      However, this limitation does not apply to:

      (1) Building materials and supplies held for sale by you, unless they are insured under the Builders Risk Coverage Form; or

      (2) Business Income coverage or Extra Expense coverage.

   e. Property that is missing, where the only evidence of the loss or damage is a shortage disclosed on taking inventory, or other instances where there is no physical evidence to show what happened to the property.

   f. Property that has been transferred to a person or to a place outside the described premises on the basis of unauthorized instructions.

2. We will not pay for loss of or damage to the following types of property unless caused by the "specified causes of loss" or building glass breakage:

   a. Valuable papers and records, such as books of account, manuscripts, abstracts, drawings and card index systems, including those which exist on electronic or magnetic media (except as provided in the Coverage Extensions). But valuable papers and records do not include prepackaged software programs.

   b. Animals, and then only if they are killed or their destruction is made necessary.

   c. Fragile articles such as statuary, marbles, chinaware and porcelains, if broken. This restriction does not apply to:

      (1) Glass; or

      (2) Containers of property held for sale.

   d. Builders' machinery, tools and equipment owned by you or entrusted to you, provided such property is Covered Property.

      However, this limitation does not apply:

      (1) If the property is located on or within 100 feet of the described premises, unless the premises is insured under the Builders Risk Coverage Form; or

      (2) To Business Income coverage or to Extra Expense coverage.

3. The special limit shown for each category, a. through d., is the total limit for loss of or damage to all property in that category. The special limit applies to any one occurrence of theft, regardless of the types or number of articles that are lost or damaged in that occurrence. The special limits are:

   a. $2,500 for furs, fur garments and garments trimmed with fur.

   b. $2,500 for jewelry, watches, watch movements, jewels, pearls, precious and semi-precious stones, bullion, gold, silver, platinum and other precious alloys or metals. This limit does not apply to jewelry and watches worth $100 or less per item.

   c. $2,500 for patterns, dies, molds and forms.

   d. $250 for stamps, tickets, including lottery tickets held for sale, and letters of credit.

These special limits are part of, not in addition to, the Limit of Insurance applicable to the Covered Property.

This limitation, C.3., does not apply to Business Income coverage or to Extra Expense coverage.

4. We will not pay the cost to repair any defect
to a system or appliance from which water,
other liquid, powder or molten material es-
capes. But we will pay the cost to repair or
replace damaged parts of the system causing
equipment if the damage:

   a. Results in discharge of any substance
from an automatic fire protection system;
or

   b. Is directly caused by freezing.

   However, this limitation does not apply to
Business Income coverage or to Extra Ex-
pense coverage.

## D. Additional Coverage – Collapse

The term Covered Cause of Loss includes the
Additional Coverage – Collapse as described and
limited in D.1. through D.8. below.

1. With respect to buildings:

   a. Collapse means an abrupt falling down or
caving in of a building or any part of a
building with the result that the building
or part of the building cannot be
occupied for its intended purpose;

   b. A building or any part of a building that is
in danger of falling down or caving in is
not considered to be in a state of
collapse;

   c. A part of a building that is standing is not
considered to be in a state of collapse
even if it has separated from another part
of the building;

   d. A building that is standing or any part of
a building that is standing is not
considered to be in a state of collapse
even if it shows evidence of cracking,
bulging, sagging, bending, leaning,
settling, shrinkage or expansion.

2. We will pay for direct physical loss or dam-
age to Covered Property, caused by collapse
of a building or any part of a building that is
insured under this Coverage Form or that
contains Covered Property insured under this
Coverage Form, if the collapse is caused by
one or more of the following:

   a. The "specified causes of loss" or break-
age of building glass, all only as insured
against in this Coverage Form.

   b. Decay that is hidden from view, unless the
presence of such decay is known to
an insured prior to collapse.

   c. Insect or vermin damage that is hidden
from view, unless the presence of such
damage is known to an insured prior to
collapse.

   d. Weight of people or personal property.

   e. Weight of rain that collects on a roof.

   f. Use of defective material or methods in
construction, remodeling or renovation if
the collapse occurs during the course of
the construction, remodeling or renova-
tion. However, if the collapse occurs
after construction, remodeling or
renovation is complete and is caused in
part by a cause of loss listed in 2.a.
through 2.e., we will pay for the loss or
damage even if use of defective material
or methods, in construction, remodeling or
renovation, contributes to the collapse.

The criteria set forth in 1.a. through 1.d. do
not limit the coverage otherwise provided un-
der this Causes of Loss Form for the causes
of loss listed in 2.a., 2.d. and 2.e.

3. With respect to the following property:

   a. Outdoor radio or television antennas (in-
cluding satellite dishes) and their lead-in
wiring, masts or towers;

   b. Awnings, gutters and downspouts;

   c. Yard fixtures;

   d. Outdoor swimming pools;

   e. Fences;

   f. Piers, wharves and docks;

   g. Beach or diving platforms or appurte-
nances;

   h. Retaining walls; and

   i. Walks, roadways and other paved sur-
faces; if

   the collapse is caused by a cause of loss
listed in 2.b. through 2.f., we will pay for loss
or damage to that property only if:

   a. Such loss or damage is a direct result of
the collapse of a building insured under
this Coverage Form; and

   b. The property is Covered Property under
this Coverage Form.

4. If personal property abruptly falls down or
caves in and such collapse is not the result
of collapse of a building, we will pay for loss
or damage to Covered Property caused by
such collapse of personal property only if:

   a. The collapse was caused by a Cause of
Loss listed in 2.a. through 2.f. above;

   b. The personal property which collapses is
inside a building; and

   c. The property which collapses is not a
kind listed in 3. above, regardless of
whether that kind of property is consid-
ered to be personal property or real
property.

Copyright, Insurance Services Office, Inc., 1999

CP 10 30 10 00

The coverage stated in this Paragraph 4. does not apply to personal property, if marring and scratching is the only damage to that personal property caused by the powder.

Collapse of detached private structures, cracking, bulging, shrinkage, or expansion is getting driven upon a foundation.

B. This Additional Coverage, Or Also, does not increase the Limit of Insurance provided in the Coverage Part.

E. Additional Coverage Extensions.

1. Property In Transit

This Extension applies only to your personal property, to which this form applies.

a. You may extend the insurance provided by this Coverage Part to apply to your personal property (other than their property, if) the care, custody or control of your possessions) in transit more than 100 feet from the described premises. Property must be in or on a motor vehicle you own, lease or operate and while between points in the coverage territory.

b. Loss or damage must be caused by or result from one of the following causes of loss:

(1) Fire, lightning, explosion, windstorm or hail, riot or civil commotion, or vandalism.

(2) Vehicle collision, upset or overturn. Collision means accidental contact of your vehicle with another vehicle or object. It does not mean your vehicle's contact with the road bed.

(3) Theft of an entire bale, case or package by unloaded entry into a securely locked body or compartment of the vehicle. There must be visible marks of the forced entry.

c. The most we will pay for loss or damage under this Extension is $5,000.

This Coverage Extension is additional insurance. The Additional Condition, Coinsurance, does not apply to this Extension.

2. Water Damage, Other Liquids, Powder Or Molten Material Damage

If loss or damage caused by a loss resulting from covered water or other liquid, powder or molten material damage loss occurs, we will also pay the cost to tear out and replace any part of the building or structure to repair damage to the system or appliance from which the water or other substance escaped. The Coverage Extension does not increase the Limit of Insurance.

---

3. Glass

a. We will pay for expenses incurred to put up temporary plates or board up openings if repair or replacement of damaged glass is delayed.

b. We will pay for expenses incurred to remove or replace obstructions when replacing or replacing glass that is part of a building. This does not include removing or replacing window displays.

This Coverage Extension, E.3., does not increase the Limit of Insurance.

F. Definitions

1. Specified Causes of Loss means the following: fire; lightning; explosion; windstorm or hail; smoke; aircraft or vehicles; riot or civil commotion; vandalism; leakage from fire extinguishing equipment; sinkhole collapse; volcanic action; falling objects; weight of snow, ice or sleet; water damage.

1. Sinkhole collapse means the sudden sinking or collapse of land into underground empty spaces created by the action of water on limestone or dolomite. This cause of loss does not include:

a. The cost of filling sinkholes; or

b. Sinking or collapse of land into manmade underground cavities.

2. Falling objects does not include loss or damage to:

a. Personal property in the open; or

b. The interior of a building or structure, or property inside a building or structure, unless the roof or an outside wall of the building or structure is first damaged by a falling object.

3. Water damage means accidental discharge or leakage of water or steam as the direct result of the breaking apart or cracking of a plumbing, heating, air conditioning or other system or appliance (other than a sump system), including its related equipment and parts, that is located on the described premises and contains water or steam.

Copyright, Insurance Services Office, Inc., 1993

# BUILDING AND PERSONAL PROPERTY COVERAGE FORM

Various provisions in this policy restrict coverage. Read the entire policy carefully to determine rights, duties and what is and is not covered.

Throughout this policy the words "you" and "your" refer to the Named Insured shown in the Declarations. The words "we", "us" and "our" refer to the Company providing this insurance.

Other words and phrases that appear in quotation marks have special meaning. Refer to SECTION H - DEFINITIONS.

A.   COVERAGE

We will pay for direct physical loss of or damage to Covered Property at the premises described in the Declarations caused by or resulting from any Covered Cause of Loss.

1.   Covered Property

Covered Property, as used in this Coverage Part, means the following types of property for which a Limit of Insurance is shown in the Declarations:

a.   Building, meaning the building or structure described in the Declarations, including:

1.   Completed additions;

2.   Permanently installed:

a)   Fixtures;

b)   Machinery; and

c)   Equipment;

3.   Outdoor fixtures;

4.   Personal property owned by you that is used to maintain or service the building or structure or its premises, including:

a)   Fire extinguishing equipment;

b)   Outdoor furniture;

c)   Floor coverings; and

d)   Appliances used for refrigerating, ventilating, cooking, dishwashing or laundering;

5.   If not covered by other insurance:

a)   Additions under construction, alterations and repairs to the building or structure;

b)   Materials, equipment, supplies and temporary structures, on or within one hundred (100) feet of the described premises, used for making additions, alterations or repairs to the building or structure;

b.   Your Business Personal Property located in or on the building described in the Declarations or in the open (or in a vehicle) within one hundred (100) feet of the described premises, consisting of the following unless otherwise specified in the Declarations or on the Your Business Personal Property Separation of Coverage form:

1)   Furniture and fixtures;

2)   Machinery and equipment;

3)   "Stock";

4)   All other personal property owned by you and used in your business;

5)   Labor, materials or services furnished or arranged by you on personal property of others; and

1 of 12

Copyright, ISO Commercial Risk Services, Inc.

1. Your use interest as tenant in improvements and betterments and fixtures, alterations, installations or additions:

   a. Made a part of the building or structure you occupy but do not own; and

   b. You acquired or made at your expense but cannot legally remove.

2. Personal Property of Others that is:

   a. In your care, custody, or control; and

   b. Located in or on the building described in the Declarations or in the open (or in a vehicle) within 100 feet (30.5 meters) of the described premises.

   However, our payment for loss of or damage to personal property of others will only be for the account of the owner of the property.

2. Property Not Covered

Covered Property does not include:

a. Accounts, bills, currency, food, stamps, deeds, evidences of debt, money, notes or securities;

b. Animals, unless owned by others and boarded by you, or if owned by you, only as "stock" while inside of buildings;

   Automobiles held for sale;

c. Bridges, roadways, walks, patios or other paved surfaces;

d. Contraband, or property in the course of illegal transportation or trade;

e. The cost of excavations, grading, backfilling or filling;

f. Foundations of buildings, structures, machinery or boilers if their foundations are below:

   1. The lowest basement floor; or

   2. The surface of the ground, if there is no basement;

g. Land (including land on which the property is located), water, growing crops or lawns;

h. Personal property while airborne or waterborne;

i. Pilings, piers, wharves or docks;

j. Property that is covered under another coverage form of this or any other policy in which it is more specifically described, except for the excess of the amount due (whether you can collect on it or not) from that other insurance;

   Retaining walls that are not part of the building described in the Declarations;

m. Underground pipes, flues or drains;

n. The cost to research, replace or restore the information on valuable papers and records, including those which exist on electronic or magnetic media, except as provided in the Coverage Extensions;

o. Vehicles or self-propelled machines (including aircraft or watercraft) that:

   1. Are licensed for use on public roads; or

   2. Are operated principally away from the described premises.

   This paragraph does not apply to:

   1. Vehicles or self-propelled machines or autos you manufacture, process or warehouse;

Copyright, ISO Commercial Risk Services, Inc.

(1) [illegible] and machines, other than autos, held for sale; or

(2) Foundations of contents not of water at the described premises;

(3) The following property, while outside of buildings:

- Grain, hay, straw or other crops;

- Fences, radio or television antennas, including their lead-in wiring, masts or towers, signs (other than signs attached to buildings), trees, shrubs or plants, all except as provided in the Coverage Extensions.

3.  Covered Causes of Loss

See applicable Causes of Loss Form as shown in the Declarations.

4.  Additional Coverages

a.  Debris Removal

(1)  We will pay your expense to remove the debris of Covered Property caused by or resulting from a Covered Cause of Loss that occurs during the policy period. The expenses will be paid only if they are reported to us in writing within one hundred eighty (180) days of the earlier of:

(a)  The date of direct physical loss or damage; or

(b)  The end of the policy period.

(2)  The most we will pay under this Additional Coverage is 25% of:

(a)  The amount we pay for the direct physical loss of or damage to Covered Property; plus

(b)  The deductible in this policy applicable to that loss or damage.

But this limitation does not apply to any additional debris removal limit provided in the Limits of Insurance section.

(3)  This Additional Coverage does not apply to costs to:

(a)  Extract "pollutants" from land or water; or

(b)  Remove, restore or replace polluted land or water.

b.  Preservation of Property

If it is necessary to move Covered Property from the described premises to preserve it from loss or damage by a Covered Cause of Loss, we will pay for any direct physical loss or damage to that property:

(1)  While it is being moved or while temporarily stored at another location; and

(2)  Only if the loss or damage occurs within ten (10) days after the property is first moved.

c.  Fire Department Service Charge

When the fire department is called to save or protect Covered Property from a Covered Cause of Loss, we will pay up to one thousand (1,000) dollars for your liability for fire department service charges:

(1)  Assumed by contract or agreement prior to loss; or

(2)  Required by local ordinance.

No Deductible applies to this Additional Coverage.

d.  Pollutant Clean Up and Removal

CP00101Ed 07 [illegible]
LX1213
Copyright, SS Commercial Risk Services, Inc.

...we restore your evidence to extent "accidental" loss and is noted at the described premises if the
expense, discharge or dispersal of the "pollutants" is caused by, or results from a Covered Cause of
Loss that occurs during the policy period. The expense will be paid only if they are reported to us in
writing within one hundred eighty (180) days of the earlier of:

a.    The date of discovery of actual loss or damage; or

b.    The end of the policy period.

The most we will pay for each location under this Additional Coverage is ten thousand (10,000) dollars
for the sum of all such expenses arising out of Covered Causes of Loss occurring during each sepa-
rate twelve (12) month period of this policy.

**5.    Coverage Extension**

If a percentage or a least the following Extensions apply to property located in or on the building de-
scribed in the Declarations or in the open (or in a vehicle) within one hundred (100) feet of the described
premises.

If a Coinsurance percentage of 80% or more or, a Value Reporting period symbol, is shown in the Decla-
rations, you may extend the insurance provided by this Coverage Part as follows:

a.    Newly Acquired or Constructed Property

i.    You may extend the insurance that applies to Building to apply to:

a.    Your new buildings while being built on the described premises; and

b.    Buildings you acquire at locations, other than the described premises, intended for:

i.    Similar use as the building described in the Declarations, or

ii.    Use as a warehouse.

The most we will pay for loss or damage under this Extension is 25% of the Limit of Insurance for
Building shown in the Declarations, but not more than two hundred fifty thousand (250,000) dollars
at each building.

b.    You may extend the insurance that applies to Your Business Personal Property, to apply to that
property at any location you acquire other than at fairs or exhibitions.

The most we will pay for loss or damage under this Extension is 10% of the Limit of Insurance
for Your Business Personal Property shown in the Declarations, but not more than one hundred
thousand (100,000) dollars at each building.

c.    Insurance under this Extension for each newly acquired or constructed property will end when
any of the following first occurs:

a.    This policy expires;

b.    Thirty (30) days expire after you acquire or begin to construct the property; or

c.    You report values to us.

We will charge you additional premium for values reported from the date construction begins or
you acquire the property.

b.    Personal Effects and Property of Others

You may extend the insurance that applies to Your Business Personal Property to apply to:

a.    Personal effects owned by you, your officers, your partners or your employees. This extension
does not apply to loss or damage by theft.

b.    Personal property of others in your care, custody or control.

Copyright, ISO Commercial Risk Services, Inc.

CP00107 04 881
(ISO)

The most we will pay for loss of or damage under this Extension is two thousand five hundred (2,500) dollars at each described premises. Our payment for loss of or damage to personal property of others will only be for the account of the owner of the property.

2. Valuable Papers and Records - Cost of Research

You may extend the insurance that applies to Your Business Personal Property to apply to your costs to research, replace or restore the lost information on lost or damaged valuable papers and records, including those which exist on electronic or magnetic media, for which duplicates do not exist. The most we will pay under this Extension is one thousand (1,000) dollars at each described premises.

3. Property Off-Premises

You may extend the insurance provided by this Coverage Form to apply to your Covered Property, other than "stock", that is temporarily at a location you do not own, lease or operate. This Extension does not apply to Covered Property:

1) In or on a vehicle;

2) In the care, custody or control of your salespersons; or

3) At any fair or exhibition.

The most we will pay for loss or damage under this Extension is five thousand (5,000) dollars.

4. Outdoor Property

You may extend the insurance provided by this Coverage Form to apply to your outdoor fences, radio and television antennas, signs (other than signs attached to buildings), trees, shrubs and plants, including debris removal expense, caused by or resulting from any of the following causes of loss if they are Covered Causes of Loss:

1) Fire;

2) Lightning;

3) Explosion;

4) Riot or Civil Commotion; or

5) Aircraft.

The most we will pay for loss or damage under this Extension is five thousand (1,000) dollars, but not more than two hundred fifty (1,250) dollars for any one tree, shrub or plant.

Each of these Extensions is additional insurance. The Additional Condition, Coinsurance, does not apply to these Extensions.

**B. EXCLUSIONS**

See applicable Causes of Loss Form as shown in the Declarations.

**C. LIMITS OF INSURANCE**

The most we will pay for loss or damage in any one occurrence is the applicable Limit of Insurance shown in the Declarations.

The most we will pay for loss or damage to outdoor signs attached to buildings is one thousand (1,000) dollars per sign in any one occurrence.

The limits applicable to the Coverage Extensions and the Fire Department Service Charge and Pollutant Clean Up and Removal Additional Coverages are in addition to the Limits of Insurance.

Payments under the following Additional Coverages will not increase the applicable Limit of Insurance:

1. Preservation of Property;

Copyright ISO Commercial Risk Services, Inc.

3. Debris Removal, but if

   a. The sum of direct physical loss or damage and debris removal expense exceeds the Limit of Insurance; or

   b. The debris removal expense exceeds the amount payable under the 25% limitation in the Debris Removal Coverage;

   we will pay up to an additional Five Thousand (5,000) dollars for each location in any one occurrence under the Debris Removal Additional Coverage.

b. **DEDUCTIBLE**

   We will not pay for loss or damage in any one occurrence until the amount of loss or damage exceeds the Deductible shown in the Declarations. We will then pay the amount of loss or damage in excess of the Deductible plus up to the applicable Limit of Insurance.

E. **LOSS CONDITIONS**

   The following conditions apply in addition to the Common Policy Conditions and the Commercial Property Conditions:

   1. Abandonment

      There can be no abandonment of any property to us.

   2. Appraisal

      If we and you disagree on the value of the property or the amount of loss, either may make written demand for an appraisal of the loss. In this event, each party will select a competent and impartial appraiser. The two appraisers will select an umpire. If they cannot agree, either may request that selection be made by a judge of a court having jurisdiction. The appraisers will state separately the value of the property and amount of loss. If they fail to agree, they will submit their differences to the umpire. A decision agreed to by any two will be binding. Each party will:

      a. Pay its chosen appraiser; and

      b. Bear the other expenses of the appraisal and umpire equally.

      If there is an appraisal, we will still retain our right to deny the claim.

   3. Duties In The Event Of Loss Or Damage

      a. You must see that the following are done in the event of loss or damage to Covered Property:

      a. Notify the police if a law may have been broken.

      b. Give us prompt notice of the loss or damage. Include a description of the property involved.

      c. As soon as possible, give us a description of how, when and where the loss or damage occurred.

      d. Take all reasonable steps to protect the Covered Property from further damage by a Covered Cause of Loss. If feasible, set the damaged property aside and in the best possible order for examination. Also keep a record of your expenses for emergency and temporary repairs, for consideration in the settlement of the claim. This will not increase the Limit of Insurance.

      e. At our request, give us complete inventories of the damaged and undamaged property. Include quantities, costs, values and amount of loss claimed.

      f. Permit us to inspect the property and records proving the loss or damage.

      Also permit us to take samples of damaged property for inspection, testing and analysis.

Copyright ISO Commercial Risk Services, Inc.

[illegible]

[illegible] Commercial Property [illegible]

[illegible]

[illegible] the Declarations, the following condition applies [illegible]

[illegible] the value of Covered Property at the time of loss times [illegible] is greater than the Limit of Insurance for [illegible]

[illegible]

[illegible] Coinsurance percentage;

[illegible] determined in step (1);

[illegible] deductible by the [illegible]

[illegible]

[illegible] the remainder, [illegible] either have to [illegible] the loss yourself.

| | |
|---|---|
| Example [illegible] | $250,000 |
| [illegible] | 80% |
| [illegible] | $100,000 |
| [illegible] | $250 |
| [illegible] | $40,000 |

[illegible] = $200,000 [illegible] insurance to meet your [illegible] requirement)

Step [illegible] $200,000 = [illegible]

Step 3: [illegible] = $20,000

Step 4: [illegible] = $19,750

[illegible] the remaining $20,250 [illegible]

| | |
|---|---|
| Example [illegible] | $250,000 |
| [illegible] | 80% |
| [illegible] | $200,000 |
| [illegible] | $250 |
| [illegible] | $40,000 |

Step [illegible] = $200,000 [illegible] amount of insurance to meet your [illegible] requirement)

Step [illegible] $200,000 = [illegible]

Step [illegible]

[illegible]

[illegible] limit of insurance [illegible] buildings [illegible]

[illegible] apply to the total [illegible]

[illegible]

[illegible] | $75,000
[illegible] Location No. 1 | $100,000
[illegible] Location No. 2 | $75,000
[illegible] at Location No. 2 | $150,000

[illegible] coverage [illegible] | 80%

[illegible] for Buildings and Personal Property [illegible] | $150,000
[illegible] | $1,000
[illegible] | $30,000
[illegible] Building at Location No. 2 | $20,000
[illegible] at Location No. 2 | $50,000

Step [illegible] $125,000 [illegible] the minimum amount of insurance to meet your [illegible] coinsurance requirements and to avoid the penalty shown below.

Step [illegible] $125,000 × 80 [illegible]

Step [illegible] = $40,000

Step [illegible] $1,000 = $39,000

[illegible] $39,000. The remaining [illegible] is not covered.

3. Mortgage Holders

a. The term mortgage holder includes trustee.

b. [illegible] damage to buildings or structures to each mortgage holder shown in the Declarations in their order of precedence, as interests may appear.

The mortgage holder [illegible] right to receive loss payment even if the mortgage holder has started foreclosure [illegible] on the building or structure.

c. [illegible] because of your acts or because you have failed to comply with the terms of this Coverage Part, the mortgage holder will still have the right to receive loss payment if the mortgage holder:

1. Pays any premium due under this Coverage Part at our request if you have failed to do so;

2. Submits a signed, sworn statement of loss within sixty (60) days after receiving notice from us of your failure to do so; and

3. Has notified us of any change in ownership, occupancy or substantial change in risk known to the mortgage holder.

All of the terms of this Coverage Part will then apply directly to the mortgage holder.

d. If we pay the mortgage holder for any loss or damage and deny payment to you because of your acts or because you have failed to comply with the terms of this Coverage Part:

Copyright, ISO Commercial Risk Services, Inc.

[illegible]

H. DEFINITIONS

1. "Pollutants" [illegible] contaminant, including smoke, vapor, [illegible] chemicals and waste. Waste includes materials to be recycled, reconditioned or reclaimed.

2. "Stock" [illegible] storage [illegible] materials and in process or finished goods, [illegible] shipping.

[illegible]

BUILDING REDEVELOPABLE COVERAGE FORM

A. COVERAGE

1. BUILDING

2. PROPERTY NOT COVERED

3. COVERED CAUSES OF LOSS

4. ADDITIONAL COVERAGE - COLLAPSE

5. COVERAGE EXTENSIONS

ACCOUNTS RECEIVABLE AND RECORDS COVERAGE FORM

Various provisions in this policy restrict coverage. Read the entire policy carefully to determine rights, duties, and what is and is not covered.

Throughout this policy the words "you" and "your" refer to the Named Insured shown in the Declarations. The words "we", "us" and "our" refer to the Company providing this insurance.

Other words and phrases that appear in quotation marks have special meaning. Refer to Section F. DEFINITIONS.

## A.   COVERAGE

We will pay for "loss" to which this insurance applies if such loss is the result of any of the Covered Causes of Loss.

1.   COVERED PROPERTY, as used in this Coverage Form, means "accounts receivable" and records" that are your property or property of others in your care, custody or control.

2.   PROPERTY NOT COVERED

Covered Property does not include:

a.   Property covered in more detail under this or any other policy or Coverage Form. Such property shall not be considered as covered under this Coverage Form.

b.   Contraband, or property in the course of illegal transportation or trade.

c.   Property that you sell or deliver to customers away from the Described or Covered Premises.

d.   Contraband, or property in the course of illegal transportation or trade.

3.   COVERED CAUSES OF LOSS

Covered Causes of Loss mean RISKS OF DIRECT PHYSICAL "LOSS" to Covered Property, except those causes of "loss" listed in the Exclusions.

4.   ADDITIONAL COVERAGE — COLLAPSE

We will pay for direct physical "loss" resulting from risks of direct physical "loss" involving a collapse of a building or any part of a building caused only by one or more of the following:

a.   The collapse of a building or any part of a building caused by hidden decay; hidden insect or vermin damage; weight of people or personal property; weight of rain that collects on a roof; or use of defective material or methods in construction, remodeling or renovation if the collapse occurs during the course of construction, remodeling or renovation, all only as covered in this Coverage Form.

b.   Hidden decay.

c.   Hidden insect.

d.   Weight of people.

e.   Weight of rain that collects on a roof.

f.   Use of defective material or methods in construction, remodeling or renovation if the collapse occurs during the course of the construction, remodeling or renovation.

This Additional Coverage does not increase the Limits of Insurance included in this Coverage Form.

5.   COVERAGE EXTENSIONS

a.   Removal

If you give us notice within 10 days of removal of your "valuable papers and records" because of imminent danger of "loss" we will pay for "loss" while it is:

(1)   At a safe distance from the described premises; and

Copyright, Insurance Services Office, Inc.

TRANSPORTATION FORM

Inland Marine

THIS POLICY DOES NOT INSURE:

5. VALUATION:

6. PREMIUM AND ADJUSTMENT — REPORT OF SHIPMENTS:

7. CLAIM AGAINST...

9. DEDUCTIBLE:

CONDITIONS

10. OTHER INSURANCE:

ENDORSEMENT # 37

This endorsement [...]

Forms part of [...]

Issued to: [...]

By: ALLIED WORLD [...]

## EXCESS FOLLOWING INSURANCE ENDORSEMENT

[...]

ITEM 4. [...]                                    [...]

$10,000,000 [...]                               [...] as

25% [...]                                        [...]

[...]exces [...]                                 [...] as 0% Our

Percentage                                       [...]

1. The [...]                                     [...]

2. The Follow [...]                              [...] Our Percentage

   percentage of [...]                           [...] the same content.

3. Subject to [...]                              [...] is limited to our

   percentage [...]                              [...] this contribute to the

   [...]

A. other terms [...]                             [...]



Authorized Representative OR
(Countersignature in states where applicable)

[...]

ENDORSEMENT # ___

This endorsement ___

Forms a part of ___

Issued to: ___

By: ALLIED ___

## EARTHQUAKE ENDORSEMENT

In consideration ___ it is understood and agreed that
Paragraph B.8. ___ Earth Movement of CAUSES OF LOSS - SPECIAL FORM,
CP 1030 ___

1. Earth ___

___ on any one loss payable amount to owner, such as landslide,
___ But loss or damage by fire or explosion resulting ___

___ loss ___ such loss or damage.

___ deductible are based on ___

A. ___ the liability of the Company for loss or
damage ___ volcanic eruption shall not exceed the sum of
$25,000 ___ the insured location. Notwithstanding the
___ liability shall not exceed the sum of $25,000.00
___ volcanic eruption loss nor shall it exceed the sum of
___ volcanic eruption loss per policy period, whichever is less, commencing ___
$25,000.00 ___ by each loss location located in California, Hawaii, Alaska & Puerto Rico ___

B. DEDUCT ___ be deducted from any adjusted loss.

2. Each loss by earthquake ___ constitute a single claim hereunder, provided
that ___ volcanic eruption shall occur within any period of 72
hours during a term of this ___ such shocks shall be considered to constitute a single
earthquake or volcanic ___

3. If the coverage ___ endorsement is attached includes both Property Damage
and Business Interruption ___ limits shall be the maximum amounts collectible under this
policy for loss ___ from the perils described in Paragraph 1. A. above, regardless
of whether such loss ___ damage alone or both Property Damage and Business
Interruption.

[signature]

___
Authorized Representative OR
Countersignature (in states where applicable)

PR9028.01 10
1/1/93

[illegible]

[illegible]

[illegible]

[illegible]

[illegible]

## [illegible] BREAKDOWN ENDORSEMENT

[illegible] resulting from an "accident" to "covered equipment" [illegible]

[illegible] including electrical [illegible] that disrupts electrical current [illegible]

[illegible] steam piping, steam engines or steam turbines caused by or resulting [illegible]

[illegible] steam engines or steam turbines caused by or [illegible] such equipment; or [illegible] water heating equipment caused by or resulting [illegible]

[illegible] distortion or corruption of any computer data [illegible]

[illegible] caused by or resulting from an "accident" to "covered [illegible] additional amounts of insurance [illegible]

[illegible] the extra cost to make temporary repairs and to [illegible] permanent replacement of damaged covered property. The [illegible] Expense resulting from an "accident" to "covered [illegible] Equipment Breakdown Schedule.

[illegible] the additional cost to repair or replace covered property [illegible] hazardous substance. This includes the additional expenses to [illegible] hazardous substance means any substance other than [illegible] as hazardous to health by a governmental agency. [illegible] that which would have been required had no hazardous substance [illegible]

[illegible] loss or damage under this coverage, including actual loss of [illegible] necessary Extra Expense incurred, loss of Rental Value and [illegible] $100,000, unless otherwise shown in the Equipment Breakdown [illegible] the policy for decontamination or pollutant cleanup [illegible] the form to which this endorsement is [illegible] Substances coverage.

[illegible] Spoilage

[illegible]

Authorized Representative OR
Agent Signature (in states where applicable)

Authorized Representative CR
(or signature in states where applicable)

ENDORSEMENT # [illegible]

This endorsement, [illegible]

Forms a part of [illegible]

Issued to: [illegible]

By: ALLIED [illegible]

FLOOD ENDORSEMENT

1. [illegible] ALLIED [illegible] agreed that the following [illegible]

[illegible]

[illegible] and [illegible] through [illegible]

[illegible] caused by flood [illegible] shall pay for that [illegible]

[illegible] deductible as follows:

A. [illegible] the Company for loss [illegible] resulting from flood (meaning rising water, surface water, tidal [illegible] the overflowing or breaking of boundaries) of [illegible] streams and similar bodies of water whether [illegible] from any of the foregoing shall not exceed the sum [illegible] location. Notwithstanding the limit of liability [illegible] not exceed the sum of $25,000,000 in any single one [illegible] loss, commencing 12/31/2004. This policy [illegible] located within Special Flood Hazard Areas (SFHA) [illegible] defined by the Federal Emergency Management Agency.

B. [illegible] shall be deducted from any adjusted claim due to [illegible]

2. If the coverage [illegible] is attached includes both Property Damage and Business [illegible] shall be the maximum amounts collectible under this policy for [illegible] described in Paragraph A above, regardless of whether the [illegible] of both Property Damage and Business Interruption.

[signature]

Countersignature (in states where applicable)

PRF [illegible]
[illegible]

[illegible]

This end[illegible]

Forms a par[illegible]

Issued to [illegible]

By [illegible]

TH[illegible] POLICY. PLEASE READ IT CAREFULLY.

[illegible] EXCLUSION

[illegible]

The Com[illegible] damage [illegible] arising out of, contributed to, or resulting fr[illegible] produced by or emanating from [illegible]

[illegible] belonging to the [illegible] molds and mushrooms [illegible]

[illegible]

[illegible]

[illegible] to such loss.

[illegible] of the Policy remain the same.

Authorized Representative OR
Countersignature (In states where applicable)

[illegible]

ADDITIONAL INSURED ENDORSEMENT

Named Insured

... ENTITIES, DIVISIONS OR OTHER
INTERESTS ... TO JOINT VENTURES, PARTNER-
SHIPS, INC... THIS AND ... INTERESTS OF THE INSURED BUT SOLELY AS
RESPECTS THE ... NAMED INSURED AND INCLUDING
AUTOMATIC... PARENT, TRUST, AFFILIATED,
SUBSIDIARY ... PANIES OR CORPORATIONS, OWNER(S),
ENTITY OR ... NAMED INSURED WHICH EITHER HAS EXISTED,
EXISTS NOW, ... E, AS THEIR RESPECTIVE RIGHTS
AND INTEREST ... APPEAR.

Authorized Representative OR
Countersignature (in states where applicable)

[illegible] SEMENT [illegible]

[illegible] FAILURE DIRECT DAMAGE)

SCHEDULE

| | | | | |
|---|---|---|---|---|
| [illegible] | [illegible] | [illegible] | [illegible] | [illegible] Form Applicable |
| | | X | X | CP1030 ✓ |

[illegible] DISTRIBUTION LINES
[illegible] DEFINING THE COVERED EVENT

[illegible] Property caused by the interruption of service to the [illegible] from direct physical loss or damage by a Covered Cause [illegible] premises, indicated by an "X" in the Schedule [illegible]

[illegible] supplying water to the described [illegible]

[illegible] services, including [illegible] the described premises such as:

Authorized Representative OR
Countersignature (in states where applicable)

Authorized Representative OR
Countersignature (In states where applicable)

ENDORSEMENT

This Church, the General, District, Field, National Fire, Lightning
excluded for the
Earthquake, Sinkhole, Cave in, Flood, Windstorm or Tempest

Authorized Representative OR
Signature (in states where applicable)

[illegible] COVERAGE ENDORSEMENT

[illegible]

AS PER SCHEDULE [illegible]

Property Covered [illegible]
Replacement Cost Basis
REAL & PERSONAL PROPERTY

[illegible] TIME ELEMENT)

1. [illegible] of this policy are amended to substitute [illegible] (or replacement) for the term "actual cash value" [illegible] Coinsurance Clause of this endorsement if applicable [illegible] Clauses otherwise applicable. Subject in all [illegible] of the Valuation Clause of this policy.

2. This [illegible] cost basis

a. [illegible] payment.

b. [illegible]

c. [illegible] manuscripts, drawings, data [illegible] and other magnetic re[illegible]

d. [illegible] furniture, rare [illegible] or other articles of art, rarity [illegible]

e. [illegible] equipment, all whether [illegible]

3. The [illegible] loss and until the damaged [illegible] with due diligence and dispatch.

This endorsement...

Premium basis...

Issued to: within...

By: ALLIED AM...

## TERRORIST EXCLUSION

It is hereby...
may be in the...
the policy, subject...

The policy...
(graduated to...)
intended to...
jurisdiction...

1) any injury...
an individual...

a) by any...
acting...

...

c) any...
war or...

b) resulting...
authority...
restrictin...

4) any riot...
covering...

5) repairs...
including...
commercial...

Such loss...
sent to/from...

Terrorist acts...
violence against...
coercing, such...

As otherwise...

Authorized Representative OR
No signature in states where applicable

[illegible]

[illegible] ENDORSEMENT

[illegible] caused by [illegible] processing equipment, media [illegible] or similar device, [illegible] occurring before, [illegible]

[illegible] calendar date;

[illegible] any data or information [illegible] date other than the true calendar date;

[illegible] operation of any command [illegible] a command which causes the [illegible] such data on or after [illegible]

[illegible] modification of any part of an [illegible] deficiencies or features of [illegible]

[illegible] Damage or Consequential Loss arising from [illegible] consultation, design, evaluation, inspection, [illegible] by the Insured or for the Insured or by or for [illegible] failure, malfunction or inadequacy [illegible]

[illegible] A, B, or C [illegible] regardless of any [illegible]

[illegible] Damage or Consequential Loss, not otherwise [illegible] Defined Peril shall mean fire, lightning, explosion, [illegible] hurricane, cyclone, riot, strike, [illegible] tsunami, freeze or weight of [illegible] mechanical and electrical [illegible]

[illegible]

AUTHORIZED REPRESENTATIVE

[illegible] where applicable)

Exhibit 3

washingtonpost.com

# AIG's Other Reputation

Some Customers Say the Insurance Giant Is Too Reluctant to Pay Up

By Dean Starkman
Washington Post Staff Writer
Sunday, August 21, 2005; F01

When his pickup truck developed engine trouble a few years ago, Anthony A. Stankus filed a claim under an auto warranty he had bought from a unit of insurance giant American International Group Inc.

Soon the Phoenix consultant got his answer. Claim denied.

Most policyholders would have left it at that. But Stankus sued -- and won a rare look at the internal claims-handling practices at the world's largest insurance company.

As it turns out, AIG was losing more than $210 million on auto-warranty claims, provoking the ire of the company's longtime chairman and chief executive, Maurice R. "Hank" Greenberg, according to court documents. As a result, in mid-1999, a newly installed team at AIG's auto-warranty division began to reject thousands of claims -- including half of the claims that its own contractor, a claims-handling company, recommended be paid, according to court papers. Stankus's claim was among them.

Any modification to a car could be used as a reason to reject, Richard John Jr., a former senior vice president of the claims-handling company, Mechanical Breakdown Administrators Inc. of Scottsdale, Ariz., testified -- even installing manufacturer-approved new tires or, in Stankus's case, a trailer hitch. When John protested, he said an AIG official told him, " 'We are losing X number of million dollars a year on these programs, and we've got to do something.' "

AIG has declined to discuss individual lawsuits. But Charles R. Schader, AIG's senior vice president for claims, said the company never denies claims to boost profitability. He said that -- allowing for an occasional mistake -- AIG pays legitimate claims promptly and gets few complaints.

"If we didn't pay claims, including the large ones, we'd be out of business," Schader said.

These days AIG is on the defensive. New York Attorney General Eliot L. Spitzer has accused the New York insurance behemoth, Greenberg and another top former official of engaging in a "pattern of fraud" against investors and regulators since at least the 1980s, concocting sham transactions to falsely boost reserves, hiding control of offshore insurance companies, disguising underwriting losses as investment losses and more.

Federal prosecutors, meanwhile, are probing whether AIG and other insurers misused a specialized financial product that makes public companies' books look better -- all to fool investors.

But the loudest complaints about AIG over the years have come not from investors but from AIG customers. Consumer advocates, former customers and their lawyers gripe that AIG has routinely flouted its obligations under state insurance laws to pay legitimate claims promptly and has abused the legal system in fights with customers who sue.

Metro-Goldwyn-Mayer Studios Inc., for instance, accused an AIG unit of "pulling the rug" out from under a policy to defend the studio against lawsuits on the eve of a critical trial over ownership of the James Bond movie franchise. The two sides settled at the end of 2002 after a California state court judge found that the AIG unit had wrongfully dropped the coverage.

Eugene R. Anderson, a New York policyholders lawyer and longtime AIG nemesis, says the company's business strategy is simple: "Just say no."

Surprisingly little information is available about claims-handling in the $1.3 trillion property- and casualty insurance industry. Under a patchwork system of state regulation, companies are not required to disclose how frequently they deny claims, the reasons for doing so or how often they are sued by customers for failing to pay legitimate claims promptly.

Certainly, AIG isn't the only target of insurance industry critics, who say problems in claims-handling are increasing generally. They point to cases in which courts have found that insurers committed systemic claims-handling abuses or used improper legal tactics to grind down customers who sue.

Last year, the U.S. Court of Appeals for the 9th Circuit in San Francisco upheld a federal magistrate who wrote that UnumProvident Corp. had implemented a "company-wide scheme to terminate expensive disability claims to increase profits." The trial judge in the case, U.S. Magistrate Judge James Larson, in a 2002 ruling cited evidence that, beginning in the mid-1990s, the Chattanooga, Tenn., benefits insurer convened "roundtable" meetings, usually held after hours, to target expensive claims for termination, with each executive bringing a "Top 10" list based on the size of the payout.

The judge found that the company impeded Joan Hangarter, a Marin County, Calif., chiropractor, in the pursuit of her claims through, among other things, a document-shredding program. The ruling upheld $5 million in punitive damages awarded to her.

A UnumProvident spokeswoman said the company strongly disagrees with the courts' ruling and denies wrongfully turning down the claim, as well as the existence of improper "roundtable" meetings, a shredding program or systemic problems, generally. She pointed to an examination report on the company's claims-handling practices overseen by the insurance commissioners of Massachusetts, Maine and Tennessee that found only "areas of concern," but no violations of law or claims regulations.

Also last year, the California Supreme Court upheld an $8.5 million award, including $5 million in punitive damages, against Allstate Insurance Co., finding that the Northbrook, Ill., company "exploited its knowledge" of a couple's "perilous financial condition" to drag out a homeowner's claim and force a settlement. The court said the trial turned up evidence that Allstate's offer of $7,000 for the house's contents -- the couple had claimed $45,000 -- "conformed to a standard amount it used to minimize its payouts in similar cases."

An Allstate spokesman said the company was "disappointed" with that verdict. "We're focused on delivering a superior customer experience," he said, adding that the company is obligated to investigate some claims to keep costs down for other policyholders.

Robert Hartwig, chief economist for the Insurance Information Institute, a Washington trade group, strongly disagrees that disputes between insureds and insurers are growing and says the industry is no more at odds with customers than are other industries. Hartwig said U.S. insurers sometimes fight policyholders because an increasingly sophisticated plaintiffs' bar has worked to broaden coverage of asbestos, mold, pollution and other liabilities in ways never contemplated by insurers. Unforeseen liabilities -- and lenient claims handling -- have sunk dozens of insurers in recent years, including Kemper, Reliance and other familiar names, industry defenders say.

But AIG has long stood out. Five times as large as its nearest competitor, it is also the industry's most successful and influential company. AIG shares have returned a stunning 4,800 percent over the past three decades, far better than its peers and five times better than the Dow Jones industrial average. Its many innovations -- from new products to claims handling -- have been widely imitated, insurance brokers and competitors say.

The company's unique and admittedly hard-nosed culture is a legacy of Greenberg, who took over as chief executive in 1967 and was famous for stressing discipline in underwriting -- the ability to collect more in premiums than is paid in claims -- while other insurers relied on investments. "If you don't make a profit in your basic business, which is underwriting, you won't make a profit for very long," Greenberg said in a 1992 Crain's Business Insurance article

Unlike the rest of the industry, AIG has turned an underwriting profit nearly every year during the past 25 years and in 2003 posted its best-ever performance, paying out only 92.43 cents in claims and expenses for every $1 in premiums, or below the industry average of 99%, the industry's lowest mark in years.

Greenberg recently resigned under pressure from state and federal probes of the company's accounting practices. A spokesman for Greenberg's lawyers declined to comment

AIG officials point out that the company's underwriting record has come from its lower operating expenses, not claims, which, they note, are sometimes near or even above industry averages.

Litigation over the years has offered glimpses into the company's tightfisted culture. In a 2001 affidavit, a former claims supervisor in AIG's San Francisco office alleged in an employment case that beginning in 1983 or 1984, AIG adopted what employees called a "slow-pay" system for claims.

Robert Cook, a supervisor from 1978 to 1985, said that under an AIG "check-retention policy," checks owed insureds, vendors and others were simply locked in a safe until payees complained. Cook said AIG created an internal form to keep track of complaints. Even then, Cook said, he had to cajole the regional manager, Robert C. Davidson, with special "buzzwords" to convey the urgency of the complaint.

Other slow-pay techniques, Cook said, using second-class mail, writing checks for West Coast claimants on East Coast banks and making executives rewrite reports "again and again for no reason." Cook died in 2003. The employment case was settled. Davidson, in a brief interview, said the policy "came from New York, and all we did was implement it, even though we didn't appreciate it." He declined to comment further.

In part, AIG's reputation comes from its massive size and its unique business model -- taking on the most complex risks in the most far-flung parts of the globe. It insures theme parks, liquor makers, contractors in Iraq, industrial companies with big pollution exposure, even executives at risk of kidnapping.

Schader says AIG's reputation of being tough on policyholders' claims is unwarranted. He says AIG over the years has bulked up its claims-handling expertise and now has fewer disputes with customers, not more, and that only a handful -- far less than one-tenth of 1 percent -- of the 800,000 claims now pending against the company involve actual bad-faith suits brought by customers.

And the number of policyholder lawsuits against the company is dwarfed, AIG says, by thousands of examples of exceptional claims-handling service it performs. In one instance, when an iron beam fell from a crane at a Sacramento construction site three years ago, seriously injuring a worker, the crane's owner, Maxim Crane Works L.P. turned to AIG, which last year paid out $12.5 million under an excess-casualty policy. "They wrote the check and were very good about it," said Ron Marmo, a vice president with the Bridgeville, Pa., crane-rental company

Claims that do end in litigation, though, are often hard-fought. AIG's policyholders routinely wage years-long court fights to learn how the insurer handled similar claims and to obtain seemingly mundane claims documents, such as company training manuals for claims handlers.

This spring a federal judge in Indianapolis issued a rare sanctions order against an AIG unit for unfairly blocking discovery in a case brought by a manufacturer whose environmental claim was denied. U.S. District Judge Richard

AIG's Unfair Reputation

Young wrote that the insurer's lawyers made "unwarranted" objections and gave instructions not to answer 339 times during the 284-page deposition of an AIG unit executive.

Most of AIG's squabbles with customers are settled and the terms kept secret. That also happened two years ago when RSR Corp., a Dallas smelting company, settled an environmental claim with an AIG unit and other insurers. "It took 15 years," says William Brewer, a Dallas lawyer for RSR. "They're shameless."

Back in 2000, a case did go to trial, and a federal court jury in Hartford awarded corporate giant United Technologies Inc. $35 million in punitive damages, later reduced to $13 million, against an AIG unit, finding it had handled another environmental claim in bad faith.

In a decision upholding the award, U.S. District Judge Janet Bond Arterton wrote that the AIG unit had "shunted" UTC's claims into "limbo," a "netherworld of non-processing," and simply didn't respond for years, asking for more and more information while it "investigated" the claim. When UTC finally sued for an answer, the claim was denied.

The "obvious" motive was to hold onto the money as long as possible, she wrote. "Delay . . . would naturally result in defendant's retaining control over huge sums with the resulting investment-profit benefit," she wrote.

AIG's Schader points out, "We have 10,000 people handling claims. Are there cases where people go over the line? People make mistakes." He added, "It's our objective to have very, very few of these."

*Staff researcher Richard Drezen contributed to this report.*

© 2005 The Washington Post Company

Exhibit I

Buchanan Ingersoll & Rooney PC

Stuart P. Slotnick
212 440 4425
stuart.slotnick@bipc.com

620 Eighth Avenue, 23rd Floor
New York, NY 10018

T 212 440 4400
F 212 440 4401

www.buchananingersoll.com

June 13, 2008

<u>VIA FACSIMILE & FIRST CLASS MAIL</u>
Mr. Matthew Herrington
Steptoe & Johnson LLP
1330 Connecticut Ave NW
Washington, DC 20036
Tel 202-429-8014
Fax 202-261-0577

Re:    Wynn v. Lexington Insurance and Allied World Company, US, Inc.

Dear Mr. Herrington:

As you know, we represent Plaintiffs in the above-referenced action. To date, defendants in the above-referenced action have paid $810,066.70 to the insured out of a claim in excess of $3,000,000.00.

On behalf of the insureds, the Plaintiffs in the in the above-referenced action, we demand that the insurer, the Defendants in the above-referenced action, immediately itemize the payments made to date with a reasonable explanation of those payments. We further demand that Defendants immediately explain which portion of the claim has been denied or disclaimed by Defendants and the basis for such determination.

We would request that Defendants specify the dollar amount of the payments that were allocated to loss and costs relating to each of the following:

1.    Initial Remediation;
2.    Preliminary Demolition;
3.    Final Demolition;
4.    Slab Repair Floor Leveling Compound;
5.    Stone Window Sills and Vanity Tops;
6.    Metal Studwork and, Rough Blocking and Framing;
7.    Wood Trims and Baseboard;
8.    Custom Cabinetry Casework Ceiling Millwork;
9.    Doors and Associated Hardware;
10.    Drywall and Shim Coating;
11.    Painting;

Matthew Herrington, Esq
June 23, 2003
Page - 2 -

    12.    Wallcoverings and Blinds;
    13.    Carpeting;
    14.    Stone Floor Tile;
    15.    Hardwood Flooring;
    16.    Specialties (i.e. bath accessories, shelves, closet rods and mirrors);
    17.    Plumbing;
    18.    Heating, Ventilating and Air Conditioning Ductwork, Registers, Insulation and
           Cleaning
    19.    Lighting;
    20.    Electrical Distribution and Devices;
    21.    Smart House System, Audio-Visual and stereo Components;
    22.    Professional Design Fees; and
    23.    Supervision and Contractors General Requirements, Overhead and Profit.

We look forward to the insurer's prompt response.

                                   Sincerely,

                                   _____ F. Slotnick, Esq

cc     Barry I. Slotnick, Esq

Exhibit 5

Buchanan Ingersoll & Rooney PC

600 Eighth Avenue  22nd Floor
New York, NY 10018

Stuart P. Slotnick
212 440 4435
stuart.slotnick@bipc.com

T 212 440 4400
F 212 440 4401

www.buchananingersoll.com

August 8, 2008

## VIA EMAIL, FACSIMILE & FIRST CLASS MAIL

Mr. Christopher J. Marino, Esq.
Steptoe & Johnson LLP
750 Seventh Avenue
New York, New York 10019
Fax: (212) 506-3950

Re:    *Byco, et al. v. Lexington Insurance Co. and Allied World Assurance Co.*
(US), Inc., 07 CV 7604 (NRB)(MHD)

Dear Mr. Marino:

We represent Plaintiffs in the above-referenced action. We are in receipt of
Defendants' letter dated July 16, 2008 in response to our demands for, *inter alia*, a detailed
itemization and explanation of payments made (and not made) to date, as well as explanations of
portions of Plaintiffs' claims that were denied. By and large, Defendants' enclosures, annexed to
your letter, of past submissions of general and unspecified adjustments and proposed payment
amounts lacked itemization and explanation of the insurers' payments or significant lack thereof.
We do note that the explanation of payment of $602,001.10 in Fred Modlin's July 13, 2007 letter
consisted of $592,786.75 for "[c]arpet and wall coverings supplemental," which leaves only a
few hundred thousand dollars of the total amount paid on the claim to date to be allocated to the
massive demolition, renovation and replacement of items destroyed during and after the flood.
For the reasons set forth below, Defendants' response, which failed to provide any new
information, is demonstrative of the insurers' continued bad-faith, is wholly unsatisfactory and
unresponsive and fails to comply with 11 N.Y.C.R.R. §216 et seq., Insurance Law §2601 as well
as the insurers' general obligations to their insured. Accordingly, we hereby reiterate our
demands for information as specifically outlined in our letter of June 23, 2008.

Although Defendants' Enclosure 1, containing a spreadsheet of early proposed
adjustments provides *some* level of itemization with adjuster's comments, such information, as
Defendants are fully aware, was limited only to the initial remedial work performed by Tishman
Construction. Further, the adjusters' comments were sparse, if not entirely lacking, thereby
providing no reasonable explanation of why specified costs as listed in the column entitled
"Description" of the spreadsheet were not covered by Defendants.

New York   Pennsylvania   Washington, DC   Virginia   Florida   New Jersey   Delaware   California

Christopher J. Martin, Esq.
August 8, 2008
Page - 2 -

Defendants Enclosures 2 and 3 are altogether unresponsive to the demands set forth in Plaintiffs' June 23, 2008 letter. The attachment of unexecuted and executed Proofs of Loss Statements for $108,565.61, provide only a lump sum amount, and certainly do not contain any information or explanation on how the lump sum was specifically allocated. Nor does the revised "Statement of Loss," annexed to Enclosure 2, provide any itemization of payments and corresponding explanations.

Likewise, Defendants' Enclosure 4 is largely unresponsive to Plaintiffs' demands. For example, while the Enclosure provides that an additional $592,796.75 was allocated toward "matching carpet and wall coverings," there remains no itemization and explanation of any remaining costs. Furthermore, you attached a "Statement of Loss" that indicates that no payment at all was made in connection with $2,624,709.03, the total amount "submitted" for "[v]arious other personal property building items," and absolutely no explanation was provided detailing the denial of this amount. The insurer's explanation that the "insurers feel no payment is warranted under the terms of their insurance policies as a result of the water damage loss on any other items" is grossly deficient and fails to even attempt explain to the insured why his claims are rejected after payment of substantial premiums.

In light of Defendants' deficient response, Plaintiffs repeat and reiterate their demands for an immediate itemization of payments made to date and a reasonable explanation of those payments, along with an explanation of each portion of the claim that has been denied or disclaimed. Plaintiffs refer Defendants to the list of items provided in Plaintiffs' June 23, 2008 letter regarding the requested breakdown of costs. Moreover, in an attempt to further assist Defendants in this process, Plaintiffs have annexed hereto a spreadsheet of line items for which Plaintiffs' demand that Defendants provide an explanation of which line-items have been paid, partially paid or denied -- and an explanation for partial payment or non-payment.

Your failure to comply with the insured's request is yet another example of the insurer's bad-faith and will result in the insured incurring additional unnecessary legal fees.

We look forward to your cooperation and prompt response to these matters.

Sincerely,

Stuart P. Slotnick, Esq.

Enclosure
cc:    Barry I. Slotnick, Esq.

New York    Pennsylvania    Washington DC    Virginia    Florida    New Jersey    Delaware    California

Exhibit 6

Buchanan Ingersoll & Rooney PC

Attorneys & Government Relations Professionals

Stuart P. Slotnick
212 440 4435
stuart.slotnick@bipc.com

400 Eighth Avenue, 23rd Floor
New York, NY 10018
T 212 440 4400
F 212 440 4401
www.buchananingersoll.com

August 27, 2008

### VIA EMAIL, FACSIMILE & FIRST CLASS MAIL

Christopher J. Marino, Esq.
Steptoe & Johnson LLP
750 Seventh Avenue
New York, New York 10019
Fax: (212) 506-3950

Matthew Herrington, Esq.
Steptoe & Johnson LLP
1330 Connecticut Ave NW
Washington, DC 20036
Fax: (202) 261-0577

> Re:    *Wynn, et al. v. Lexington Insurance Co. and Allied World Assurance Co.*
> *(US) Inc.*, 07 CV 7604 (NRB)(MHD)

Dear Messrs. Marino and Herrington:

As you know, we represent Plaintiffs in the above-referenced action. We again write to request that your clients, the defendant-insurers provide an explanation of the claims paid, denied and the reason for failing to fully cover the Wynn claim. As you know, on behalf of the insured, we most recently submitted this request by letter on June 23, 2008 and again on August 8, 2008. Your clients failed to even respond to our August 8, 2008 letter.

In light of the fact that a great majority of the monies paid on the claim relate only to damaged carpet and wall coverings, we can only assume that your clients' failure to properly inform the insured of the allocation of the remaining monies paid is because such an allocation would clearly demonstrate the insurers' bad faith. What portion of the non-carpet and wall covering payment (approximately $200,000.00) is attributed to 1. demolition; 2. renovation; 3. electrical; 4. custom millwork; 5. audio-visual components; 6. flooring; 7. architectural and other professional fees; 8. furnishings and the specifically delineated costs listed in the spreadsheet forwarded to you on August 8, 2008?

Your clients' persistent refusal to comply with their obligations has resulted in unnecessary, costly and protracted litigation, the costs of which we will seek from your clients.

Christopher J. Marino, Esq.
Matthew Herrington, Esq.
August 27, 2008
Page - 2 -

We look forward to your cooperation and prompt response to this matter.

Sincerely,

Stuart P. Slotnick, Esq.

cc:     Barry I. Slotnick, Esq.
        Anna Fretel, Esq.

Exhibit 7

June 30, 2008

Anne O'Connor
AIG Commercial Insurance
101 Hudson Street
20th Floor
Jersey City, NJ 07302      Certified Mail # 7001 1140 0003 8520 8743

Insured -     Wynn Resorts, LLC
Claim # -     421-00004208
D L -         12/29/2004

Dear Ms. O'Connor,

As you are aware we are the broker for Wynn Resorts, LLC, our file reflects that a total of $810,666.71 has been paid to date towards this loss (based on the partial proof of loss received in our file).

In order to reconcile the payments made to date we need for you to advise what damages are covered within the current payment. Our file is lacking a current summary worksheet based on damages sustained – dwelling and contents.

Please contact me directly if you have any questions.

Sincerely,

Patrick J. McGinley, Sr., SCLA
Vice President
Integrated Management Services

Willis of Pennsylvania, Inc.
Five Radnor Corporate Center
100 Matsonford Road, Suite 200
Radnor, PA  19087-8560